# Exhibit B



901 North Broadway • St. Louis, MO 63101-2800 • 314-425-8830 • FAX: 314-342-5399

# REGULAR PATRON CPSL AGREEMENT

This Regular Patron CPSL Agreement (the "Agreement") is made by the undersigned licensee (the "Licensee") in favor of The St. Louis Rams Partnership, a Delaware general partnership (the "Team"), as of the date indicated below.

A. Licensee desires to purchase one or more Regular Patron Charter Personal Seat Licenses ("CPSL(s)"), as more specifically defined herein.

B. The Team is willing to sell to Licensee CPSL(s) upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement, Licensee hereby agree as follows:

1. **CPSL License Fee and Stadium Area.**

The Team promises, upon full payment of the License Fee shown on Schedule 1, to grant to the undersigned licensee (the "Licensee") the number of CPSL(s) stated on Schedule 1. The CPSL(s) granted to Licensee by the Team entitle Licensee to purchase the number of Season Ticket(s) for the designated Stadium Area described on Schedule 1. "Season Ticket(s)" shall mean general admission ticket(s) on a season-by-season basis to all, but not less than all, pre-season, regular season, and post-season home games (excluding the NFL's Super Bowl and Pro Bowl), subject to Licensee's obligation to pay a separate fee for NFL playoff games (the "Games"), played by the Team in the Stadium at America's Center (the "Stadium") located in the City of St. Louis, Missouri, during the term and subject to the terms and conditions of this Agreement. Licensee acknowledges and agrees that the exact location of Licensee's seats ("Licensee's Seats") within the Section of the Stadium described on Schedule 1 which are subject to Licensee's CPSL(s) will not be determined until after Licensee has paid the full amount of the License Fee shown on Schedule 1. Once Licensee's Seats have been determined, Licensee will be entitled to the opportunity to purchase Season Ticket(s) to Licensee's Seats for all the Games at the Stadium until March 1, 2025, subject to Licensee complying with all of the terms and conditions of this Agreement.

2. **Additional CPSL Conditions.**

A. Licensee agrees to purchase all of the Season Ticket(s) with respect to a particular NFL season upon the terms and conditions set by the Team. The Team shall have no liability for the number of Games included within a Season Ticket(s) package or for the Team's failure to play Games in the Stadium.

B. The Team may limit the number of CPSL(s) licensed to any one individual or entity in its sole discretion.

C. The rights licensed under this Agreement are rights of personal privilege and do not under any circumstance confer upon Licensee any interest or estate in real property or any leasehold interest in the Licensee's Seat or the Stadium.

3. **Transfer Terms.**

A. For one year following the purchase of the CPSL, Licensee shall not sell, pledge, hypothecate or transfer in any manner a CPSL except upon the occurrence of a Special Event. A Special Event shall be as follows:

(1) The occurrence of a circumstance beyond the control of Licensee such as death, disability, employment relocation, or similar event;

(2) The transfer to an immediate Family Member or Related Party;

(3) The transfer in conjunction with a major business transaction in which the acquisition of the CPSL is not the intent of the transaction.

Further, in no event shall a CPSL be transferred more than once each year, except for a Special Event. All transfers, whether pursuant to a Special Event or after the first year of ownership, shall be subject to a Transfer Fee.

B. All transfers shall be in accordance with such reasonable rules and regulations and in such form as established by the Team from time to time, including but not limited to the transferee assuming all obligations of the transfer or in a form acceptable to the Team. Until a transfer is properly recorded on the Team's records, the transfer of a CPSL by Licensee will not be recognized by the Team under the terms of the CPSL being transferred.

C. "Immediate Family Member" means any grandparent, parent, spouse, child, stepchild, sibling, grandchild and great-grandchild of an individual Licensee; "Related Party" means any person or entity which owns or controls, or is owned or controlled by, Licensee.

D. Transfer Terms. The transfer fee is based on how many accounts (new or existing) are receiving PSL's during a transaction. The transfer fee is $25.00 per PSL account if your PSL is located in Section F ($500) or G ($250), or $100.00 per PSL account for seats located in any other section of the stadium.

