UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-172 SNLJ |
| | ) | No. 4:16-CV-262 |
| | ) | No. 4:16-CV-297 |
| THE ST. LOUIS RAMS, LLC, | ) | CONSOLIDATED |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant St. Louis Rams' motion to reconsider (#45) this Court's order that, among other things, granted judgment on the pleadings to plaintiff Ronald McAllister as to one of two nearly-identical Personal Seat License ("PSL") agreements at issue. Those PSL agreements allowed PSL holders to buy season tickets for St. Louis Rams football games. The Court stated in the Memorandum and Oder that "The original license agreements were issued by the Rams' ticketing agent, FANS, Inc., and that agreement is referred to as the "FANS" Agreement. Subsequent PSLs were sold directly by the Rams using an almost identical contract ("Rams" Agreement)." (#44 at 3.)

The Rams now seek reconsideration of that decision because, the Rams say, the Court improperly decided that the entity FANS, Inc. was an agent of the defendant Rams. The Rams state that "factual determination" was central to the Court's finding that McAllister had shown on the pleadings that the Rams were liable for deposits made under the FANS PSL Agreement. (#46 at 1.)

1

To the contrary, the Court did not base its decision on an agency theory of liability, as neither party discussed the agency question in the briefing. As a result, the Court's sole focus was on the proper interpretation of the refund provision in the two Agreements.

However, the Rams are correct that the agency issue was technically preserved, though it was buried in the briefing as a single sentence contending that the Rams were "not parties" to the FANS Agreement. (#42 at 13.) And in fact, the Rams' briefing was focused entirely elsewhere --- as if there were no question that the Rams had taken over the FANS, Inc. obligations under the FANS Agreement. For example, the Rams specifically stated: "[T]he 'refund' provision simply provided the Rams with a non-controversial right to limit the number of seats sold to any Licensee and, if a deposit had been made, to refund all or a portion of it back." (#42 at 6.) The Rams made that statement without any reservation and cited both the FANS and Rams Agreements in support.

Despite that statement in their briefing, the Rams deny that they "succeeded" to FANS, Inc.'s rights and responsibilities under the FANS Agreement. As the plaintiff points out, this position is questionable in light of the evidence that, for years, the Rams sold season tickets to PSL Holders who had purchased their PSLs under the FANS Agreement. However, the Rams are correct that the matter of their liability on the FANS Agreement must be saved for later litigation.

The Court will grant the Rams' motion to reconsider as to the Rams' liability on McAllister's claims regarding the FANS Agreement. As a consequence, McAllister's alternative theory --- that the FANS Agreement was illusory and void --- has been resurrected and may also be litigated further. The Court's September 21, 2016 Order

(#44) is vacated only with respect to the Court's granting partial judgment on the pleadings to plaintiff McAllister as to the FANS Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for reconsideration (#45) is GRANTED.

**IT IS FURTHER ORDERED** that this Court's September 21, 2016 Order (#44) is VACATED IN PART, only with respect to the Court's granting partial judgment on the pleadings to plaintiff McAllister as to the FANS Agreement.

Dated this __14th__ day of December, 2016.

                                                STEPHEN N. LIMBAUGH, JR.
                                                UNITED STATES DISTRICT JUDGE