# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **RONALD MCALLISTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:16-CV-172 SNLJ** |
| | ) | **No. 4:16-CV-189** |
| | ) | **No. 4:16-CV-262** |
| **THE ST. LOUIS RAMS, LLC,** | ) | **No. 4:16-CV-297** |
| | ) | **CONSOLIDATED** |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant St. Louis Rams, LLC's motion to compel non-party St. Louis Convention and Visitors Commission ("CVC") to respond to subpoenas served on March 16, 2017 (#116).

The Rams served subpoenas on CVC's custodian of records and the CVC President Kathleen Ratcliffe for production of records relevant to this action including documents concerning the sales, fees, and revenue of PSLs sold by FANs, Inc.; the relationships between CVC, FANS, Inc., and RSA; and the termination of, and successors-in-interest to, FANS, Inc.

The Rams seeks these documents because this litigation concerns the sale of Personal Seat Licenses ("PSLs") at the football stadium where the Rams played in St. Louis. The first PSLs were not sold directly by the Rams. Rather, the first PSLs were sold by FANS, Inc. The Rams say that FANS was an agent for CVC. FANS has since been administratively dissolved and, according to certain FANS accounting documents, its operations were absorbed by the CVC. The Rams believe that because CVC was

principal to FANS and the surviving entity, it is likely to have relevant documents related to the PSL Agreements at issue in this case.

Two subpoenas are at issue. The first seeks the documents requested above. A second subpoena requires the testimony of Ms. Ratcliffe, requiring her to appear for a deposition and produce the same documents required by the first subpoena. CVC complains that Ms. Ratcliffe became employed by CVC in 2006, well after the relevant time period (1993-1999), and she should not be required to testify because she has no knowledge. The Rams clarify, however, that they only included her on the subpoena to ensure service on CVC and that they do not have a present need to depose Ms. Ratcliffe.

CVC also contends that the documents requested in the document subpoena are not relevant to the litigation and that CVC should therefore not be required to produce them. CVC also denies that it "absorbed" FANS operations afters FANS was dissolved. However, at the outset, CVC informed the Rams that CVC had in its possession several boxes of documents that appeared responsive o the subpoena. CVC declined to produce those documents unless defendant agreed to pay $15,000 in attorneys' fees and costs. The Rams do not object to paying costs charged by the off-site storage service to retrieve the documents, but the Rams do object to paying what they believe are improper legal fees.

CVC now objects that the requests for "all documents" and "all communications" are overly broad and that the request for documents in the "possession of your attorney" calls for privileged documents. CVC further states that it offered to allow the Rams to review the boxed documents to avoid further expense. CVC states that it "necessarily incurred attorneys' fees and expenses in analyzing the subpoenas from the Rams, seeking advice of counsel, locating old documents, preparing objections, and understanding

issues in the case, and it opines that Rule 45(d)(1) allows the court to impose an appropriate sanction including reasonable attorneys' fees.

CVC has already located the very documents the Rams seek through the subpoenas. The documents, which CVC says were left in Rams' stadium offices and were accessible to the Rams for over 25 years, are certainly relevant to this matter. Rule 45 does allow for a subpoena to be quashed under certain circumstances, but CVC's memorandum does not explain exactly what burden it seeks to avoid. The Rams have already agreed to pay reasonable costs required to produce the requested documents --- i.e., to obtain the documents from storage and copy them. The Rams have also offered to inspect the apparently responsive documents. To the extent CVC is concerned about privileged documents that may be in the possession of its attorneys, it has not suggested that any such documents even exist. The Court declines to "sanction" the Rams by requiring them to pay attorneys' fees to the CVC when it is apparent that responding to the subpoena should have involved no more than providing access to certain identifiable boxes of documents.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel CVC to comply with the March 16, 2017 subpoeanas is **GRANTED**.

**IT IS FURTHER ORDERED** that CVC shall furnish access to the identified boxes of documents no later than June 1, 2017.

**IT IS FURTHER ORDERED** that the Rams shall pay for the costs of accessing the stored boxes, if any, and copying costs, if applicable.

**IT IS FINALLY ORDERED** that the CVC shall bear its own attorneys' fees.

Dated this __23rd__ day of May, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE