## LEGAL DESCRIPTION

City Blocks 122, 123, 138 and 139 of the City of St. Louis, Missouri.

Also Lots 1 to 5 both inclusive, on Plat "B" of the Partition between G.W. Ewing and others, recorded in Book 182 page 1, and in Block 94 of the City of St. Louis, also a lot having a width of 60 feet from East to West adjoining said Lots 1 to 5 on the East, together fronting 113 feet on the Eastline of Broadway by a depth Eastwardly of 127 feet 6 inches to an alley 15 feet wide, having a width thereon of 114 feet, more or less, bounded on the North by property formerly of Harry M. Bohn and wife and on the South by Delmar Boulevard.

Also A lot in Block No. 94 of the City of St. Louis, beginning at a point in the East line of Broadway 112 feet 2-3/8 inches North of the North line of Delmar Boulevard, thence North along the East line of Broadway 19 feet 7-5/8 inches, thence East 127 7-1/2 inches to an alley, thence South along the West line of said alley 19 feet 20-1/2 inches, thence West 127 feet 7-1/2 inches to the East line of Broadway, and the point of beginning, according to survey by Julius Pitzman, December 14, 1984, recorded in Book 1237 page 528; bounded North by property of Alfred A. Mersman and South by Property of Ellen S. King, et al.

Also A lot in Block No. 94 of the City of St. Louis, fronting 37 feet 8 inches on the East line of Broadway, by a depth Eastwardly between parallel lines of 127 feet 6 inches to an alley; bounded South by a line 131 feet 10 inches North of the North line of Delmar Boulevard, or property now or formerly of Eliot and North by property now or formerly of Lange.

Also A lot in Block No. 94 of the City of St. Louis, fronting 28 feet 4-1/2 inches on the East line of Broadway, by a depth Eastwardly of 126 feet 5 inches to an alley, bounded South by a line 169 feet 6 inches North of the North line of Morgan Street, now Delmar Boulevard.

Also A lot in Block 94 of the City of St. Louis, fronting 137 feet 7 inches on the East line of Broadway by a depth Eastwardly of 127 feet 6 inches on the North line and of 126 feet 5 inches on the Southline to an alley 15 feet wide, on which there is a width of 137 feet, more or less; bounded on the North by Franklin Avenue and on the South by a line 197 feet 10-1/2 inches North of the North line of Delmar Boulevard or by property now or formerly of Twinford Corporation.

Also that part of City Block 137 conveyed by deed recorded April 26, 1993 as Daily No. 223 in the Office of the Recorder of the City of St. Louis, Missouri.

Also that part of Cole Street vacated by City Ordinance Nos. 62826 and 62840.

Also that part of Sixth Street vacated by City Ordinance No. 62749.

Legal Description

A - 1 -

28424

Also that part of 7th Street vacated by City Ordinance No. 62754.

Also Easement Rights under that certain Master Reciprocal Easement recorded July 29, 1993 as Daily No. 194 in the Office of the Recorder of the City of St. Louis, Missouri.

Also, that part of City Blocks 137 and 94 conveyed by deed recorded April 1, 1994 as Daily No. 68 in the Office of the Recorder of Deeds of the City of St. Louis; excepting, however, the following:

A sidewalk easement, being all that part of the following described strip of land, lying within a 1.08 acre tract of land acquired by the Regional Convention and Sports Complex Authority, situated in City Block 94, in the City of St. Louis, Missouri, said strip being twenty foot wide, on the north side of Convention Plaza, being north of, parallel with and adjoining the following described, proposed curbline:

Commencing at a point on the Northern Line of Convention Plaza, 80 feet wide, at its intersection with the Eastern Line of the fifteen foot wide alley in said City Block; thence along the southern prolongation of said Eastern Line, South 14 degrees 56 minutes 14 seconds West, 5.68 feet to the true point of beginning of the herein described, proposed curbline; thence along said curbline, South 75 degrees 38 minutes 17 seconds East, 61.04 feet to a point of curvature; thence Southeasterly 84.01 feet along a curve to the left having a radius of 232.00 feet and a chord bearing South 86 degrees 00 minutes 43 seconds East to a point of ending on the western side of relocated Fourth Street.

Legal Description                              A - 2 -                              28424

EXHIBIT 1f

## CVC RESERVED

### Convention Level

| # | Description |
|---|---|
| 1.53.3 | Counting |
| 1.53.2 | Vault |
| 1.53.1 | Vestibule |
| 1.51.2 | Marshalling |
| 1.51.1 | Uniform Storage |
| 1.50.7 | Electric |
| 1.50.6 | Dishwashing |
| 1.50.5 | Prep Kitchen |
| 1.50.4 | Men |
| 1.50.3 | Women |
| 1.50.2 | Offices |
| 1.50.1 | Lockers |
| 1.49.1 | Concession |
| 1.49.3 | Mech. |
| 1.49.4 | Storage |
| 1.49.5 | Food Prep. |
| 1.48.3 | Telephone/Sound |
| 1.48.5 | Ticketing |
| 1.46.3 | Elect. |
| 1.45.4 | Storage |
| 1.45.1 | Storage |
| 1.42.4 | Mech. |
| 1.41.6 | Elec. |
| 1.41.5 | Pantry |
| 1.41.4 | Pantry |
| 1.40.4 | Mech. |
| 1.37.1 | Stair to Utility Tunnel |
| 1.36.2 | Elect. |
| 1.36.1 | Storage |
| 1.37.4 | Storage |
| 1.34.1 | Tele/Sound |
| 1.34.2 | Storage |
| 1.34.4 | Ticketing |
| 1.33.5 | Storage |
| 1.33.2 | Fire Pump |
| 1.33.4 | Service Entry |
| 1.32.1 | Concession |
| 1.32.2 | Mech. |
| 1.30.5 | Elect. |
| 1.29.6 | Storage |

