# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD McALLISTER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 4:16-CV-00172 SNLJ |
| | ) | 4:16-CV-00262 |
| v. | ) | 4:16-CV-00297 |
| | ) | 4:16-CV-00189 |
| THE ST. LOUIS RAMS, LLC, *et al.*, | ) | CONSOLIDATED |
| | ) | |
| Defendants. | ) | |

**RESPONSES AND OBJECTIONS TO PLAINTIFFS
ENVISION, LLC, ROBERT BOHM, SUE BOHM, AND EDWARD MOCK'S
FIRST SET OF INTERROGATORIES DIRECTED TO THE ST. LOUIS RAMS, LLC**

The St. Louis Rams, LLC ("Defendant" or the "Rams") responds and objects to Plaintiffs

Envision, LLC, Robert Bohm, Sue Bohm, and Edward Mock's (collectively, "Plaintiffs") First

Set of Interrogatories Directed to Defendant.

**PRELIMINARY STATEMENT**

1.     Defendant makes these responses solely for the purpose of this action.  Each

response is made subject to all objections to competence, materiality, relevance, attorney-client

privilege, work product protection, or other objection as to the admissibility that may apply in

the event that any such response, or the information contained therein, is sought to be used in

court.  Defendant expressly reserves all such objections.

2.     Defendant has not yet completed investigation of the facts relating to this action

and has not completed preparation for trial.  Defendant may discover information, facts,

evidence, documents, and things that are not set forth in these responses but which may be

responsive.  The following responses are based on Defendant's present knowledge, information,

and belief after a reasonable investigation and are complete as to Defendant's best knowledge at

this time.   Furthermore, Defendant has prepared these responses based on its good faith interpretation and understanding of the individual requests, but Defendant reserves its right to correct any inadvertent errors or omissions.   Defendant also reserves the right to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to certain facts, evidence, documents, and things in these responses.

### GENERAL OBJECTIONS

1.      Defendant objects to Plaintiffs' definition of "The Rams" as including Defendant's "subsidiaries, divisions, predecessors, parent corporations, affiliates, officers, directors, agents, representatives and employees" as overbroad, unduly burdensome, oppressive, and irrelevant.   The only defendant in this case is The St. Louis Rams, LLC.   As made clear in its corporate disclosure statement, Defendant is wholly owned by its members, ITB Football Company, L.L.C., and KSE Football, LLC.   Requiring Defendant to respond for entities that are not parties to this suit and provide information not within its possession, custody, or control is improper.   In responding to Plaintiffs' discovery, Defendant will respond only on behalf of itself, that is, The St. Louis Rams, LLC, and not on behalf of separate legal entities or individuals.

2.      Defendant objects to Plaintiffs' definition of "identify" or "identity" with respect to documents as overbroad, unduly burdensome, oppressive, irrelevant, and beyond the scope of Defendant's obligations under the Federal Rules of Civil Procedure and applicable local rules. Stating the "author, addressee, persons copied, date, subject matter and document character" of each identified document would impose an inordinate amount of time and expense upon Defendant.

3.     Defendant objects to Plaintiffs' definition of "identify" or "identity" with respect to individuals as overbroad, unduly burdensome, oppressive, irrelevant, and beyond the scope of Defendant's obligations under the Federal Rules of Civil Procedure and applicable local rules. Stating the "last known residence address and telephone number of [each identified individual] and the name, address, and telephone number of the last known place of business where such individual is or was employed" would impose an inordinate amount of time and expense upon Defendant.

4.     Defendant objects to Plaintiffs' definition of "possess" or "possession" as including information or documents to which Defendant has "access to, or . . . knowledge of." Defendant will only identify and produce information or documents that are in its possession, custody, or control.

5.     Defendant objects to each Interrogatory to the extent it seeks documents or information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, the self-investigation privilege, the joint defense or common interest privileges, or any other applicable law.  Nothing contained in these responses is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work-product protection, or any other applicable privilege or doctrine.  Responding to each Interrogatory, Defendant will not undertake to provide privileged or otherwise protected information or documents.

