UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-172 SNLJ |
| | ) | No. 4:16-CV-189 |
| | ) | No. 4:16-CV-262 |
| THE ST. LOUIS RAMS, LLC, | ) | No. 4:16-CV-297 |
| | ) | CONSOLIDATED |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant The St. Louis Rams, LLC's motion to stay pending arbitration (#134).

Defendant recently filed a third-party complaint against the the St. Louis Convention & Visitors Commission[1] ("CVC") and a counterclaim against plaintiff McAllister. Although some familiarity with the facts of this case will be assumed, a brief summary of plaintiff McAllister's claims are necessary. McAllister was a season ticket holder of seats for the then-St. Louis Rams football games. He bought his "personal seat licenses" or "PSLs" in 1995 through an entity created for the purpose of bringing the Rams to St. Louis known as FANS, Inc. The PSLs were sold pursuant to a form contract known as the FANS Agreement. The next year, the Rams began selling PSLs directly pursuant to a nearly identical form contract known as the Rams Agreement; McAllister bought two PSLs pursuant to the Rams Agreement in 2005. McAllister alleges that, when the Rams moved the team to California in 2016, the Rams breached both Agreements by failing to provide a refund to McAllister and thousands of other PSL

---

[1] The St. Louis Convention & Visitors Commission is sometimes referred to as the Regional Convention & Visitors Commision. *Compare, e.g.*, #149 ¶ 2, #159 ¶ 6.

1

holders. McAllister brought claims for breach of contract, actual and punitive damages and attorneys' fees pursuant to the Missouri Merchandising Practices Act, and, in the alternative, that the Agreements are illusory and void and that the Rams are thus liable to plaintiff and other PSL owners for refunds for unjust enrichment.[2]

Defendant Rams maintain that FANS acted as an agent to the CVC in the sale of the first contract PSLs and that the proceeds of these sales were used to pay FANS's and the CVC's obligations incurred in connection with inducing an NFL team to relocate to St. Louis. FANS's relationship with the Rams, the CVC, and another entity, the Regional Convention and Sports Complex Authority (the "RSA") is described in detail in a series of "Relocation Agreements" entered into in 1995. The Rams allege that the Relocation Agreemnts set forth terms on which the CVC is obligated to indemnify the Rams for claims arising out of the CVC's operations, including FANS's sale of PSLs on the CVC's behalf. The Relocation Agreements require arbitration, however, so the Rams filed both a third-party complaint against the CVC in this case *and* an Arbitration Demand. Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, requires courts to stay "any suit…upon any issue referable to arbitration." Missouri state law also requires such a stay. § 435.355.1.5 RSMo. Staying proceedings between the Rams and the CVC is

---

[2] On September 21, 2016, this Court granted judgment on the pleadings to the Rams as to McAllister's claims on the Rams Agreement. The Rams, however, lost their motion for judgment on the pleadings based on the Rams Agreement against two other plaintiff groups, in *Envision, LLC, et al. v. The St. Louis Rams, LLC*, No. 4:16-CV-00262-SNLJ (E.D. Mo.) and *Arnold, et al. v. The St. Louis Rams*, LLC, No. 4:16-cv-00297-SNLJ (E.D. Mo.), who claimed that the Agreements required Rams to use Best Efforts to secure tickets for seats at games where the transferred home games are played. The Rams won their motion for judgment on the pleadings based on the FANS Agreement against the *Envision* and *Arnold* plaintiffs, so the FANS Agreement is no longer at issue for the *Envision* and *Arnold* plaintiffs. The *Envision* and *Arnold* plaintiffs argued that their cases should not be stayed even if *McAllister*'s case was stayed; however, as explained below, the Court need not address their arguments in light of its decision not to stay the litigation as against the Rams.

mandatory. However, staying the remainder of the claims --- *i.e.*, staying the litigation between the non-arbitrating plaintiff groups and the Rams --- is discretionary. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983).

The Rams' third party complaint against the CVC seeks in Count I declaratory relief as to the Rams and CVC's respective obligations under the CPSL Agreement, the FANS PSLs, and other Relocation Agreements. The Rams state that resolution of that Count I is a necessary predicate to complete resolution of the plaintiffs' existing claims related to FANS-issued PSLs because it is the CVC, not the Rams, that assumed FANS's obligations and because FANS sold FANS PSLs as an agent to the CVC --- not as the Rams' agent. Counts II and III of the Rams' third party complaint are for contractual and equitable indemnity arising out of the same Relocation Agreements and, according to the Rams, they too will establish that the CVC will be responsible for the FANS-related claims. The Rams thus maintain that the CVC will have the greatest interest in defending against those claims in this proceeding.

"To evaluate a discretionary stay pending arbitration, courts weigh three factors: (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbiters' decision; and (3) the prejudice that may result from delays." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 845 (8th Cir. 2012) (citing *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 242 F.3d 777, 783 (8th Cir. 2001)).

This Court held in its order on the Rams' motion to reconsider that the matter of Rams' liability on the FANS Agreement must be saved for later litigation not limited to the pleadings. (#63 at 2.) The Rams suggest that if this Court proceeds to determine the Rams' liability on the FANS Agreement, the Court's ruling may be inconsistent with the arbitrators' determination in the arbitration between the Rams and the CVC. However,

3

the Court finds that inconsistent rulings are unlikely here.  As in the trial court's order preceding *Reid*, the fact that the arbitrator will determine what is the two claims for indemnification between the Rams and the CVC does not affect plaintiffs' ultimate claim for a refund based on the FANS Agreement.  *See A.O.A. v. Doe Run Res. Corp.*, 4:11CV44 CDP, 2011 WL 6091724, at *5 (E.D. Mo. Dec. 7, 2011) ("Regardless of whether the [third party] must indemnify the defendants or defend the case, plaintiffs do not lose their right to sue the individuals of their choice), aff'd sub nom. *Reid*, 701 F.3d 840.

In addition, the Rams' additional claim against CVC for declaratory relief also appears different than McAllister's claims against the Rams.  McAllister contends that --- regardless of the contractual relationship between the Rams and CVC --- the Rams held themselves out as selling PSLs under the FANS Agreement, giving rise to a claim of apparent authority that would not be present in the arbitration.  That is, even if the Rams prevail in the arbitration, McAllister may still not be precluded from suing the Rams under the pleaded theory of apparent authority.

The second factor also weighs in favor of not staying the entire litigation because it appears plaintiffs are not bound by the arbitration, at least for the same reason that McAllister's apparent authority claim differs from the Rams' claims against the CVC.  *See id.*  Only the Rams and the CVC are bound by the arbitration.

Third, the risk of prejudice is high.  As time goes on, evidence will grow only more stale, as evidenced by --- for example --- the Rams' unwillingness to authenticate emails sent from @rams.nfl.com by a former Rams employee.  The plaintiffs are thus eager to pursue their claims, as nearly 18 months have passed since this litigation began.  Although defendant argues that plaintiffs would benefit by allowing the arbitration to

4

proceed to judgment, all the responding plaintiffs clearly disagree and would prefer not to wait for that judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant The St. Louis Rams, LLC's motion for stay pending arbitration is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that this matter is STAYED only as to between The St. Louis Rams, LLC and the St. Louis/Regional Convention & Visitors Commission.

Dated this __4th__ day of August, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE