# EXHIBIT 5

SEP 30 '94  05:53PM PRICE WATERHOUSE

O                                    1023                                    P.2

FEDERAL                                    2.129

# DRAFT

| Form **1023** (Rev. July 1993) Department of the Treasury Internal Revenue Service | **Application for Recognition of Exemption** Under Section 501(c)(3) of the Internal Revenue Code | OMB No. 1545-0056 Expires 5-31-96 If exempt status is approved, this application will be open for public inspection. |

Read the instructions for each Part carefully.

**A User Fee must be attached to this application.**

If the required information and appropriate documents are not submitted along with Form 8718 (with payment of the appropriate user fee), the application may be returned to you.

**Complete the Procedural Checklist on page 7 of the instructions.**

## Part I    Identification of Applicant

| **1a** Full name of organization (as shown in organizing document) | | **2** Employer identification number (if none, see instructions.) |
|---|---|---|
| Fans, Inc. | | 43 : 1689098 |
| **1b** c/o Name (if applicable) | | **3** Name and telephone number of person to be contacted if additional information is needed |
| Richard Riezman | | |
| **1c** Address (number, street, and room or suite no.) | | Richard S. Ruge |
| 120 So. Central, 10th Floor | | (202 ) 822-8534 |
| **1d** City or town, state, and ZIP code | | **4** Month the annual accounting period ends |
| St. Louis, MO 63105 | | December |

| **5** Date incorporated or formed April 15, 1994 | **6** Activity codes (See instructions.) 915  297  429 | **7** Check here if applying under section: a ☐ 501(e)  b ☐ 501(f)  c ☐ 501(k) |
|---|---|---|

**8** Did the organization previously apply for recognition of exemption under this Code section or under any other section of the Code? . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
If "Yes," attach an explanation.

**9** Is the organization required to file Form 990 (or Form 990-EZ)? . . . . . ☐ N/A ☒ Yes ☐ No
If "No," attach an explanation (see instructions).

**10** Has the organization filed Federal income tax returns or exempt organization information returns? . . ☐ Yes ☒ No
If "Yes," state the form numbers, years filed, and Internal Revenue office where filed.

**11** Check the box for the type of organization. BE SURE TO ATTACH A CONFORMED COPY OF THE CORRESPONDING DOCUMENTS TO THE APPLICATION BEFORE MAILING (See Specific Instructions, Part I, Line 11.) Get Pub. 557, Tax-Exempt Status for Your Organization, for examples of organizational documents.)

**a** ☒ Corporation—Attach a copy of the Articles of Incorporation (including amendments and restatements) showing approval by the appropriate state official; also include a copy of the bylaws. See Exhs. 1,2

**b** ☐ Trust—Attach a copy of the Trust Indenture or Agreement, including all appropriate signatures and dates.

**c** ☐ Association—Attach a copy of the Articles of Association, Constitution, or other creating document, with a declaration (see instructions) or other evidence the organization was formed by adoption of the document by more than one person; also include a copy of the bylaws.

If the organization is a corporation or an unincorporated association that has not yet adopted bylaws, check here ▶ ☐

I declare under the penalties of perjury that I am authorized to sign the application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments and to the best of my knowledge it is true, correct, and complete.

PW0200357

**Please Sign Here** ▶ ............................................  ............................................  ............................................
                              (Signature)                    (Title or authority of signer)        (Date)

For Paperwork Reduction Act Notice, see page 1 of the instructions.                    Cat. No. 17133K

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

2 130 FEDERAL

1023



~ 1023 (Rev. 7-83)

Page 2

**Part II**   Activities and Operational Information

1   Provide a detailed narrative description of all the activities of the organization—past, present, and planned. Do not merely refer to or repeat the language in the organizational document. Describe each activity separately in the order of importance. Each description should include, as a minimum, the following: (a) a detailed description of the activity including its purpose; (b) when the activity was or will be initiated; and (c) where and by whom the activity will be conducted.

SEE ATTACHMENT 1

2   What are or will be the organization's sources of financial support? List in order of size.

SEE ATTACHMENT 1

3   Describe the organization's fundraising program, both actual and planned, and explain to what extent it has been put into effect. Include details of fundraising activities such as selective mailings, formation of fundraising committees, use of volunteers or professional fundraisers, etc. Attach representative copies of solicitations for financial support.

SEE ATTACHMENT 1

PW0200358

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000406

Form 1023 (Rev. 7-93)

**DRAFT**

Page 3

**Part II    Activities and Operational Information** (Continued)

4    Give the following information about the organization's governing body:

a  Names, addresses, and titles of officers, directors, trustees, etc.