4. **Default.**

Failure by Licensee to make any payment when due under this Agreement or to comply with any of the other terms and conditions of this Agreement or any of the terms and conditions of the sale of the Season Ticket(s) (including without limitation the timing of payment therefor and conduct at the Games) imposed by the Team shall be a default. If Licensee defaults under this Agreement, then, at the sole option of the Team, (a) this Agreement may be terminated, (b) Licensee shall hold no further rights to acquire the CPSL(s) or Season Ticket(s) associated therewith, (c) the Team shall be entitled to retain all payments previously made by Licensee to the Team hereunder, and (d) Licensee shall remain liable to the Team for all losses suffered as a result of such default. In addition, upon default by Licensee, the Team shall be entitled to recover all reasonable attorney's fees and court costs incurred in connection with Licensee's default. Notwithstanding the foregoing, if Licensee's actions result in the loss of Licensee's rights to purchase or retain Season Ticket(s) for reasons other than Licensee's failure to timely purchase Season Ticket(s), Licensee shall be entitled to sell or transfer Licensee's CPSL in a bona fide transaction occurring within sixty (60) days of the date Licensee is notified of Licensee's loss of rights to Licensee's Season Ticket(s).

5. **Disclaimer.**

Licensee covenants and acknowledges that neither the Team nor the Authority (as defined below) have made any representations whatsoever regarding the CPSL(s) other than as may be set forth in this Agreement.

6. **Reservation of Rights by the Team.**

In addition to all rights at law or equity or under the terms of this Agreement, the Team hereby expressly reserves the following rights:

A. The right to terminate this Agreement and refund part or all of Licensee's deposit, either if the Team determines that Licensee's credit is not satisfactory for this License and future obligations of Licensee to acquire tickets, or for any other reason satisfactory for this the Team in its sole discretion, including, but not limited to, the right to reduce the total number of CPSL(s) purchased by Licensee if necessary; and

B. The right to assign, pledge as collateral, transfer or sell all or any part of the rights and obligations of the Team and Licensee under this Agreement to one or more third parties who shall succeed to all or any part of the rights vested in and granted herein to the Team.

7. **Best Efforts.**

If the Team plays any of their NFL games other than at the Stadium (e.g. at Busch Stadium), the Team will use its best efforts to assure Licensee the right to purchase, on a pro rata priority basis, tickets for seats in the stadium where the transferred games are played. Licensee shall be obligated to buy tickets for Games played in the Stadium in St. Louis and NFL games played at Busch Stadium for which tickets are available for purchase by Licensee.

8. **Representations of Licensee.**

Licensee hereby represents, warrants and/or acknowledges as follows:

A. Licensee has read and understands the terms of this Agreement;

B. Licensee is not acquiring the CPSL(s) as an investment and has no expectation of profit as licensee of the CPSL(s);

Ex. B

C. Licensee is acquiring the CPSL(s) solely for the right to purchase Season Ticket(s) to NFL Games played in the Stadium;

D. Licensee is acquiring the CPSL(s) for Licensee's own use and not with a view to the distribution of the CPSL(s) to others;

E. Licensee will not have any equity or other ownership interest in either the Team, the Authority, the Stadium or any of the Stadium's facilities and will not have any rights to dividends or other distribution rights from the Team or any other party or entity described in this Agreement as a result of being a licensee of a CPSL, and further will not have any voting rights with respect to the Team matters as a result of being a licensee of a CPSL;

F. The transfer of the CPSL(s) will be terminated under certain conditions, as explained in this Agreement; and

G. Licensee has full authority to enter into and sign this Agreement and carry out its terms and conditions and when signed, this Agreement shall be a binding obligation on Licensee, enforceable in accordance with its terms.

9. **Use of Seats.**

Licensee and Licensee's invitees shall at all times maintain proper decorum while using the Licensee's Seats and shall abide by all applicable governmental laws, ordinances, orders, directions, rules and regulations and such rules and regulations as are adopted and revised from time to time regarding Licensee's Seats by Licensee and Licensee's invitees, ordinary wear and tear excepted. In addition, Licensee shall not take any action which would cause an increase in premiums of any insurance policy carried by the Team, the Authority or the Stadium Manager, by causing the Team or any other party to fail to meet any requirement or condition of such policy or otherwise. Without limiting the foregoing, Licensee specifically agrees that neither Licensee nor Licensee's invitees will: (a) bring into the Stadium any alcoholic or intoxicating beverage, any illegal drugs or, except as prescribed by a physician, any controlled substance; (b) permit the Licensee's Seats to be used for any illegal, improper, immoral or objectionable purpose or in any way obstruct or interfere with the rights of any other licensees or Game attendees; or (c) film, record, or transmit from the Licensee's Seats all or any portion of any NFL Football game or other event, or any description thereof, by any means (including without limitation radio or television broadcasting, whether broadcast "live" or by means of film or tape).