1f - 1

**Convention Level, continued**

| | |
|---|---|
| 1.29.7 | Storage |
| 1.29.8 | Projector |
| 1.29.9 | Video Room |
| 1.28.11 | Conference |
| 1.28.10 | Office |
| 1.28.12 | Copy |
| 1.28.13 | Office |
| 1.28.14 | Ticketing/Tour |
| 1.26.10 | Ticketing |
| 1.26.9 | Counting Room |
| 1.25.12 | Office |
| 1.25.11 | Breakroom |
| 1.25.10 | Restroom |
| 1.25.16 | Finance Office |
| 1.25.13 | Vault |
| 1.25.14 | Storage |
| 1.24.9 | Storage |
| 1.24.10 | Office |
| 1.24.11 | Telephone |
| 1.23.10 | Electric |
| 1.22.6 | Mech. |
| 1.22.8 | Storage |
| 1.22.9 | Ticket |
| | |
| 1.21.7 | Storage |
| 1.21.6 | Storage |
| 1.21.3 | Concession |
| 1.19.15 | Reception |
| 1.19.11 | Storage |
| 1.19.10 | Storage |
| 1.19.8 | Reception/Security |
| 1.19.4 | First Aid |
| 1.19.3 | Vestibule |
| 1.19.2 | Toilet |
| 1.18.8 | Security |
| 1.18.6 | Office/Security |
| 1.18.9 | Surveillance |
| 1.18.10 | Employee Check in |
| 1.18.11 | Employee Vestibule |
| 1.18.13 | Storage |
| 1.18.2 | Storage/First Aid |
| 1.17.1 | Storage/Uniform |
| 1.16.11 | Personnel Lockers |
| 1.16.7 | Office |
| 1.16.9 | Electrical |
| 1.16.6 | Restroom |
| 1.16.10 | Personnel Lockers |
| 1.15.5 | Maintenance |

15-2

**Convention Level, continued**

| | |
|---|---|
| 1.15.6 | Emergency Electric |
| 1.14.3 | Break Room |
| 1.14.2 | Office |
| 1.14.4 | Restrooms |
| 1.15.1 | Electric |
| 1.14.6 | Stairs to tunnel |
| 1.13.1 | Trash Area |
| 1.12.1 | Banquet Service |
| 1.10.2 | Mech. |
| 1.10.1 | Electrical |
| 1.10.3 | Main Telephone |
| 1.10.6 | Mechanical |
| 1.9.1 | Concession |
| 1.9.4 | Storage |
| 1.9.6 | Storage |
| 1.7.3 | Storage |
| 1.7.4 | Storage |
| 1.7.6 | Ticket |
| 1.6.2 | Storage |
| 1.5.1 | Central Plant |
| 1.4.5 | Mechanical Access |
| 1.4.4 | Electrical Mezzanine |
| 1.54.2 | General Storage |
| 1.54.3 | Commissary |
| 1.55.1 | Mechanical Storage |
| 1.55.2 | Secure Storage |
| 0.14.1 | Utility Tunnel |
| 0.41.1 | Artificial Turf Trench |
| 0.38.1 | Stairs to Tunnel |
| 0.51.4 | Storage |
| 0.51.6 | Exist Sewage Ejector |
| 0.51.2 | Storage |

If- 3

Main Concourse

| # | Description |
|---|---|
| 2.54.3 | Electrical |
| 2.1.2 | Sweeper Storage |
| 2.1.1 | Storage |
| 2.52.2 | Storage |
| 2.1.5 | Storage |
| 2.3.3 | Storage |
| 2.4.4 | Fan Accommodations |
| 2.5.1 | Electric |
| 2.7.2 | Tele/Sound |
| 2.3.4 | Storage |
| 2.9.2 | Electrical |
| 2.13.2 | Storage |
| 2.13.3 | Storage |
| 2.15.3 | Storage |
| 2.15.4 | Storage |
| 2.18.4 | Electrical |
| 2.25.1 | Storage |
| 2.21.1 | Tele/Sound |
| 2.23.1 | Electrical |
| 2.24.4 | First Aid |
| 2.19.1 | Storage |
| 2.25.3 | Storage |
| 2.27.5 | Storage |
| 2.28.3 | Electrical |
| 2.27.8 | Storage |
| 2.27.9 | Sweeper Storage |
| 2.30.2 | Storage |
| 2.31.4 | Fan Accommodation |
| 2.30.3 | Storage |
| 2.32.1 | Electrical |
| 2.34.1 | Tele/Sound |
| 2.37.4 | Electrical |
| 2.40.2 | Storage |
| 2.40.6 | Storage |
| 2.42.2 | Storage |
| 2.42.5 | Storage |
| 2.40.3 | Mechanical |
| 2.41.3 | Sweeper Storage |
| 2.41.4 | First Aid |
| 2.42.6 | Mechanical |
| 2.45.4 | Electrical |
| 2.48.1 | Tele/Sound |
| 2.50.1 | Electrical |
| 2.52.1 | Storage |
| 2.49.7 | Storage |
| 2.49.6 | Corridor |
| 2.49.5 | Corridor |

18-4

## Lower Suite

| # | Description |
|---|---|
| 3.5.9 | Electrical |
| 3.7.10 | Tele/Sound |
| 3.9.3 | Electrical |
| 3.18.2 | Electrical |
| 3.19.1 | Tele/Sound |
| 3.22.1 | Housekeeping |
| 3.23.10 | Storage |
| 3.23.9 | Electrical |
| 3.32.9 | Electrical |
| 3.34.10 | Tele/Sound |
| 3.36.3 | Storage |
| 3.37.2 | Electric |
| 3.45.1 | Electric |
| 3.46.3 | Storage |
| 3.48.8 | Tele/Sound |
| 3.49.9 | Housekeeping |
| 3.50.10 | Storage |
| 3.50.9 | Electrical |
| 3.49.12 | Mechanical Room |
| 3.50.9 | Electrical |

## Club Level

| # | Description |
|---|---|
| 4.5.7 | Electrical |
| 4.6.4 | Storage |
| 4.7.2 | Tele/Sound |
| 4.9.2 | Electrical |
| 4.10.3 | Housekeeping |
| 4.10.4 | Storage |
| 4.14.3 | Storage (half of room) |
| 4.14.2 | Scoreboard Access |
| 4.18.5 | Electrical |
| 4.18.4 | Storage |
| 4.18.3 | Housekeeping |
| 4.21.2 | Tele/Sound |
| 4.22.5 | Storage |
| 4.23.7 | Electrical |
| 4.32.6 | Electrical |
| 4.33.4 | Storage |
| 4.34.3 | Tele/Sound |
| 4.37.3 | Housekeeping |
| 4.36.2 | Electrical |
| 4.37.4 | Storage |
| 4.41.3 | Storage (half of room) |