6.     Defendant objects to the "Definitions" and "Special Instructions" sections, and each Interrogatory to the extent they purport to impose obligations upon Defendant other than or beyond those required by the Federal Rules of Civil Procedure or any local rule.  Defendant will follow the applicable rules in responding to Plaintiffs' discovery requests.

7.      Defendant objects to each Interrogatory to the extent the response sought is overbroad, unduly burdensome, oppressive, and irrelevant, and/or compliance with the request would be cost-prohibitive, impractical, and/or impossible, particularly those Interrogatories that seek a response that is already in the possession of Plaintiffs, already known by Plaintiffs, or is generally obtainable by Plaintiffs from public documents.

8.      Defendant objects to each Interrogatory to the extent it seeks information or documents that are not within Defendant's possession, custody, or control.  Defendant objects to each Interrogatory to the extent it prematurely seeks disclosure of (a) information relating to its contentions, opinions, and allegations, or (b) information concerning facts that have yet to be disclosed during the discovery process and that are not presently in its possession, custody or control.

9.      These General Objections are applicable to and incorporated in each of Defendant's responses below as if specifically set forth herein.  The stating of specific objections to a particular Interrogatory shall not be construed as a waiver of Defendant's General Objections nor does the restatement of, or specific reference to, a General Objection in the response to a particular Interrogatory waive any other General Objection.  Additionally, unless otherwise specifically stated, Defendant's objections to each Interrogatory apply to the entire Interrogatory.

10.     Defendant's responses to these Interrogatories are made subject to, and without waiving or intending to waive, any of the objections noted above, as well as:

        a.   all questions as to competency, relevancy, materiality, privilege, and admissibility
             as evidence for any purpose of any of the documents referred to or responses

given, or the subject matter thereof in any subsequent proceeding in, or any trial of, this action or any other action or proceeding;

b.   the right to object to other discovery procedures involving or related to the subject matter of the Interrogatories herein responded to; and

c.   the right at any time to revise, correct, add to, or clarify any of the responses set forth herein.

## INTERROGATORIES

1.      State how many PSLs were sold by the Rams both prior to the first home game played by the Rams in St. Louis, and in each year thereafter, and how many of those PSLs were sold to persons who executed a PSL Agreement in the form attached to Plaintiff's Petition as Exhibit "1."

**ANSWER:**  Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding the total number of personal seat licenses ("PSLs") sold by the Rams in any given year is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory encompasses information pertaining to persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.

Defendant further objects to this Interrogatory to the extent it seeks information that cannot be electronically generated from Defendant's databases.  As an initial matter, Defendant's electronic databases do not contain any information about PSL transactions that was captured prior to 2006.  Even for subsequent years, Defendant's electronic databases do not store

information about whether a given PSL was sold by the Rams, including in the form of agreement attached to Plaintiffs' Petition as Exhibit 1. Nor do Defendant's electronic databases indicate the number of PSLs sold in any given year. To attempt to make such determinations would require a manual review of the thousands of hard-copy files created for individual PSL purchasers. Moreover, Defendant's electronic records do not necessarily reflect the date on which a person or entity purchased a PSL. Defendant's data are comprised of annual reports that indicate the status of a given PSL as of the end of the year. While these reports contain a field for the "add date" of a given transaction, the "add date" merely indicates the last day in a given year on which the subject transaction was updated in Defendant's electronic databases.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that, upon entry of an appropriate protective order, it will produce annual reports from its electronic systems identifying the names of persons and entities that were the PSL owners of record as of the end of each year from 2006 to 2015. To the extent that the "add dates" are reasonably available in Defendant's electronic databases, Defendant will include such information in its production. As explained in Defendant's foregoing objections, Defendant's data reports will not necessarily identify the date on which any given PSL was sold. Nor will they identify whether any given PSL was sold by the Rams or subject to any given form of agreement, including the form of agreement attached to Plaintiffs' Petition as Exhibit 1.