**b** Annual compensation

SEE ATTACHMENT 2

c  Do any of the above persons serve as members of the governing body by reason of being public officials
   or being appointed by public officials? . . . . . . . . . . . . . . . . . . .  ☒ Yes ☐ No
   If "Yes," name those persons and explain the basis of their selection or appointment.

SEE ATTACHMENT 2

d  Are any members of the organization's governing body "disqualified persons" with respect to the
   organization (other than by reason of being a member of the governing body) or do any of the members
   have either a business or family relationship with "disqualified persons"? (See Specific Instructions, Part
   II, Line 4d.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes ☒ No
   If "Yes," explain.

5  Does the organization control or is it controlled by any other organization? . . . . . . . .  ☐ Yes ☐ No
   Is the organization the outgrowth of (or successor to) another organization, or does it have a special
   relationship with another organization by reason of interlocking directorates or other factors? . . . .  ☒ Yes ☐ No
   If either of these questions is answered "Yes," explain.

SEE ATTACHMENT 3

6  Does or will the organization directly or indirectly engage in any of the following transactions with any
   political organization or other exempt organization (other than a 501(c)(3) organization): (a) grants;
   (b) purchases or sales of assets; (c) rental of facilities or equipment; (d) loans or loan guarantees;
   (e) reimbursement arrangements; (f) performance of services, membership, or fundraising solicitations;
   or (g) sharing of facilities, equipment, mailing lists or other assets, or paid employees? . . . . . .  ☐ Yes ☒ No
   If "Yes," explain fully and identify the other organizations involved.

7  Is the organization financially accountable to any other organization? . . . . . . . . . . .  ☒ Yes ☐ No
   If "Yes," explain and identify the other organization. Include details concerning accountability or attach
   copies of reports if any have been submitted.

SEE ATTACHMENT 3

PW0200359

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000407

SEP 30 '94  05:55PM PRICE WATERHOUSE

P. 5

Form 1023 (Rev. 7-93)

**DRAFT** Page 4

**Part II**   Activities and Operational Information *(Continued)*

**8**   What assets does the organization have that are used in the performance of its exempt function? (Do not include property producing investment income.) If any assets are not fully operational, explain their status. What additional steps remain to be completed, and when such final steps will be taken. If "None," indicate "N/A."

**SEE ATTACHMENT 3**

**9**   Will the organization be the beneficiary of tax-exempt bond financing within the next 2 years? . . . . ☐ Yes ☒ No

**10a**  Will any of the organization's facilities or operations be managed by another organization or individual under a contractual agreement? . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

**b**   Is the organization a party to any leases? . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
If either of these questions is answered "Yes," attach a copy of the contracts and explain the relationship between the applicant and the other parties.

**SEE ATTACHMENT 3**

**11**   Is the organization a membership organization? . . . . . . . . . . . . . . . . ☐ Yes ☒ No
If "Yes," complete the following:

**a**   Describe the organization's membership requirements, and attach a schedule of membership fees and dues.

**b**   Describe the organization's present and proposed efforts to attract members, and attach a copy of any descriptive literature or promotional material used for this purpose.

**c**   What benefits do (or will) the members receive in exchange for their payment of dues?

**12a**  If the organization provides benefits, services, or products, are the recipients required, or will they be required, to pay for them? . . . . . . . . . . . . . . . . . . . . ☒ N/A ☐ Yes ☐ No
If "Yes," explain how the charges are determined, and attach a copy of the current fee schedule.

**b**   Does or will the organization limit its benefits, services, or products to specific individuals or classes of individuals? . . . . . . . . . . . . . . . . . . . . . . . . . ☒ N/A ☐ Yes ☐ No
If "Yes," explain how the recipients or beneficiaries are or will be selected.

**13**   Does or will the organization attempt to influence legislation? . . . . . . . . . . ☐ Yes ☒ No
If "Yes," explain. Also, give an estimate of the percentage of the organization's time and funds that it devotes or plans to devote to this activity.

**14**   Does or will the organization intervene in any way in political campaigns, including the publication or distribution of statements? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
If "Yes," explain fully.

PW0200360

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000408

Form 1023 (Rev. 7-93)

**DRAFT**

Page 5

**Part III    Technical Requirements**

**1**   Are you filing Form 1023 within 15 months from the end of the month in which your organization was
created or formed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes   ☐ No
If you answer "Yes," do not answer questions on lines 2 through 7.

**2**   If one of the exceptions to the 15-month filing requirement shown below applies, check the appropriate box and proceed
to question 8.

   **Exceptions—You are not required to file an exemption application within 15 months if the organization:**

   ☐ **a**   Is a church, interchurch organization of local units of a church, a convention or association of churches, or an
integrated auxiliary of a church (see Instructions);

   ☐ **b**   is not a private foundation and normally has gross receipts of not more than $5,000 in each tax year; or

   ☐ **c**   is a subordinate organization covered by a group exemption letter, but only if the parent or supervisory organization
timely submitted a notice covering the subordinate.