10. **Assumption or Risk; Liability; Indemnity.**

Licensee, for Licensee and Licensee's invitees, assumes all risk of personal injury to, or for any damage to or any loss of property of, Licensee or its invitees, arising out of, during or related to their attendance at events held in the Stadium. Licensee acknowledges that alcoholic beverages will be available in the Stadium and that attendance at sporting events may expose attendees to certain risks of injury including, but not limited to, incidents involving other patrons who have consumed alcoholic beverages, injury from thrown or dropped objects, spills of food or beverages and the unruly behavior of other patrons. Licensee hereby agrees to assume all responsibility and liability for the consumption in the Stadium of alcoholic beverages by Licensee and its invitees and for the conduct and behavior of Licensee and Licensee's invitees, the conduct and behavior of Licensee and Licensee's invitees and/or the use of the Licensee's Seats by Licensee or Licensee's invitees, whether such claims are now existing or later arising, and whether or not such loss is alleged to be caused by the negligence of the Team, the Authority or the Stadium Manager, the respective owners of each such entity, or their respective officers, directors, employees or agents.

11. **Additional Terms.**

A. Licensee acknowledges that the Stadium will be managed, maintained and operated by The Regional Convention and Visitors Commission (the "Stadium Manager") pursuant to certain agreements between the Stadium Manager and The Regional Convention and Sports Complex Authority (the "Authority") (collectively the "Stadium Agreements"). All rights granted to Licensee pursuant to this Agreement are subject to the terms and conditions of the Stadium Agreements and those other agreements signed in connection with the Team's agreement to relocate to St. Louis. Licensee understands and acknowledges the possibility that the Team may not play its games in the Stadium or St. Louis for the entire term contemplated by this License. Licensee expressly agrees not to sue the Team for damages or injunctive relief related to this CPSL, including without limitation should the Team not play its home games in the Stadium or in St. Louis for any reason.

B. Licensee hereby acknowledges that various parties named in Sections 9 and 10 above, namely the Stadium Manager and the Authority, are third party beneficiaries of this Agreement and may directly or indirectly realize certain benefits from this Agreement. There are no other third party beneficiaries to this Agreement.

C. This Agreement shall be construed and enforced in accordance with the laws of the State of Missouri without regard to the laws of conflict. Any action, suit or other proceeding brought by or against the Licensee or the Team, including any claim for injuries or damages relating to the license of a part of the Stadium, the Licensee, and Licensee's guests and invitees, shall be brought in the United States District Court for the Eastern District of Missouri, Eastern Division, or in the Circuit Court of the State of Missouri, Twenty-First (21st) Judicial Circuit.

D. All notices and other communication required to be given pursuant to this Agreement to Licensee or to the Team shall be in writing and shall be sent to Licensee at the addresses set forth below and to the Team at 901 N. Broadway, St. Louis, Missouri 63101. Any notice given herein shall be deemed delivered when addressed as above provided, postage prepaid, certified mail, return receipt requested, and deposited in a United States General or Branch Post Office or with a nationally recognized overnight courier.

E. This Agreement contains the entire agreement of the parties with respect to the matters provided herein, and shall supersede any representations or agreements previously made or entered into by the parties hereto. No modification hereto shall be permitted by Licensee whatsoever.

F. This Agreement and all the terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto, and their permitted successors and assigns. This Agreement may be assigned by the Team in whole or part without any notice to Licensee; this Agreement shall not be assigned or transferred by Licensee except as set forth above.

G. Notwithstanding the foregoing, the Team shall not have any liability to Licensee for any failure to comply with the provisions of Sections 3.B or 11.D above.

**EXHIBIT A – STADIUM DIAGRAM**
Lower Level



Upper Level