H- 5

## Club Level, continued

| 4.41.2 | Scoreboard |
| 4.45.6 | Electrical |
| 4.45.5 | Storage |
| 4.45.3 | Storage |
| 4.48.2 | Tele/Sound |
| 4.49.4 | Storage |
| 4.50.7 | Electrical |

## Terrace Level

| # | Description |
| --- | --- |
| 5.54.3 | Electrical |
| 5.4.4 | Fan Accommodation |
| 5.5.1 | Electrical |
| 5.7.2 | Tele/Sound |
| 5.9.2 | Electrical |
| 5.18.3 | Electrical |
| 5.19.1 | Storage |
| 5.21.1 | Tele/Sound |
| 5.23.1 | Electrical |
| 5.24.4 | First Aid |

## Upper Concourse

| # | Description |
| --- | --- |
| 5.27.2 | Electrical |
| 5.31.4 | Fan Accommodation |
| 5.32.1 | Electrical |
| 5.34.1 | Tele/Sound |
| 5.37.4 | Electric |
| 5.40.4 | Sweeper Storage |
| 5.40.5 | Elevator Machine Room |
| 5.42.2 | First Aid |
| 5.45.4 | Electric |
| 5.48.1 | Tele/Sound |
| 5.50.1 | Electric |

If~ 6

## Mechanical Mezzanine (all spaces)

### Press Level

| # | Description |
|---|---|
| 7.29.1 | Monitor Control |
| 7.28.7 | Storage |
| 7.28.6 | Booth |
| 7.27.4 | Storage |
| 7.26.2 | Scoreboard |
| 7.26.1 | P. Address |
| 7.25.1 | Storage |
| 8.26.1 | Working Press/Telephone |

If-7



UTILITY TUNNEL/ KITCHEN ACCESS TUNNEL
LEVEL 0

Exhibit 1f-8



Exhibit 14-9



MAIN CONCOURSE
LEVEL 200

Exhibit-1f-10

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY
Regional Convention & Sports Complex Authority

HELLMUTH, OBATA & KASSABAUM, INC.
KENNEDY ASSOCIATES / ARCHITECTS
DAVID MASON & ASSOCIATES
CAMPBELL DESIGN GROUP
Engineering Design & Management Inc.

A.1-2



SUITE SEATING
LEVEL 300

exhibit 15-11



CLUB LEVEL
LEVEL 400

HELLMUTH, OBATA, & KASSABAUM, INC.
KENNEDY ASSOCIATES / ARCHITECTS
DAVID MASON & ASSOCIATES
CAMPBELL DESIGN GROUP
ENGINEERING DESIGN & MANAGEMENT INC.

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY
REGIONAL CONVENTION & SPORTS COMPLEX AUTHORITY

FOR REFERENCE ONLY
REFER TO 1/8" PLANS
FOR SPECIFIC INFORMATION

CLUB LEVEL
REFERENCE PLAN

A.1-4

Exhibit 1f-12

See the image.



UPPER CONCOURSE
LEVEL 600

Exhibit 14-13

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY

REGIONAL CONVENTION & SPORTS COMPLEX AUTHORITY

HELLMUTH, OBATA & KASSABAUM, INC.
KENNEDY ASSOCIATES / ARCHITECTS
DAVID MASON & ASSOCIATES
CAMPBELL DESIGN GROUP
ENGINEERING DESIGN & MANAGEMENT INC.

FOR REFERENCE ONLY
REFER TO 1/8" PLANS
FOR SPECIFIC INFORMATION

UPPER CONCOURSE
REFERENCE PLAN

A.1-5



MECHANICAL MEZZANINE
LEVEL 600

Exhibit 1F-14

HELLMUTH, OBATA & KASSABAUM, INC.
KENNEDY ASSOCIATES / ARCHITECTS
DAVID MASON & ASSOCIATES
CAMPBELL DESIGN GROUP
ENGINEERING DESIGN & MANAGEMENT INC.

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY

REGIONAL CONVENTION & SPORTS COMPLEX AUTHORITY

MECHANICAL
MEZZANINE
REFERENCE PLAN

A.1-6

FOR REFERENCE ONLY
REFER TO 1/8" PLANS
FOR SPECIFIC INFORMATION



UPPER DECK
LEVEL 700

WORKING PRESS
LEVEL 800

FOR REFERENCE ONLY
REFER TO 1/8" PLANS
FOR SPECIFIC INFORMATION

Exhibit 1F-15

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY

REGIONAL CONVENTION & SPORTS COMPLEX AUTHORITY

HELLMUTH, OBATA & KASSABAUM, INC.
KENNEDY ASSOCIATES / ARCHITECTS
DAVID MASON & ASSOCIATES
CAMPBELL DESIGN GROUP
ENGINEERING DESIGN & MANAGEMENT INC.

UPPER DECK
REFERENCE PLAN

## *RAMS* ~~NFL~~ RESERVED

### Field Level

| # | Description |
|---|---|
| 1.25.7 | Home Locker Room |
| 1.27.3 | Equipment Storage |
| 1.27.2 | Training Room |
| 1.26.1 | Team Showers |
| 1.26.2 | Team Restroom |
| 1.25.7 | Coaches Locker room |
| 1.25.2 | Coaches restroom |
| 1.25.6 | Head Coaches Locker room |
| 1.25.5 | Head Coaches Restroom |
| 1.25.3 | Coaches Showers |
|  | X-Ray Room |

### Administration

| # | Description |
|---|---|
| 1.27.7 | Manager's Office |
| 1.27.6 | Vault |
| 1.26.4 | Office |
| 1.26.5 | Breakroom |
| 1.26.9 | Restroom |
| 1.26.7 | Office |
| 1.26.6 | Open Office |
|  | Future Ticket Window |