2.      State, by year, the total amount of revenue received by the Rams from:

   (a)      the sale of PSLs by the Rams,

   (b)      the upgrade of PSLs; and

   (c)      the transfer of PSLs.

**ANSWER:**  Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding the total revenue received by the Rams for sales, upgrades, or transfers of PSLs in any given year is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory encompasses information pertaining to revenue generated from persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.  Additionally, Defendant objects to this Interrogatory to the extent it seeks information that is not available from its electronic systems.  Defendant's electronic systems do not contain information about the revenue received from PSL upgrades in a manner that is separate and apart from the revenue generated from the sales of PSLs generally.  Moreover, this Interrogatory is irrelevant because Plaintiffs have not prayed for damages, restitution, or any other form of monetary relief in this declaratory judgment action.

Subject to and without waiving the foregoing objections or the General Objections, and upon entry of an appropriate protective order, Defendant will provide its annual revenue from 1995 to 2015 attributable to sales of PSLs and to PSL transfer fees.  As explained in the foregoing objections, Defendant does not have information about the amount of revenue it received that is specifically attributable to PSL upgrades, and thus that information will not be provided.

3.     Did the Rams require each person who purchased PSLs directly from it, at any time from January 1, 1994 through December 31, 2015, to sign (or otherwise agree to) the form of agreement attached as Exhibit "1" to Plaintiff's Petition?  If not, please attach to your answer

a copy of all other forms of PSL Agreements entered into between the Rams and PSL purchasers.

**ANSWER:** Defendant objects to this Interrogatory as unduly burdensome. Determining whether the Rams required any person who purchased PSLs from it during the over twenty-year period described by this Interrogatory would require a manual review of the thousands of hard-copy files created for individual PSL purchasers.

Subject to and without waiving the foregoing objections or the General Objections, Defendant responds that the Rams are unaware of any form of agreement other than the one attached as Exhibit 1 to Plaintiff's Petition that was used in the ordinary course of business to sell PSLs directly from the Rams.

4.     State how the funds received from sale of PSLs sold directly by the Rams were utilized by the Rams.

**ANSWER:** Defendant objects to this Interrogatory as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case. How the Rams used funds received from the sales of PSLs is wholly unrelated to this lawsuit, which concerns whether certain PSL holders have contractual rights to purchase season tickets or transfer PSLs subsequent to the Rams' 2016 relocation to the Los Angeles, California, area. Additionally, tracing how the funds received from sales of PSLs over the course of approximately 20 years would require an inordinate amount of time and impose an unwarranted burden and expense upon Defendant.

5.     If Request for Admission #5 is not admitted, identify how the agreement was amended.

**ANSWER:**  Defendant objects to this Interrogatory as vague and ambiguous, and as failing to describe the information sought with reasonable particularity.  Request for Admission No. 5 asks Defendant to "[a]dmit Gretchen Schmidt is or was an employee of the Rams," and does not define or otherwise clarify the "agreement" to which this Interrogatory refers.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that Request for Admission No. 5 is admitted, and thus this Interrogatory does not call for a response.

6.     State how many sets of season tickets were purchased by PSL holders for Rams' home games played during the 2015 season, and of this amount, state how many sets of season tickets were sold to:

(a)     persons who had purchased PSLs from the Rams prior to the Rams' first home game in St. Louis;

(b)     persons who purchased PSLs from the Rams after the Rams played their first home game in St. Louis;

(c)     persons who had taken transfer of PSLs, and paid a transfer fee to the Rams after the Rams' first season in St. Louis; and

(d)     persons who upgraded their PSLs after the Rams' first season in St. Louis.

**ANSWER:**  Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding PSL holders that purchased season tickets for the 2015 season is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory could encompass information pertaining to persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.  Additionally, the term

9

"sets of season tickets" is vague, ambiguous, and fails to describe the information sought with reasonable particularity.