**3**   If the organization does not meet any of the exceptions on line 2, are you filing Form 1023 within 27
months from the end of the month in which the organization was created or formed?. . . . . . .   ☐ Yes   ☐ No

   If "Yes," your organization qualifies under section 4.01 of Rev. Proc. 92-85, 1992-42 I.R.B. 32, for an
automatic 12-month extension of the 15-month filing requirement. Do not answer questions 4 through 7.

   If "No," answer question 4.

**4**   If you answer "No" to question 3, has the organization been contacted by the IRS regarding its failure to
file Form 1023 within 27 months from the end of the month in which the organization was created or
formed?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☐ No

   If "No," your organization qualifies for an extension of time to apply under the "reasonable action and
good faith" requirements of section 5.01 of Rev. Proc. 92-85. Do not answer questions 5 through 7.

   If "Yes," answer question 5.

**5**   If you answer "Yes" to question 4, does the organization wish to request relief from the 15-month filing
requirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☐ No

   If "Yes," give the reasons for not filing this application prior to being contacted by the IRS. See Specific
Instructions, Part III, Line 5, before completing this item. Do not answer questions 6 and 7.

   If "No," answer question 6.

**6**   If you answer "No" to question 5, your organization's qualification as a section 501(c)(3) organization can
be recognized only from the date this application is filed with your key District Director. Therefore, do you
want us to consider the application as a request for recognition of exemption as a section 501(c)(3)
organization from the date the application is received and not retroactively to the date the organization
was created or formed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☐ No

**7**   If you answer "Yes" to the question on line 6 above and wish to request recognition of section 501(c)(4) status for the period
beginning with the date the organization was formed and ending with the date the Form 1023 application was received (the
effective date of the organization's section 501(c)(3) status), check here ▶ ☐   and attach a completed page 1 of Form 1024
to this application.

PW0200361

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000409

SEP 30 '94  05:57PM  PRICE WATERHOUSE    1023                                    P.7

**DRAFT** Page

Form 1023 (Rev. 7-93)

**Part III**   Technical Requirements *(Continued)*

---

8   Is the organization a private foundation?
☐ **Yes**  (Answer question on line 9.)
☒ **No**  (Answer question on line 10 and proceed as instructed.)

---

9   If you answer "Yes" to the question on line 8, does the organization claim to be a private operating foundation?
☐ **Yes**  (Complete Schedule E)
☐ **No**

After answering the question on this line, go to Part IV.

---

10   If you answer "No" to the question on line 8, indicate the public charity classification the organization is requesting by checking the box below that most appropriately applies:

**THE ORGANIZATION IS NOT A PRIVATE FOUNDATION BECAUSE IT QUALIFIES:**

| | | |
|---|---|---|
| a ☐ | As a church or a convention or association of churches (CHURCHES MUST COMPLETE SCHEDULE A.) | Sections 509(a)(1) and 170(b)(1)(A)(i) |
| b ☐ | As a school (MUST COMPLETE SCHEDULE B.) | Sections 509(a)(1) and 170(b)(1)(A)(ii) |
| c ☐ | As a hospital or a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital (MUST COMPLETE SCHEDULE C.) | Sections 509(a)(1) and 170(b)(1)(A)(iii) |
| d ☐ | As a governmental unit described in section 170(c)(1). | Sections 509(a)(1) and 170(b)(1)(A)(v) |
| e ☒ | As being operated solely for the benefit of, or in connection with, one or more of the organizations described in a through d, g, h, or I (MUST COMPLETE SCHEDULE D.) | Section 509(a)(3) |
| f ☐ | As being organized and operated exclusively for testing for public safety. | Section 509(a)(4) |
| g ☐ | As being operated for the benefit of a college or university that is owned or operated by a governmental unit. | Sections 509(a)(1) and 170(b)(1)(A)(iv) |
| h ☐ | As receiving a substantial part of its support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public. | Sections 509(a)(1) and 170(b)(1)(A)(vi) |
| i ☐ | As normally receiving not more than one-third of its support from gross investment income and more than one-third of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions). | Section 509(a)(2) |
| j ☐ | The organization is a publicly supported organization but is not sure whether it meets the public support test of block h or block i. The organization would like the IRS to decide the proper classification. | Sections 509(a)(1) and 170(b)(1)(A)(vi) or Section 509(a)(2) |

If you checked one of the boxes a through f in question 10, go to question
15. If you checked box g in question 10, go to questions 12 and 13.
If you checked box h, i, or j, go to question 11.