### Suite Level

All suites
All suite concourse lounges and lobbies
All future suites, suite concourses and lobbies

### Club level

All suites
All club concourse lounges and lobbies
All club seats
Half of Storage rooms behind scoreboard on north and south ends.

|r-|



ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY

Exhibit /r



SUITE SEATING
LEVEL 500

ST. LOUIS DOWNTOWN CONVENTION & STADIUM FACILITY

REGIONAL CONVENTION & SPORTS COMPLEX AUTHORITY

SUITE LEVEL
REFERENCE PLAN

A.1-3



CLUB LEVEL
LEVEL 400



Bryan Cave

Clinton

Stadium Authority

EVC has 1 suite in south end zone
next to owners suite

Exhibit 6(c)-1

JAN 10 '95 10:03

## EXHIBIT 12 TO AMENDED LEASE

### INSURANCE

Section 1.  **CVC's Insurance.**  At all times during the term of the Lease, CVC shall at CVC's cost maintain or cause to be maintained, in full force and effect, the following insurance coverages and limits of such coverages (collectively, "CVC's Insurance Policies"):

A.  **Hazard Insurance.**  CVC shall insure Facilities and all real property, equipment, fixtures, and personal property owned or leased by CVC and used in connection with the Facilities, including all alterations and additions thereto both during and after completion of any construction, by maintaining the following insurance coverages:

(1)  For property damage arising from fire and allied perils under an "all risk" form providing coverage at least equivalent to the coverage provided by Insurance Services Office ("ISO") Building and Personal Property Coverage Form No. CP0010 (10-90); Cause of Loss-Special Form No. CP1030 (10-91); Commercial Property Conditions Form No. CP0090 (7-88); and Business Income Coverage Form and Extra Expense No. CP0030 (10-91) [Option (1) Business Income including "Rental Value"].  To the extent commercially available otherwise a fire and extended coverage perils with endorsements or other form as closely resembling the "all risks" form as commercially available, insuring for 100% replacement cost value as defined in Section 2 (1) hereof against direct loss of property and business interruption/extra expenses with a joint loss agreement between such property insurance company and the boiler and machinery insurance company;

(ii)  During any period of construction of or in the Facilities by CVC after the RAMS' Facilities Delivery Date, for "builder's risk" exposures through an "all risk" form providing coverage at least equivalent to the coverage provided by ISO Builders Risk Coverage Form No. CP0020 (10-91); Cause of Loss - Special Form No. CP1030 (10-91); Commercial Property Conditions Form No. CP0090 (7-88); Business Income Coverage Form and Extra Expense No. CP0030 (10-91) [Option (1)]; Builders' Risk Separate or Subcontractors Coverage No. CP1115 (07-88); and Builders' Risk-Collapse During Construction No. CP1120 (07-88), to the extent commercially available otherwise a fire and extended coverage perils with endorsements or other form as closely resembling "all risk" form as commercially available, insuring for 100% replacement cost value

12-1

against direct loss of property, work in progress, and delayed completion, business interruption, and extra expenses, as well as all equipment floater endorsements in connection with installation/placing of equipment at or in the Facilities;

(iii)  Boiler and machinery in a comprehensive form insuring against direct loss of property and business interruption/extra expenses with a joint loss agreement with other property insurance companies, if any, providing insurance coverage to CVC, including, but not limited to, all air conditioning and/or heating equipment, ice making plants, piping, miscellaneous electrical apparatus, boilers and all other related equipment/machinery, pressure vessels and/or systems, high and low pressure piping and machinery, if any, that are now or hereafter installed in the Facilities for value sufficient to cover 100% of each item's replacement cost as defined in Section 2(i).

B.    Liability and workers' Compensation Insurance. CVC shall, at its cost, maintain or cause to be maintained, in full force and effect, the following liability insurance coverages:

(i)  Workers' compensation and employers' liability insurance for all its employees in accordance with the laws of the State of Missouri, including the other states' provision, and Employers' Liability Insurance, with limits of not less than:

| | |
|---|---|
| Workers' Compensation | Missouri Statutory Requirements and Other States' Statutory Requirements As Appropriate |
| Employers' Liability | $1,000,000 Limit Each Accident $1,000,000 Limit Disease Policy Aggregate $1,000,000 Limit Disease Each Employee |

(ii) Commercial general liability insurance on an occurrence form providing coverage at least equivalent to ISO Commercial General Liability Coverage Form No. CG0001 (10-93), to include, but not be limited to, all premises and operations liability, personal and advertiser's injury liability, contractual liability, independent contractor's liability, broad form property damage liability (including completed operations), liquor

-2-

17-2

legal liability and host liquor liability, garagekeepers liability, products and completed operations liability, and "X" (explosion), "C" (Collapse), and "U" (underground) liability coverages.

Policy limit of such insurance shall not be less than:

Bodily Injury,
Property Damage,
Personal Injury
and Advertising
Injury Liability:          $1,000,000 Combined Single
                          Limit Each Occurrence

(iii)  Automobile liability insurance as to the ownership, maintenance, storage and use of all owned, non-owned, leased or hired vehicles with policy limits of not less than:

Bodily Injury &
Property Damage
Liability                 $1,000,000 Combined Single
                          Limit Each Accident

(iv)  Criminal loss exposures including all CVC and/or Facilities employees and servants for loss of money and/or securities by same and/or in collusion with same with policy limits of not less than:

Employee Dishonesty       $1,000,000 Each Loss

Inside/Outside Theft
of Money/Securities       $  500,000 Each Loss

Forgery                   $  500,000 Each Loss

Counterfeit               $  500,000 Each Loss

(v)  Umbrella/excess liability insurance shall not be less than $50,000,000 each occurrence. Coverage shall be on an occurrence form and CVC shall use all commercially reasonable efforts to structure all liability policies to insure that no coverage gap or "concurrent limit gap" exists between primary policy limits and umbrella/excess policies, and that all umbrella/excess policies provide continuous, uninterrupted policy limits to the total coverage limits.

(vi)  All other forms of insurance, if any, customarily maintained by sports facilities in the United States of America, with policy limits and

-3-

17-3

insurance coverage sufficient for CVC's exposures and risks of loss.