Defendant further objects to this Interrogatory to the extent it seeks information that cannot be electronically generated from Defendant's databases. Defendant's data are comprised of annual reports that indicate the status of a given transaction as of the end of the year; they do not store or report information in a manner that indicates whether a given person or entity: (a) purchased PSLs from the Rams prior to the Rams' first home game in St. Louis; (b) purchased PSLs from the Rams after the Rams played their first home game in St. Louis; (c) received a transferred PSL and paid a transfer fee to the Rams after the Rams' first season in St. Louis; or (d) upgraded their PSLs after the Rams' first season in St. Louis. To attempt to make such determinations would require a manual review of the thousands of hard-copy files created for individual PSL purchasers. Moreover, Defendant's electronic databases do not necessarily identify which PSL holders purchased season tickets using PSLs during the 2015 season (or, for that matter, any other season). Defendant's databases can only identify transactions involving the purchase of tickets that received season ticket pricing. Such pricing was used, on a transaction-by-transaction basis, to discount tickets for purchasers other than and in addition to those who held PSLs. While Defendant's data contains an "account type description" field, such information was not required to transact sales, and this field defaulted to a "PSL" designation in sales of tickets that received season ticket pricing, even if the sale did not involve a PSL. Therefore, the "account type description" field is not reliable for purposes of identifying which transactions were associated with PSLs.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that, upon entry of an appropriate protective order, it will produce a report from

10

its electronic systems identifying the account type descriptions and the names of the persons and entities that received season ticket pricing for tickets purchased in 2015.  Defendant's report will also include the number of seats associated with each transaction.  As explained in Defendant's foregoing objections, Defendant's report will only reflect the status of transactions as of the end of 2015, and Defendant's report will include persons and entities that received season ticket pricing on the purchase of tickets, regardless of whether such persons and entities held PSLs or used PSLs to obtain the tickets identified in the transactions listed on the report.  Due to the limitations of Defendant's electronic systems, Defendant's report will not indicate whether the purchaser of tickets in a given transaction (a) purchased PSLs from the Rams prior to the Rams' first home game in St. Louis; (b) purchased PSLs from the Rams after the Rams played their first home game in St. Louis; (c) received a transferred PSL and paid a transfer fee to the Rams after the Rams' first season in St. Louis; or (d) upgraded their PSLs after the Rams' first season in St. Louis.

7.      For those persons who held PSLs and purchased season tickets for the 2015 season, state:

(a)      how many had purchased their PSLs from the Rams prior to the Rams playing their first home game in St. Louis;

(b)      how many purchased PSLs from the Rams after the Rams played their first home game in St. Louis;

(c)      how many took transfer of their PSLs from someone else and paid a transfer fee to the Rams; and

(d)      how many who had initially purchased PSLs through Fans, Inc., subsequently upgraded their PSLs and paid an upgrade fee to the Rams.

**ANSWER:**   Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding persons who held PSLs and purchased season tickets for the 2015 season is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory could encompass information pertaining to persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.  Additionally, the information requested by this Interrogatory is duplicative of the information requested by Interrogatory No. 6.

Defendant further objects to this Interrogatory to the extent it seeks information that cannot be electronically generated from Defendant's databases.  Defendant's data are comprised of annual reports that indicate the status of a given transaction as of the end of the year; they do not contain sufficient data to determine whether a given person or entity: (a) purchased PSLs from the Rams prior to the Rams' first home game in St. Louis; (b) purchased PSLs from the Rams after the Rams played their first home game in St. Louis; (c) received a transferred PSL and paid a transfer fee to the Rams after the Rams' first season in St. Louis; or (d) upgraded their PSLs after the Rams' first season in St. Louis.  To attempt to make such determinations would require a manual review of the thousands of hard-copy files created for individual PSL purchasers.  Moreover, Defendant's electronic databases do not necessarily identify which PSL holders purchased season tickets using PSLs during the 2015 season (or, for that matter, any other season).  Defendant's databases can only identify transactions involving the purchase of tickets that received season ticket pricing.  Such pricing was used, on a transaction-by-transaction basis, to discount tickets for purchasers other than and in addition to those who held