PW0200362

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000410

Form 1023 (Rev. 7-93)

**Part III    Technical Requirements** *(Continued)*

DRAFT

Page 7

**11**   If you checked box h, i, or j on line 10, has the organization completed a tax year of at least 8 months?
☐ Yes—Indicate whether you are requesting:
☐ A definitive ruling (Answer questions on lines 12 through 15.)
☐ An advance ruling (Answer questions on lines 12 and 15 and attach two Forms 872-C completed and signed.)
☐ No—You must request an advance ruling by completing and signing two Forms 872-C and attaching them to the application.

**12**   If the organization received any unusual grants during any of the tax years shown in Part IV-A, attach a list for each year showing the name of the contributor; the date and the amount of the grant; and a brief description of the nature of the grant.

**13**   If you are requesting a definitive ruling under section 170(b)(1)(A)(iv) or (vi), check here ▶ ☐ and:
**a** Enter 2% of line 8, column (e) of Part IV-A _____
**b** Attach a list showing the name and amount contributed by each person (other than a governmental unit or "publicly supported" organization) whose total gifts, grants, contributions, etc., were more than the amount entered on line 13a above.

**14**   If you are requesting a definitive ruling under section 509(a)(2), check here ▶ ☐ and:
**a** For each of the years included on lines 1, 2, and 9 of Part IV-A, attach a list showing the name of and amount received from each "disqualified person." (For a definition of "disqualified person," see Specific Instructions, Part II, Line 4d.)
**b** For each of the years included on line 9 of Part IV-A, attach a list showing the name of and amount received from each "payer" (other than a "disqualified person") whose payments to the organization were more than $5,000. For this purpose, "payer" includes, but is not limited to, any organization described in sections 170(b)(1)(A)(i) through (vi) and any governmental agency or bureau.

**15**   Indicate if your organization is one of the following. If so, complete the required schedule. (Submit only those schedules that apply to your organization. Do not submit blank schedules.)

| | Yes | No | If "Yes," complete Schedule: |
|---|---|---|---|
| Is the organization a church? . . . . . . . . . . . . . . . . . . . | | | A |
| Is the organization, or any part of it, a school? . . . . . . . . . . | | | B |
| Is the organization, or any part of it, a hospital or medical research organization? . . | | | C |
| Is the organization a section 509(a)(3) supporting organization? . . . . | XX | | D |
| Is the organization a private operating foundation? . . . . . . . . . | | | E |
| Is the organization, or any part of it, a home for the aged or handicapped? . . . | | | F |
| Is the organization, or any part of it, a child care organization? . . . . . . | | | G |
| Does the organization provide or administer any scholarship benefits, student aid, etc.? . . . | | | H |
| Has the organization taken over, or will it take over, the facilities of a "for profit" institution? | | | I |

PW0200363

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



Form 1023 (Rev. 7-93)

**DRAFT**

Page 8

**Part IV   Financial Data**

Complete the financial statements for the current year and for each of the 3 years immediately before it. If in existence less than 4 years, complete the statements for each year in existence. If in existence less than 1 year, also provide proposed budgets for the 2 years following the current year.

### A. Statement of Revenue and Expenses

| | | Current tax year | 3 prior tax years or proposed budget for 2 years | | | |
|---|---|---|---|---|---|---|
| | | (a) From 7/94 to 9/30/94 | (b) 19...... 10/1/94-12/31/94 | (c) 19 95..... Calendar | (d) 19..96... Calendar | (e) TOTAL |
| Revenue | 1 Gifts, grants, and contributions received (not including unusual grants—see instructions). . . | | 200,000 | | | 200,000 |
| | 2 Membership fees received . . . | | | | | |
| | 3 Gross investment income (see instructions for definition) . . | | | | | |
| | 4 Net income from organization's unrelated business activities not included on line 3 . . . . | | | | | |
| | 5 Tax revenues levied for and either paid to or spent on behalf of the organization . . . . | | | | | |
| | 6 Value of services or facilities furnished by a governmental unit to the organization without charge (not including the value of services or facilities generally furnished the public without charge) . . . . | | | | | |
| | 7 Other income (not including gain or loss from sale of capital assets) (attach schedule) . . | | | | | |
| | 8 Total (add lines 1 through 7) . | | 200,000 | | | 200,000 |
| | 9 Gross receipts from admissions, sales of merchandise or services, or furnishing of facilities in any activity that is not an unrelated business within the meaning of section 513 . 4 | | 50,000,000 | 10,000,000 | | 60,000,000 |
| | 10 Total (add lines 8 and 9) . . | -0- | 50,200,000 | 10,000,000 | -0- | 60,200,000 |
| | 11 Gain or loss from sale of capital assets (attach schedule) . . | | | | | |
| | 12 Unusual grants . . . . . | | SEE ATTACHMENT 4 | | | |
| | 13 Total revenue (add lines 10 through 12) . . . . . | -0- | 50,200,000 | 10,000,000 | -0- | 60,200,000 |
| Expenses | 14 Fundraising expenses . . . | | | | | |
| | 15 Contributions, gifts, grants, and similar amounts paid (attach schedule) . . . . . . . | | | | | |
| | 16 Disbursements to or for benefit of members (attach schedule) . | | | | | |
| | 17 Compensation of officers, directors, and trustees (attach schedule) . . . . . . . | | | | | |
| | 18 Other salaries and wages . . | | | | | |
| | 19 Interest . . . . . . . . | | | | | |
| | 20 Occupancy (rent, utilities, etc.). | | | | | |
| | 21 Depreciation and depletion . . | | | | | |
| | 22 Other (attach schedule) See Att. 4 | | 50,200,000 | 10,000,000 | | PW0200364 |
| | 23 Total expenses (add lines 14 through 22) . . . . . . | -0- | 50,200,000 | 10,000,000 | | |
| | 24 Excess of revenue over expenses (line 13 minus line 23) | -0- | -0- | -0- | -0- | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Form 1023 (Rev. 7-93)