Section 2. *Insurance Requirements*. All of CVC's Insurance Policies shall comply with the "Insurance Policy Requirements" which are defined to include all of the following:

(i) All of CVC's property, builders risk, as boiler or machinery insurance, shall be written on a 100% "guaranteed replacement cost basis" or with an agreed amount endorsement, or, if not available, then to the maximum limit available, but in any event, for a value sufficient to cover the full replacement cost and, in each alternative, with a deductible for each loss of no greater than Fifty Thousand Dollars ($50,000). All of CVC's property, builders risk, and boiler and machinery insurance policies shall provide, or be endorsed to cover, Building Laws Coverage Including Increased Costs of Construction, Destruction of Underinsured Property, and Increased Time To Rebuild Due To Building Laws. All of CVC's property and builder risk insurance policies shall provide, or be endorsed to cover Riot, Civil Disorder and Civil Commotion, including business interruption and loss of rents resulting therefrom. The amounts or limits of such insurance for real property shall be adjusted annually based upon:

(a) Construction costs indexes as supplied by the insurer of the Facilities or, if not available, then;

(b) Information and indexes published, if any, on a bimonthly basis for Boeck Commercial Building Cost Guide or its successor for that purpose or, if not available, then;

(c) Architectural industry standards. Notwithstanding the foregoing indexes (a), (b), and (c), if CVC, and RAMS agree on an available standard or means of determining replacement cost value that they prefer to the foregoing and which is acceptable to the insurer, such standard may be used in lieu of (a), (b) and (c) above.

The amounts or limits of such insurance for personal property shall be reviewed for adequacy and adjusted accordingly on an annual basis, but the amounts or limits shall not be less than full replacement cost of all personal property owners, leased or used by CVC in connection with its use, occupancy or maintenance of the Facilities.

(ii) All of CVC's liability insurance policies other than employer's liability (with advertiser's and

-4-

17-4

architect's professional liability excepted), shall be written on an occurrence (non-claims made) form. All such policies or layers thereof shall provide for a severability of interest endorsement as it pertains to this Lease. If such insurance cannot be obtained on an "occurrence" basis and can only be obtained on a "claims made" basis, then the retroactive date for coverage shall be no later than the date of this Lease, and the policy shall provide that in the event of cancellation or non-renewal, the discovery and claims reporting period (tail coverage) shall be unlimited or the longest period of time then available.

(iii) All of CVC's Insurance Policies shall be issued by insurance companies that:

(a) are licensed and are eligible to do business in the State of Missouri, and

(b) have an A- (excellent): X A.M. Best rating or higher.

(iv) CVC shall procure CVC's Insurance Policies with anniversary/renewal dates of not less than one (1) year, unless otherwise agreed in writing by both parties.

(v) CVC shall deliver to RAMS within thirty (30) days of the commencement of this Lease, signed certificates of insurance with respect to all of CVC's Insurance Policies and, upon receipt of each policy and at each renewal thereafter, shall deliver to RAMS certified, true copies of the originals and all endorsements, attachments and modifications of all of CVC's Insurance Policies.

(vi) Any property or liability insurance coverage may be part of a blanket insurance policy carried by CVC covering several properties, provided that (i) the coverage afforded to CVC and RAMS shall not be reduced by reason of the use of a blanket policy and (ii) the minimum policy limits required by this Lease as relates specifically and exclusively to the Facilities shall not be reduced or diminished as a result of another claim or claims under the blanket policy. Any policy limit required by this Lease shall apply specifically and exclusively to the use, occupancy, or maintenance of the Facilities. A General Aggregate Per Location Endorsement shall be added to any blanket umbrella/excess liability policy.

(vii) Neither the insurance coverages or policy limits required herein, nor the acceptance of delivery to RAMS of any certificate of insurance evidencing insurance coverages and policy limits required herein shall

-5-

125

SENT BY:IRELL & MANELLA   ; 10-65 ; 16:16 ;   IRELL & MANELLA→6812001700036-131472:# 7

constitute approval or agreement by RAMS that the insurance requirements herein have been satisfied or that the insurance policy or policies shown in the certificate of insurance are in compliance with the requirements herein.

(viii)  Each certificate of insurance for CVC's Insurance Policies on a form acceptable to RAMS shall be originally (personally, manually) signed by an authorized representative of the insurance company shown on the certificate.  Each policy of insurance shall be performable in and in accordance with the laws of the State of Missouri.

(ix)  If the property policies and boiler and machinery policy purchased by CVC are from different insurance companies, all such policies must provide and maintain coverages with a joint loss agreement endorsement to each.

(x)  During the entire term of this Lease, CVC shall except with respect to existing contracts require concessionaires to provide CVC and RAMS with certificates of insurance evidencing the following policies of insurance:

Property - In an amount sufficient to cover their own property to 100% of its replacement cost value. The policy shall contain a waiver of subrogation in favor of CVC and RAMS.

Business Interruption - In an amount sufficient to cover loss of gross profits for a period of not less than six (6) months.  The policy shall contain a waiver of subrogation in favor of CVC and RAMS.

General Liability - Bodily Injury & Property Damage coverage of at least $10,000,000 per Occurrence. (This limit may include an Umbrella Policy).  The policy shall contain an endorsement naming CVC and RAMS as additional insureds.  All concessionaires serving alcoholic beverages shall provide and maintain liquor law legal liability insurance and host liquor liability insurance, if appropriate, with policy limits of not less than $10,000,000 per Occurrence.

Automobile Liability - Bodily Injury & Property Damage coverage of at least $1,000,000 per Occurrence for all owned, non-owned or rented vehicles.  The policy shall contain an endorsement naming CVC and RAMS as additional insureds.

-6-

17-6

Workers Compensation - Missouri Statutory
Requirements. The policy should contain an
Employers Liability limit of not less than
$1,000,000. The policy should contain a waiver of
subrogation in favor of CVC and RAMS.

Umbrella Liability - At least $9,000,000 in excess
of the General Liability, Automobile and Workers
Compensation Policy. Coverage should be at least as
broad as the underlying policy.