12

PSLs.  While Defendant's data contains an "account type description" field, such information was not required to transact sales, and this field defaulted to a "PSL" designation in sales of tickets that received season ticket pricing, even if the sale did not involve a PSL.  Therefore, the "account type description" field is not reliable for purposes of identifying which transactions were associated with PSLs.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that the report it will provide in response to Interrogatory No. 6, upon entry of an appropriate protective order, will also be produced in response to this Interrogatory.  To the extent *any* information responsive to this Interrogatory may be gleaned from Defendant's electronic systems at all, Plaintiffs may discern it using such information to be produced with no greater burden that that which would be imposed upon Defendant if it undertook to do so itself.  As explained in Defendant's foregoing objections, Defendant's report will only reflect the status of transactions as of the end of 2015, and Defendant's report will include persons and entities that received season ticket pricing on the purchase of tickets, regardless of whether such persons and entities held PSLs or used PSLs to obtain the tickets identified in the transactions listed on the report.  Due to the limitations of Defendant's electronic systems, Defendant's report will not indicate whether the purchaser of tickets in a given transaction (a) purchased PSLs from the Rams prior to the Rams' first home game in St. Louis; (b) purchased PSLs from the Rams after the Rams played their first home game in St. Louis; (c) received a transferred PSL and paid a transfer fee to the Rams after the Rams' first season in St. Louis; or (d) upgraded their PSLs after the Rams' first season in St. Louis.

8.      Identify the different monetary categories of PSLs which were sold by the Rams pursuant to the Agreement attached as Exhibit "1" to Plaintiff's Petition.

13

**ANSWER:**  Defendant objects to this Interrogatory.  The term "monetary categories of PSLs" is vague, ambiguous, and fails to describe the information sought with reasonable particularity.  Additionally, this Interrogatory is irrelevant and not proportional to the needs of this case.  Plaintiffs have not prayed for damages, restitution, or any other form of monetary relief in this declaratory judgment action; thus, information pertaining to "monetary categories" of PSLs is wholly unrelated to the claims and issues in this case.  Moreover, Defendant objects to this Interrogatory to the extent it seeks information not reasonably available in Defendant's electronic systems.  Over the course of approximately 20 years of selling PSLs, the pricing of PSLs changed and was subject to several individualized exceptions, for example, in the case of obstructed seats.  To reconstruct the pricing of thousands of PSLs over the course of 20 years would be unduly burdensome and have minimal to no value in this case, which only relates to the persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.

Subject to and without waiving the foregoing objections and the General Objections, Defendant states that, upon entry of an appropriate protective order, it will produce a report from its electronic systems that contains the prices of PSLs associated with the pricing codes used in Defendant's databases and reflected in other reports generated from such databases for purposes of responding to these Interrogatories.  As explained in Defendant's above objections, Defendant is providing this information as it was maintained in Defendant's electronic databases at the end of 2015.  This information does not include any historical changes in PSL prices over the approximately 20 years that PSLs were sold for the stadium formerly known as the Edward Jones Dome.  Nor does it reflect the many individualized exceptions in price changes for various PSLs, such as those for obstructed seats.

14

9. Identify

    (a)    how many PSLs were held at each monetary level in 2015;

    (b)    each person holding a PSL at each such monetary level; and

    (c)    the number of PSLs held by each such person, and whether each person identified in your answer had signed or otherwise agreed to be bound by a PSL Agreement in the form of Exhibit "1" to Plaintiffs' Petition.

**ANSWER:** Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case. The request for information in subset (a) of this Interrogatory, regarding all PSLs held in 2015, is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles. Relatedly, subsets (b) and (c) of this Interrogatory are overbroad, irrelevant, and not proportional to the needs of this case, because they are not limited in temporal scope at all. Thus, the information Plaintiffs seek in each subset of this Interrogatory could encompass information pertaining to persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles. Defendant objects to any request for information beyond that pertaining to the putative class Plaintiffs seek to represent.