**DRAFT**

Page 9

| Part IV | Financial Data *(Continued)* |
| --- | --- |

| B. Balance Sheet (at the end of the period shown) | | Current tax year Date..9/30/94.. |
| --- | :---: | :---: |
| **Assets** | | |
| 1 Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 Accounts receivable, net SEE ATTACHMENT 5 . . . . . . . . | 2 | 200,000 |
| 3 Inventories . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 Bonds and notes receivable (attach schedule) . . . . . . . . | 4 | |
| 5 Corporate stocks (attach schedule) . . SEE ATTACHMENT 5 . . . | 5 | 1 |
| 6 Mortgage loans (attach schedule) . . . . . . . . . . . . . | 6 | |
| 7 Other investments (attach schedule) . . . . . . . . . . . . | 7 | |
| 8 Depreciable and depletable assets (attach schedule) . . . . . | 8 | |
| 9 Land . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 Other assets (attach schedule) Capitalized Acquisition Costs/SEE ATTACHMENT 5 | 10 | 4,000,000 |
| 11 Total assets (add lines 1 through 10) . . . . . . . . . . . | 11 | 4,200,001 |
| **Liabilities** | | |
| 12 Accounts payable . . . . . . . . . . . . . . . . . . . . | 12 | |
| 13 Contributions, gifts, grants, etc., payable . . . . . . . . . | 13 | |
| 14 Mortgages and notes payable (attach schedule) SEE ATTACHMENT 5 . . . | 14 | 4,000,000 |
| 15 Other liabilities (attach schedule) . . . . . . . . . . . . | 15 | |
| 16 Total liabilities (add lines 12 through 15) . . . . . . . . . | 16 | |
| **Fund Balances or Net Assets** | | |
| 17 Total fund balances or net assets . . . . . . . . . . . . . | 17 | 200,001 |
| 18 Total liabilities and fund balances or net assets (add line 16 and line 17) . | 18 | 4,200,001 |

If there has been any substantial change in any aspect of the organization's financial activities since the end of the period shown above, check the box and attach a detailed explanation . . . . . . . . . . . . . . . . . . . . ▶ □

PW0200365

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000413

Form 1023 (Rev. 7-93)

# DRAFT

Page 19

## Schedule D. Section 509(a)(3) Supporting Organization

| 1a Organizations supported by the applicant organization:<br>Name and address of supported organization | b Has the supported organization received a ruling or determination letter that it is not a private foundation by reason of section 509(a)(1) or (2)? | |
|---|---|---|
| The City of St. Louis, Missouri | ☐ Yes | ☒ No |
| The County of St. Louis, Missouri | ☐ Yes | ☒ No |
| | ☐ Yes | ☐ No |
| | ☐ Yes | ☐ No |
| | ☐ Yes | ☐ No |

c If "No" for any of the organizations listed in 1a, explain.

> The supported organizations are political subdivisions of the State of Missouri

2 Does the supported organization have tax-exempt status under section 501(c)(4), 501(c)(5), or 501(c)(6)? ☐ Yes ☒ No
If "Yes," attach: (a) a copy of its ruling or determination letter, and (b) an analysis of its revenue for the current year and the preceding 3 years. (Provide the financial data using the formats in Part IV-A (lines 1-13) and Part III (lines 12, 13, and 14).)

3 Does your organization's governing document indicate that the majority of its governing board is elected or appointed by the supported organizations? See Article III, Section 2 of By-laws (Exhibit 2) ☒ Yes ☐ No
If "Yes," skip to line 9.
If "No," you must answer the questions on lines 4 through 9.