Crime Insurance in the following limits:

$100,000        Employee Dishonesty

$100,000        Forgery & Alterations

$100,000        Theft, Disappearance & Destruction

CVC and RAMS shall be named as additional insureds
on the policy of Crime Insurance, but only as
respects acts by the concessionaire's employees.

(xi)  Garagekeepers Legal Liability. During the
entire term of this Lease, CVC shall require its parking
lot independent contractors, if any, to provide
garagekeepers liability insurance as it pertains to the
use of the parking lots covering all valet functions and
all other parking services and operations with policy
limits as set forth below, or such letter arrangements as
CVC and the RAMS may agree upon:

⎣ lesser

$10,000,000     General Liability - Bodily Injury &
                Property Damage

$10,000,000     General Liability (Including
                Automobile Liability)

$ 1,000,000     Garage Keepers Legal Liability for
                Damage to Automobiles in Their Care,
                Custody & Control.

(xii) Advertiser's Legal Liability.  During the
entire term of this Lease, CVC shall maintain, if CVC is
providing any advertising or require all such advertisers
in the Facilities to provide and maintain, advertiser's
legal liability insurance for advertisements in the
Facilities with a policy limit of not less than
$10,000,000   $1,000,000 (one million).

(xiii)  All of the required insurance coverages shall
be issued as required by law and shall be endorsed, where
necessary, to comply with the standards and requirements
contained herein.

-7-

12-7

SENT BY:IRELL & MANELLA       1-16-95 ; 10:10 ;      IRELL & MANELLA→0012001700039-131472;# 9

**(xiv)  Additional Insureds.**  RAMS shall be named as additional insureds on all of CVC's liability policies and all liability policies purchased for or on behalf of CVC to fulfill the requirements herein with respect to CVC's operations of, on, in and around the Facilities.

**(xv)  Each** of CVC's Insurance Policies shall contain specific provisions precluding any modification that limits or reduces coverages and/or policy limits and cancellation or non-renewal of CVC's Insurance Policies without at least sixty (60) days prior written notice to RAMS.

**Section 3.  Payment of Premiums.**  All premiums and charges for all CVC's Insurance Policies shall be paid by CVC, and if CVC shall fail to make any such payment when due, or to maintain any coverages and/or policy limits directly or indirectly required herein, RAMS may, but shall not be obligated to make such payment and/or purchase such coverage and policy limits, and the amount paid by RAMS, with interest thereon from the date of such payment until the date paid, shall be repaid to RAMS by CVC immediately upon demand.

**Section 4.  Renewals.**  Ten (10) days prior to the expiration of each of CVC's Insurance Policies, CVC shall deliver to RAMS evidence establishing renewal of the expiring policies by delivery of original, certified binders therefor, and upon receipt thereof, CVC shall deliver to RAMS certified, true copies of the original policies evidencing the fact that CVC's Insurance Policies have been renewed and will continue in full force and effect, and if any such binder(s) or duplicate policy(s) thereof shall not be so delivered, RAMS may procure and/or pay therefor, and the amount so paid by RAMS with interest thereon from the date of payment until the date paid, shall become due and payable by CVC to RAMS immediately on demand therefor.

**Section 5.  Compliance with Terms of Policy.**  CVC shall not knowingly violate or knowingly permit to be violated any of the conditions or provisions of any of CVC's Insurance Policies, and CVC shall so perform and satisfy the requirements and recommendations of the insureds companies writing such policies.  RAMS shall not knowingly take any action which shall violate any of the conditions or provisions of any of CVC's Insurance Policies of which it has received notice or which, without the consent of CVC, shall cause the premiums therefor to be increased.

**Section 6.  Separate Insurance.**  CVC shall not carry separate insurance or additional insurance, concurrent in coverage or contributing in the event of loss, with any insurance required to be furnished by CVC under the provision of this Lease, if the effect of such separate or concurrent insurance would be to reduce the insurance protection to RAMS

PHL2009.WP

-8-

12-8

PAGE.009

JAN 16 '95 18:19

SENT BY:IRELL & MANELLA   ; 1-16-95 ; 18:18 ;   IRELL & MANELLA→8012881700038-131472;#10

or the payment to be made under any of CVC's Insurance Policies.

Section 7. __Compliance with Insurance Requirements of Authority and Superior Mortgages.__ CVC shall be required to comply with the insurance requirements of Authority; provided, however, that nothing herein shall reduce the insurance coverages and policy limits otherwise required pursuant to this Lease.

Section 8. __Hazard and Liability Insurance.__ At all times during the term of this Lease, RAMS shall, at RAMS' cost, maintain or cause to be maintained, in full force and effect, the following insurance coverages and limits of such coverages (collectively, "RAMS' Insurance Policies").

A. __Hazard Insurance.__ RAMS shall insure its improvements and betterments to the Facilities and the equipment, fixtures, and personal property owned or leased by RAMS and used in connection with the Facilities, including all alterations and additions, thereto, insured by maintaining the following insurance coverages:

(i) For property damage arising from fire and allied perils under an "all risk" form providing coverage at least equivalent to the coverage provided by ISO Building and Personal Property Coverage Form No. CP0010 (10-90); Cause of Loss-Special Form No. CP1030 (10-91); Commercial Property Conditions Form No. CP0090 (7-88); and Business Income Coverage Form and Extra Expense No. CP0030 (10-91) [Option (ii) Business Income other than "Rental Value"] to the extent commercially available otherwise a fire and extended coverage perils with endorsements or other form as closely resembling the "all risks" form as commercially available, insuring for 100% replacement cost value as defined in Section 9(i) against direct loss of property and business interruption/extra expenses. If such an occasion arises where RAMS' exposures are expanded to include additional risks typically insured through a or builder's risk policy, RAMS shall procure such insurance for replacement cost value for the duration of the exposure.