Defendant further objects to this Interrogatory to the extent it seeks information that cannot be electronically generated from Defendant's databases. Defendant's electronic databases do not store information regarding whether any given PSL holder signed or otherwise agreed to a PSL agreement in any given form, including the form of agreement attached to Plaintiffs' Petition as Exhibit 1. Additionally, Defendant's data are comprised of annual reports that indicate the status of a given PSL as of the end of the year; they do not indicate whether a given PSL was transferred or upgraded, including any transfers or upgrades that occurred

throughout the year 2015. Accordingly, Defendant's electronic databases do not necessarily reflect how PSLs were priced throughout all of 2015 or the identity of each person or entity that held a PSL during all of 2015, as such information could have changed over the course of the year via transfers or upgrades. To attempt to make the determinations necessary to provide the information requested in Interrogatory No. 9 would require the unduly burdensome undertaking of a manual review of the thousands of hard-copy files created for individual PSL purchasers.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that the 2015 annual report to be provided in response to Interrogatory No. 1, upon entry of an appropriate protective order, will contain pricing codes associated with each of the PSLs identified therein. To the extent *any* information responsive to this Interrogatory may be gleaned from Defendant's electronic systems, Plaintiffs may discern it using such information to be produced with no greater burden than that which would be imposed upon Defendant if it undertook to do so itself. As explained in Defendant's foregoing objections, Defendant's report will only reflect the status of PSLs as of the end of 2015, and it will not reflect any changes in the status of PSLs that occurred over the course of 2015, such as transfers or upgrades. Nor will Defendant's report include information regarding whether any given PSL holder signed or otherwise agreed to a PSL agreement in any given form, including the form of agreement attached to Plaintiffs' Petition as Exhibit 1.

10.    State what the procedure was for the transfer of a PSL, including identifying all contracts or other documents which a transferee was required to sign (or otherwise agree to) to take transfer of a PSL, and all documents provided or made available to a transferee by the Rams

in connection with a transfer.  If the procedure changed over time, describe each such change and state the date it went into effect.

**ANSWER:**  Defendant objects to this Interrogatory as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case, in that it asks Defendant to identify "all documents provided or made available to a transferee by the Rams in connection with a transfer," which could include a broad array of documents and procedures that varied from transaction to transaction depending on the unique circumstances of a particular transfer and the individualized inquiries from, and communications with, the subject transferor or transferee. Additionally, this Interrogatory is unduly burdensome in that it asks Defendant to describe any changes in transfer procedures over the approximately 20 years that the Rams were located in St. Louis; to reconstruct any changes in the procedures for transfers over the course of 20 years would be unduly burdensome and have minimal to no value in this case, which only relates to the persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.

Subject to and without waiving the foregoing objections and the General Objections, Defendant states that, generally speaking, transfers were processed both manually and electronically at https://rams.seasonticketrights.com.  Manually processed transfers generally involved the completion of a transfer form, with the top half to be filled out by the transferor and the bottom half to be filled out by the transferee.  For each transfer, payment of a transfer fee that corresponded to the given PSL price was also required. Forms and payment information for transfer fees could be turned in to the Rams' ticket office, faxed to the Rams, or emailed to the Rams.  Transfers processed electronically generally involved the same information and fees as those required by manual transfers, but were instead processed online at

https://rams.seasonticketrights.com.   After the appropriate documentation and fees were submitted to effectuate the transfer (either manually or online), the transferor would receive a letter confirming the transfer of the given PSL, and the transferee would receive a welcome letter, a Schedule 1 form to the PSL agreement, and an invoice for season tickets if such tickets had not already been bought for the applicable season.


11.    State what the procedure was for a PSL holder to "upgrade" from a PSL with a lower monetary value to a PSL with a higher monetary value ("PSL upgrade"), including identifying all contracts or other documents which a PSL holder was required to sign (or otherwise agree to) at the time of the upgrade, and all documents provided or made available by the Rams to a PSL holder in connection with the upgrade.  If the procedure changed over time, describe each such change and state the date it went into effect.