4 Does your organization's governing document indicate the common supervision or control that it and the supported organizations share? ☐ Yes ☐ No
If "Yes," give the article and paragraph numbers. If "No," explain.

5 To what extent do the supported organizations have a significant voice in your organization's investment policies, in the making and timing of grants, and in otherwise directing the use of your organization's income or assets?

6 Does the mentioning of the supported organizations in your organization's governing instrument make it a trust that the supported organizations can enforce under state law and compel to make an accounting? ☐ Yes ☐ No
If "Yes," explain.

7a What percentage of your organization's income does it pay to each supported organization?

b What is the total annual income of each supported organization?

c How much does your organization contribute annually to each supported organization?

PW0200366

For more information, see back of Schedule D.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

2.149  SEP 30 '94  06:01PM PRICE WATERHOUSE                      P.12

Form 1023 (Rev. 7-93)                                    **DRAFT**              Page 20

## Schedule D. Section 509(a)(3) Supporting Organization (Continued)

8  To what extent does your organization conduct activities that would otherwise be carried on by the supported organizations?
   Explain why these activities would otherwise be carried on by the supported organizations.

9  Is the applicant organization controlled directly or indirectly by one or more "disqualified persons" (other
   than one who is a disqualified person solely because he or she is a manager) or by an organization that
   is not described in section 509(a)(1) or (2)? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
   If "Yes," explain.

## Instructions

**For an explanation** of the types of organizations
defined in section 509(a)(3) as being excluded from the
definition of a private foundation, see Pub. 557,
Chapter 3.

### Line 1

List each organization that is supported by your
organization and indicate in item 1b if the supported
organization has received a letter recognizing exempt
status as a section 501(c)(3) public charity as defined
in section 509(a)(1) or 509(a)(2). If you answer "No" in
1b to any of the listed organizations, please explain in
1c.

### Line 3

Your organization's governing document may be
articles of incorporation, articles of association,
constitution, trust indenture, or trust agreement.

### Line 9

For a definition of a "disqualified person," see **Specific
Instructions, Part II, Line 4d,** on page 3 of the
application's instructions.

PW0200367

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SEP 30 '94   06:01PM PRICE WATERHOUSE                                                     P.13



## INDEX OF EXHIBITS AND ATTACHMENTS

Attachment 1          Part II, Items 1,2,and 3

Attachment 2          Part II, Item 4(a), (b), and (c)

Attachment 3          Part II, Items 5,7,8,and 10(b)

Attachment 4          Part IV-A, Lines 9,12, and 22

Attachment 5          Part IV-B, Lines 2,5, and 14


Exhibit 1             Articles of Incorporation and Amendments

Exhibit 2             By-laws

Exhibit 3             Lease between SLNFL and CVC

PW0200368

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000416

P.14



Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098

Attachment I

### Form 1023, Part II, Item I

Fans, Inc. ("Fans") lessens the burdens of the governments of the City of St. Louis and the County of St. Louis by conducting activities to attract an NFL team to a government-funded sports stadium now being constructed in St. Louis. Set forth below are the reasons for the formation of Fans at the request of government officials and its activities in conjunction with government officials in negotiating agreements and providing incentives to attract an NFL team to the new St. Louis stadium. By constructing the stadium for the purpose of attracting an NFL team, the governments undertook the burdens of negotiating agreements and providing incentives to achieve that purpose, in order to produce revenues to finance the stadium and to realize enhanced employment, tax revenues, and other community benefits.

Near the end of the 1987 NFL season, the St. Louis Cardinals announced they were relocating to Phoenix, Arizona, in part because of deficiencies in the then-existing stadium facilities in St. Louis. The loss of the Cardinals caused a loss of jobs and tax revenue generated directly or indirectly by the presence of an NFL team in St. Louis, as well as a loss of community pride.

A joint effort was undertaken by the City of St. Louis (the "City") and the County of St. Louis (the "County"), together with the State of Missouri, to construct a football stadium (the "Facility") with government funding that would meet the requirements of NFL teams. The Missouri Legislature created the St. Louis Regional Convention and Sports Complex Authority ("Sports Authority") to construct, own, and operate the Facility. As part of financing for the Facility, the Missouri Legislature created another governmental entity called the Regional Convention and Visitors Commission (St. Louis, City and County) ("CVC"), which leased the Facility from the Sports Authority.

PW0200369

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098



Attachment I

As part of the initial process of trying to bring NFL football to St. Louis, CVC entered into a lease with the St. Louis NFL Corporation ("SLNFL"). The lease provided SLNFL with the exclusive right to use the Facility for the performance of NFL games up to two years after completion of the Facility. In September, 1993, disagreements arose between the shareholders of SLNFL, as a result of which St. Louis was not awarded an NFL expansion franchise. However, because of the lease from CVC, SLNFL still controlled the use of the Facility for NFL regular season games until 1997. Further, the disagreements between the shareholders threatened to block any opportunity of attracting a football team to St. Louis until the lease situation was resolved.