B. __Liability and Workers' Compensation Insurance.__ RAMS shall, at its cost, maintain or cause to be maintained, in full force and effect, the following liability insurance coverages:

-9-

17-9

(i) Workers' compensation and employers' liability insurance for all its employees in accordance with the laws of the State of Missouri, including the other state's provision, and Employers' Liability Insurance Company, with limits of not less than:

Workers' Compensation     Missouri Statutory Requirements and Other States' Statutory Requirements As Appropriate

Employers' Liability     $1,000,000 Limit Each Accident
$1,000,000 Limit Disease Policy Aggregate
$1,000,000 Limit Disease Each Employee

(ii) Commercial general liability insurance on an occurrence form providing coverage at least equivalent to ISO Commercial General Liability Form No. CG0001 (10-93) to include, but not be limited to, operations liability, personal and advertiser's injury liability, contractual liability, and as and when appropriate, the following: independent contractor's liability, broad form property damage liability (including completed operations), host liquor liability, products and completed operations liability.

Policy limit of such insurance shall not be less than:

Bodily Injury,
Property Damage,
Personal Injury
and Advertising
Injury Liability:     $1,000,000 Combined Single Limit Each Occurrence

(iii) Automobile liability insurance as to the ownership, maintenance, storage and use of all owned, non-owned, leased or hired vehicles with policy limits of not less than:

Bodily Injury &
Property Damage
Liability     $1,000,000 Combined Single Limit Each Accident

(iv) Criminal loss exposures including all RAMS' employees for loss of money and/or securities with policy limits of not less than:

-10-

| Employee Dishonesty | $ 200,000 Each Loss |
| Forgery & Alteration | $ 200,000 Each Loss |
| Theft, Disappearance & Destruction | $ 50,000 Each Loss |

    (v)  Umbrella/excess liability insurance shall not be less than $9,000,000 each occurrence. Coverage shall be on an occurrence form and RAMS shall endeavor to structure all liability policies to insure that no coverage gap or "concurrent limit gap" exists between primary policy limits and umbrella/excess policies, and that all umbrella/excess policies provide continuous, uninterrupted policy limits to the total coverage limits.

    (vi)  All other forms of insurance, if any, customarily maintained by NFL teams in the United States of America, with policy limits and insurance coverage sufficient for RAMS' exposures and risks of loss.

-11-

}7-1|

SENT BY:IRELL & MANELLA   ; 10-05 ; 16:20 ;   IRELL & MANELLA→#012001700030-131472;#13

Section 9.  RAMS' Insurance Requirements.  All of RAMS' Insurance Policies shall comply with the "Insurance Policy Requirements" which are defined to include all of the following:

(i)  All of RAMS' property insurance, shall be written on a 100% "guaranteed replacement cost basis" or with an agreed amount endorsement, or, if not available, then to the maximum limit available, but in any event, for a value sufficient to cover the full replacement cost and, in each alternative, with a deductible of no greater than Fifty Thousand Dollars ($50,000).  All of RAMS' property insurance policies shall provide, or be endorsed to cover Riot, Civil Disorder and Civil Commotion, including business interruption resulting therefrom.  The amounts or limits of such insurance shall be reviewed for their adequacy and adjusted accordingly on an annual basis.

(ii)  All of RAMS' liability insurance policies other than employer's liability (with advertiser's liability, if any, excepted) shall be written on an occurrence form. All such policies or layers thereof shall provide for an appropriate severability of interest endorsement as it pertains to this Lease.  If such insurance cannot be obtained on an "occurrence" basis and can only be obtained on a "claims made" basis, then the retroactive date for coverage shall no later than the date of this Lease, and the policy shall provide that in the event of cancellation or non-renewal, the discovery and claims reporting period (tail coverage) shall be unlimited or the longest period of time then available.

(iii)       All of RAMS' Insurance Policies shall be issued by insurance companies that:

(a)  are licensed and are eligible to do business in the State of Missouri, and

(b)  have an A-(excellent); X A.M. Best rating or higher.

(iv)  RAMS shall procure RAMS' Insurance Policies with anniversary/renewal dates of not less than one (1) year, unless otherwise agreed in writing by both parties.

(v)  RAMS shall deliver to CVC within thirty (30) days of the commencement of this Lease signed certificates of insurance with respect to all of RAMS' Insurance Policies and, upon receipt of each policy and at each renewal thereafter, shall deliver to CVC certified, true copies of the originals and all endorsements, attachments and modifications of all of RAMS' Insurance Policies.

-12-

12-12

(vi) Any property or liability insurance coverage may be part of a blanket insurance policy carried by RAMS covering several properties, provided that (i) the coverage afforded to CVC and RAMS shall not be reduced by reason of the use of a blanket policy and (ii) the minimum policy limits required by this Lease as relates specifically and exclusively to the use of the Facilities shall not be reduced or diminished as a result of another claim or claims under the blanket policy. Any policy limit required by this Lease shall apply specifically and exclusively to the use of the Facilities. A General Aggregate Per Location Endorsement shall be added to any blanket umbrella/excess liability policy.

(vii)      Neither the insurance coverages or policy limits required herein, nor the acceptance of delivery to CVC of any certificate of insurance evidencing insurance coverages and policy limits required herein shall constitute approval or agreement by CVC that the insurance requirements herein have been satisfied or that the insurance policy or policies shown in the certificate of insurance are in compliance with the requirements herein.

(viii)  Each certificate of insurance for RAMS' Insurance Policies on a form to be reasonably acceptable by CVC shall be originally (personally, manually) signed by an authorized representative of the insurance company shown on the certificate. Each policy of insurance shall be performable in and in accordance with the laws of the State of Missouri.

(ix) Advertiser's Legal Liability.  During the entire term of this Lease, RAMS shall require all advertisers contracting with RAMS or for the benefit of RAMS to provide and maintain advertiser's legal liability insurance for advertisements or broadcasts of RAMS' Events at the Facilities with a policy limit of not less than $1,000,000.

(x)  All of the required insurance coverages shall be issued as required by law and shall be endorsed, where necessary, to comply with the standards and requirements contained herein.

(xi) Additional Insureds.  CVC and Authority shall be named as an additional insureds on all RAMS' liability policies and all liability policies purchased for or on behalf of RAMS to fulfill the requirements herein with respect to RAMS' operations under this Lease.