**ANSWER:**  Defendant objects to this Interrogatory as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of this case, in that it asks Defendant to identify "all documents provided or made available by the Rams to a PSL holder in connection with [an] upgrade," which could include a broad array of documents that varied from transaction to transaction depending on the unique circumstances of a particular upgrade and the individualized inquiries from, and communications with, the subject PSL holder.   Additionally, this Interrogatory is unduly burdensome in that it asks Defendant to describe any changes in upgrade procedures over the approximately 20 years that the Rams were located in St. Louis; to reconstruct any changes in the procedures for upgrades over the course of 20 years would be unduly burdensome and have minimal to no value in this case, which only relates to the persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.

18

Subject to and without waiving the foregoing objections and the General Objections, Defendant states that, generally speaking, the procedures for upgrades were as follows.  After a given PSL holder had used a PSL to purchase season tickets for a given season, the PSL holder would receive a telephone call from the Rams asking whether the PSL holder would like to upgrade the PSL seats.  If the PSL holder wanted to upgrade, a new PSL agreement was executed, and the PSL holder was charged for the balance of the upgraded PSL.  PSL holders that upgraded their seats had the option to pay the upgraded PSL balance in full or spread the cost of the balance over a period of years.

12.     Identify the total revenue received by the Rams for the transfer of PSLs in each calendar year from 1995 to the present.

**ANSWER**:  Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding the total revenue received by the Rams for transfers of PSLs in any given year is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory encompasses information pertaining to revenue generated from persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles. Moreover, this Interrogatory is irrelevant because Plaintiffs have not prayed for damages, restitution, or any other form of monetary relief in this declaratory judgment action.  Defendant further objects to this Interrogatory as duplicative of Interrogatory No. 2.

Subject to and without waiving the foregoing objections or the General Objections, and upon entry of an appropriate protective order, Defendant will provide its annual revenue from 1995 to 2015 attributable to PSL transfer fees.

19

13.     Identify the total revenue received by the Rams for PSL upgrades in each calendar year from 1995 to the present.

**ANSWER:**     Defendant objects to this Interrogatory as unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case.  The request for information regarding the total revenue received by the Rams for upgrades of PSLs in any given year is overbroad, as the class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The information Plaintiffs seek in this Interrogatory encompasses information pertaining to revenue generated from persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.  Defendant further objects to this Interrogatory as duplicative of Interrogatory No. 2.  Additionally, Defendant objects to this Interrogatory to the extent it seeks information that is not available from its electronic systems.  Defendant's electronic systems do not contain information about the revenue received from PSL upgrades in a manner that is separate and apart from the revenue generated from the sales of PSLs generally.  Moreover, this Interrogatory is irrelevant because Plaintiffs have not prayed for damages, restitution, or any other form of monetary relief in this declaratory judgment action.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that it does not have information about the amount of revenue it received that is specifically attributable to PSL upgrades.  As stated in Defendant's response to Interrogatory No. 2, the information contained in Defendant's electronic systems is limited to revenue attributable to transfer fees and the sales of PSLs generally.

14.     Provide the url for every website that was authorized or utilized by the Rams to sell, upgrade, or transfer PSLs.

**ANSWER:**  Defendant objects to this Interrogatory as overbroad, irrelevant, and not proportional to the needs of this case.  The website addresses used to sell, upgrade, or transfer PSLs are wholly unrelated to this case, which concerns whether certain PSL holders have contractual rights to purchase season tickets or transfer PSLs subsequent to the Rams' 2016 relocation to the Los Angeles, California, area.

Subject to and without waiving the foregoing objections and the General Objections, Defendant states that the below two website addresses were used by the Rams to sell or transfer PSLs.  Upgrades were processed via telephone, not online.

    1.   https://rams.seasonticketrights.com; and

    2.   http://stlouisrams.com

15.     Identify the records which are or were maintained by the Rams concerning the identity of PSL holders, the sale of season tickets to PSL holders, the transfer of PSLs, and/or the upgrade of PSL holders.