The City and the County then took further actions. In April 1994, Fans, Inc. was formed (under the Missouri "General Not For Profit Corporation Law") at the request of the Mayor of the City of St. Louis, the County Executive of St. Louis County, the Governor of the State of Missouri, and Congressman Richard A. Gephardt of Missouri. Fans' Board of Directors includes the St. Louis County Executive (George R. Westfall), the St. Louis County Counselor (John Ross), and appointees of the Mayor of St. Louis (Worsham N. Caldwell and Gregory R. Smith). The current By-laws of Fans provide (Art. III, Sec. 2) that the initial Board shall consist of two directors appointed by the Mayor of St. Louis and two directors appointed by the County Executive.

Initially, Fans was formed to assist in mediating the differences between the SLNFL shareholders. Subsequently, Fans' charge became to regain control of the lease so that the lease would again be controlled by the public interest and not by private interests. In May 1994, the Los Angeles Rams announced that they may exercise their right to terminate their lease for the use of Anaheim stadium. Shortly thereafter, CVC and other government representatives notified the Rams that St. Louis was interested in assisting the Rams in relocating to St. Louis. The Rams indicated that in addition to

PW0200370

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098



Attachment I

favorable lease terms, they would have to receive other incentives from the government if they were to relocate. The governmental units that constructed the Facility cannot finance these incentives from public funds without severely curtailing services to their constituents or significantly increasing taxes. Under the Missouri Constitution, such a tax increase would by subject to a vote of the taxpayers in the jurisdiction imposing the tax.

In August, the Rams notified St. Louis government representatives and Fans that they would not negotiate terms of relocation until control of the lease was resolved. Accordingly, Fans has taken steps to relieve the governments of the burden of accomplishing this goal, which is necessary to produce revenues for the government-owned and-financed stadium. Fans has purchased the stock of one SLNFL shareholder. The other shareholders of SLNFL have agreed that they will donate their stock to Fans if such contributions will qualify as a charitable contribution to a public charity.

Assuming all stock in SLNFL is thus obtained, Fans will continue to assist St. Louis in negotiations to attract the Rams (or another NFL team) to the Facility, including providing incentives to the Rams as necessary for that purpose. Fans expects to obtain funds for its activities through sale to the public of permanent seat licenses (a permanent right to purchase season's tickets to NFL games at the Facility) and contributions or grants from government entities, businesses, and individuals. Fans will not own any part of any football team attracted to the Facility.

On dissolution of Fans, any remaining assets will be distributed equally to the City of St. Louis and the County of St. Louis (Articles of Incorp., Art. Eight).

PW0200371

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000419

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1669098



Attachment I

**Form 1023, Part II, Item 2**

Fans expects to obtain funds for its activities through sale to the public of permanent seat licenses (a permanent right to purchase season's tickets to NFL games at the Facility) and contributions or grants from government entities, businesses, and individuals.  Fans has received a bank loan for $4 million (see Part IV, B).

**Form 1023, Part II, Item 3**

Fans has not yet initiated its planning fundraising through sale of permanent seat licenses and does not have any fundraising materials.  Fans has budgeted $3 million for expenses of raising these amounts, estimated at $60 million.  Fans has received a pledge of $100,000 from the Regional Convention and Visitors Commission, a governmental entity, and pledges totalling $100,000 from businesses in St. Louis.

PW0200372

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000420



Fans, Inc.
120 So. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1669098

**Form 1023, Part II, Items 4(a), 4(b)**

| a) | Names, addresses, and titles of officers and directors | b) | Compensation |
|---|---|---|---|
| 1) | George R. "Buzz" Westfall<br>Director<br>41 S. Central Avenue<br>St. Louis, MO 63105 | | -0- |
| 2) | John Ross<br>Director<br>41 S. Central Avenue<br>St. Louis, MO 63105 | | -0- |
| 3) | Gregory R. Smith<br>Director<br>100 N. Broadway, Ste. 1300<br>St. Louis, MO 63102 | | -0- |
| 4) | Worsham N. Caldwell<br>Director<br>Caldwell, Hughes, McHugh & Singleton<br>1910 Pine Street, Ste. 515<br>St. Louis, MO 63103 | | -0- |
| 5) | Thomas F. Eagleton<br>President & Director<br>One Mercantile Center<br>St. Louis, MO 63101 | | -0- |
| 6) | Richard Riezman<br>Secretary<br>120 South Central, 10th Floor<br>St. Louis, MO 63105 | | -0- |

PW0200373

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000421



Fans, Inc.
120 So. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098

**Form 1023, Part II, Item 4(c)**

Fans' Board of Directors includes the St. Louis County Executive (George R. Westfall), the St.