(xii)      Each of RAMS' Insurance Policies shall contain specific provisions precluding any modification that limits or reduces coverages and/or policy limits and

-13-

12-13

cancellation or non-renewal of such policy without at least sixty (60) days prior written notice to CVC.

Section 10. **Payment of Premiums**. All premiums and charges for all RAMS' Insurance Policies shall be paid by RAMS, and if RAMS shall fail to make any such payment when due, or to maintain any coverages and/or policy limits required herein, CVC may, but shall not be obligated to make such payment and/or purchase such coverage and policy limits, and the amount paid by CVC, with interest thereon from the date of such payment until the date paid, shall be repaid to CVC by RAMS immediately upon demand.

Section 11. **Renewals**. Ten (10) days prior to the expiration of each of RAMS' Insurance Policies, RAMS shall deliver to CVC evidence establishing renewal of the expiring policies by delivery of original, certified binders therefor, and upon receipt thereof, RAMS shall deliver to CVC certified, true copies of the original policies evidencing the fact that RAMS' Insurance Policies have been renewed and will continue in full force and effect, and if any such binder(s) thereof shall not be so delivered, CVC may procure and/or pay therefor, in the amount so paid by CVC with interest thereon from the date of payment until the date paid, shall become due and payable by RAMS to CVC immediately on demand therefor.

Section 12. **Compliance with Terms of Policy**. RAMS shall not knowingly violate or knowingly permit to be violated any of the conditions or provisions of any of RAMS' Insurance Policies, and RAMS shall so perform and satisfy the requirements and recommendations of the insurance companies writing such policies. CVC shall not knowingly take any action which shall violate any of the conditions or provisions of any of RAMS' Insurance Policies of which it has received notice or which, without the consent of RAMS, shall cause the premiums thereof to be increased.

Section 13. **Separate Insurance**. RAMS shall not carry separate insurance or additional insurance, concurrent in coverage or contributing in the event of loss, with any insurance required to be furnished by RAMS under the provision of this Lease if the effect of such separate or concurrent insurance would be to reduce the protection to CVC or the payment to be made under any of RAMS' Insurance Policies.

Section 14. **Waiver of Subrogation**. CVC and RAMS each hereby release the other from any and all liability or responsibility to the other or anyone claiming through or under them by way of subrogation or otherwise for any loss or damage to the respective property caused by fire or any other coverage provided by the property, builders risk, and boiler and machinery insurance policies which CVC and RAMS are required to maintain pursuant to this Lease, even if such fire or other casualty shall have been caused by the fault or

-14-

12-14

negligence of the other party, or anyone for whom such party may be responsible. All of CVC's Insurance Policies and all of RAMS' Insurance Policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the rights of the releasor to recover thereunder and a clause or endorsement containing such waiver of subrogation.

Section 15. <u>Review and Adjustment of Coverages and Limits</u>. Anything herein to the contrary notwithstanding, the minimum liability coverages and limits that CVC and RAMS are required to maintain as herein set forth shall be reviewed by CVC and RAMS every three (3) years or earlier upon the written request of either party (and not later than fifteen (15) days after such request) if any change in liability conditions or insurance industry conditions appear to indicate conditions or industry conditions or the standards of sports arenas or NFL team justifies an adjustment to the minimum coverages and/or limits herein required. Coverages and limits shall be maintained as required herein unless CVC and RAMS agree to an adjustment or unless any of such coverages and/or limits become unavailable within the industry or unless such coverages and/or limits become unavailable at commercially reasonable premiums after commercially reasonable efforts to renew or otherwise obtain such coverages and/or limits or until any dispute between the parties to this Lease concerning such coverages and/or limits is resolved in accordance with the provisions of this Lease.

Section 16. <u>Failure to Maintain Required Coverages and Limits</u>. In the event that any such loss, claim, liability, damage or injury ("Loss") occurs that would have been covered by the minimum coverages and limits that CVC and/or RAMS is required to maintain as herein set forth, but for such parties' failure to maintain and pay the premium for such coverages and limits, then to the extent that the cost of such Loss would have been paid or reimbursed under such insurance coverages and limits, considering allowable deductibles herein and exclusions and exceptions generally contained in such policies, such party who fails to maintain and pay the premiums for such coverages and limits shall pay the cost of such loss.

Section 17. <u>New Coverages</u>. If there are additional coverages that subsequently are found to be customary within the industry and commercially reasonable, available, and desirable, CVC and RAMS shall consider acquiring such coverages.

-15-

12-15

## EXHIBIT 21

(p. 32, 1.1717)

Annexes per Secetion 21 of the Lease.



## St. Louis Regional Convention & Sports Complex Authority

814 North Broadway, Suite 100 • St. Louis, Missouri 63102 • (314) 231-5868 • (314) 231-2284 [fax]

ROBERT J. BAER,
CHAIRMAN

LAWRENCE E. AKLEY,
EXECUTIVE DIRECTOR

January 17, 1995

Milton B. Hyman, Esq.
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, California  90067-4276

RE:  Convention & Stadium Project Drawings and Specifications

Dear Mr. Hyman:

Enclosed herein is a copy of the conformed drawings as of August 1, 1994 (half size set) and conformed specifications as of June 1, 1993 that reflect in substantial form and in all material respects the Facilities as referenced in the NFL Relocation Agreement dated as of January 17, 1995. The dates are different since the drawings were conformed twice for certain drawings.

To our knowledge, based upon information provided to us by the Rams, we know of no revisions reflected in such drawings that are materially adverse to the Rams' enjoyment of the Facilities, or any part thereof, including without limitation, any of the components.

A January 17, 1995 version of the St. Louis Convention and Downtown Stadium Project drawings and specifications will be delivered to the Rams on or before February 16, 1995.

Sincerely,

Robert J. Baer, Chairman

DLW/rft
Enclosure

cc:  Contract Documents    Auth Out    Chron
     Reading File:  LEA _____    DLW _____    WHJ _____    RAK _____

19-28408

Commissioners: James B. Becker • Kevin S. Cahill • Charles L. Farris • John J. Frank • William D. Kimme
Andrew B. Leonard • Ora Lee Malone • Charles E. Polk, Jr. • Robert C. Sansone • J. Kent Underwood