**ANSWER:**  Defendant objects to this Interrogatory as unduly burdensome.  Identifying each and every record pertaining to the identity of PSL holders, the sale of season tickets to PSL holders, the transfer of PSLs, and/or the upgrade of PSLs would require the monumental task of, among other things, manually reviewing the thousands of hard-copy files created for individual PSL purchasers.  Defendant further objects to this Interrogatory to the extent it seeks information that falls within the protection of the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving the foregoing objections and the General Objections, Defendant generally identifies the following non-privileged categories of documents that concern the identity of PSL holders, the sales of season tickets to PSL holders, the transfer of PSLs, and the upgrade of PSLs:

      1.   Hard-copy files created for individual PSL purchasers; and

      2.   Archtics Ticket System, a Ticketmaster proprietary system used to transact ticket sales and PSL sales.

16.    State whether PSL holders were required to sign PSL agreements.  If so, state whether copies of each such form of Agreement have been maintained by the Rams.

**ANSWER:**  Defendant objects to this Interrogatory as unduly burdensome, irrelevant, and not proportional to the needs of this case.  To determine whether all PSL holders were required to sign PSL agreements, and to determine whether copies of each agreement used to sell PSLs were maintained by the Rams, would require a manual review of the thousands of hard-copy files created for individual PSL purchasers.  Additionally, the information Plaintiffs seek in this Interrogatory encompasses information pertaining to persons and entities that did not still hold PSLs at the time the Rams relocated from St. Louis to Los Angeles.  The class that Plaintiffs seek to represent is limited to persons and entities that still held PSLs at the time the Rams relocated from St. Louis to Los Angeles.  Thus, this Interrogatory is overbroad.

Subject to and without waiving the foregoing objections or the General Objections, Defendant states that the Rams have maintained blank copies of each form of PSL agreement used to sell PSLs.  Defendant cannot determine whether the PSL agreements associated with

each individual transaction have been maintained by the Rams without undertaking a manual review of the thousands of hard-copy files created for individual PSL purchasers.

## VERIFICATION

I, _Steven Moore_, for The St. Louis Rams, LLC (the "Rams"),
state that the foregoing answers to Plaintiffs' Interrogatories were compiled by employees of the
Rams in the State of California and are based on the personal knowledge of those employees and
a review of documents maintained by the Rams in the ordinary course of business.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and
correct.

Dated: _3-16_____, 2017

_____

24

Dated: March 16, 2017                         DENTONS US LLP

                          By:      /s/ Roger K. Heidenreich
                                   Roger K. Heidenreich, #40898MO
                                   Elizabeth T. Ferrick, #52241MO
                                   Amy E. Sestric, #66219MO
                                   One Metropolitan Square, Suite 3000
                                   St. Louis, Missouri 63102
                                   Telephone: (314) 241-1800
                                   Facsimile:  (314) 259-5959
                                   roger.heidenreich@dentons.com
                                   elizabeth.ferrick@dentons.com
                                   amy.sestric@dentons.com

                                   *and*

                                   James A. Klenk, *admitted pro hac vice*
                                   Anders C. Wick, *admitted pro hac vice*
                                   233 South Wacker Drive, Suite 5900
                                   Chicago, Illinois 60606
                                   Telephone: (312) 876-8000
                                   Facsimile: (312) 876-7934
                                   james.klenk@dentons.com
                                   anders.wick@dentons.com

                                   *Attorneys for Defendants The St. Louis Rams, LLC*

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2017 the foregoing document was served via electronic and U.S. Mail, postage prepaid, upon the following:

David R. Bohm
DANNA MCKITRICK, P.C.
7701 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
Telephone: (314) 726-1000
Facsimile: (314) 725-6592
dbohm@dmfirm.com
*Attorney for Plaintiffs Envision, LLC,*
*Robert D. Bohm, Sue Bohm, and Edward E. Mock*

*/s/ Amy E. Sestric* _____