Louis County Counselor (John Ross), and appointees of the Mayor of St. Louis (Worsham N. Caldwell and

Gregory R. Smith).  The current By-laws of Fans provide (Art. III, Sec. 2) that the initial Board shall consist

of two directors appointed by the Mayor of St. Louis and two directors appointed by the County Executive.

PW0200374

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000422

SEP 30 '94 06:06PM PRICE WATERHOUSE                                                    P.20

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098



Attachment 3

**Form 1023, Part II, Item 6**

For a description of Fans' relationship with the City of St. Louis and the County of St. Louis, see Part II, Item I.

**Form 1023, Part II, Item 7**

The By-Laws provide (Art. X) that Fans shall furnish its Form 990 each year to the Regional Convention and Visitors Commission, St. Louis ("CVC").

**Form 1023, Part II, Item 8**

See Part II, Item I for information concerning acquisition of stock in St. Louis National Football League (SLNFL).

**Form 1023, Part II, Item 10 (b)**

A copy of lease dated August 28, 1991 between CVC and SLNFL is attached as Exhibit 3. See Part II, Item I for further information.

PW0200375

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    PwC000423

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098



Attachment 4

**Form 1023, Part IV, A (Statement of Revenue and Expenses)**

**Line 9 (Gross receipts)**

|  | 10/1/94 to 12/31/94 | 1995 |
|---|---|---|
| Proceeds from sale of permanent seat licenses (See Part II, Item I) | $50,000,000 | 10,000,000 |

**Line 12 (Unusual Grants)**

For the reasons described in Part II, Item I, Fans expects to acquire all (9,600 shares) of SLNFL, a private entity that has entered into a lease agreement for the new St. Louis Stadium. The two remaining shareholders other than Fans have agreed to donate their stock (6,500 and 100 shares, respectively) if such contributions would qualify as a charitable contribution to a public charity. With respect to the valuation of the shares expected to be donated to Fans, Fans recently paid a total of $4,000,001 to former shareholder for 3,000 shares and certain expenses, and is obligated to pay an additional $4 million if an NFL team (in which the individual has no ownership interest) relocates to St. Louis.

**Line 22 (Other expenses)**

|  | 10/1/94 to 12/31/94 | 1995 |
|---|---|---|
| a) Retirement of debt associated with acquisition of certain stock of SLNFL | $ 4,000,000 |  |

PW0200376

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000424

Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098



Line 22 (Other expenses) cont'd

Attachment 4

|  | 10/1/94 to 12/31/94 | 1995 |
|---|---|---|
| b) Contingent payment in connection with stock acquisition (required upon relocation of NFL team to St. Louis) |  | $ 4,000,000 |
| c) Fundraising expenses in connection with sale of permanent seat licenses | $ 2,500,000 | $ 500,000 |
| d) Relocation expenses, other incentives to NFL team relocating to St. Louis | $43,200,000 | $ 5,000,000 |
| e) Miscellaneous (legal fees, etc.) | $ 500,000 | $ 500,000 |
| Total projected expenses | $50,200,000 | $10,000,000 |

PW0200377

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000425



Fans, Inc.
120 S. Central, 10th Floor
St. Louis, MO 63105
EIN #43-1689098

Attachment 5

## Form 1023, Part IV, B (Balance Sheet)

### Line 2 (Accounts receivable)

Fans has received a pledge of $100,000 from the Regional Convention and Visitors Commission, St. Louis, and pledges totalling $100,000 from businesses in St. Louis.

### Line 5 (corporate stock), Line 10 (other assets)

For the reasons described in Part II, Item I, Fans has acquired 3,000 shares of the stock of SLNFL, a private entity that has entered into a lease agreement for the new St. Louis stadium. The two remaining shareholders (holding 6,500 and 100 shares, respectively) have agreed to donate their stock to Fans if such contributions would qualify as a charitable contribution to a public charity. With respect to the valuation of the shares expected to be donated, Fans recently paid a total of $4,000,001 to the former shareholder for 3,000 shares and certain expenses, and is obligated to pay an additional $4 million if an NFL team (in which the individual has no ownership interest) relocates to St. Louis.

### Line 14

Term loan note dated September 16, 1994 in the amount of $4 million payable September 16, 1997, to the Boatmen's National Bank of St. Louis, with interest at a per annum rate equal to the Adjusted LIBO Rate. The purpose of the loan was to acquire certain stock in SLNFL (see Part II, Item I).

PW0200378

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    PwC000426