# EXHIBIT 8

## COVENANT NOT TO SUE AND SETTLEMENT AGREEMENT
## WITH RESPECT TO CERTAIN OBLIGATIONS
## AND CLAIMS ARISING UNDER
## NFL FRANCHISE RELOCATION AGREEMENT

This Covenant Not to Sue and Settlement Agreement ("Settlement") is entered into as of the 24th day of May 1996, by and between The St. Louis Rams Partnership, a Delaware partnership, as assignee of The Rams Football Company, Inc. (the "RAMS") and The Regional Convention and Visitors Commission, a/k/a St. Louis Convention and Visitors Commission, a public body corporate and politic of the State of Missouri ("CVC"), with respect to certain obligations and claims arising under that certain NFL Franchise Relocation Agreement entered into as of the 17th day of January, 1995, by and among the RAMS, CVC, FANS, Inc., a Missouri not for profit corporation ("FANS"), The Regional Convention and Sports Complex Authority, a public body corporate and politic of the State of Missouri, and St. Louis NFL Corporation, a Missouri corporation, as subsequently amended by letter agreements dated respectively as of March 24, March 30, April 3, and April 4, 1995, by Amendments No. 5 - 8 to Relocation Agreement, dated respectively as of March 30, April 14, May 30, and June 2, 1995, and by the Closing Agreement Under NFL Relocation Agreement dated as of the 23rd day of June, 1995 (the "Closing Agreement"), as amended by letter agreement dated February 28, 1996 (hereinafter the NFL Franchise Relocation Agreement, as amended, is referred to as the "Relocation Agreement").

WHEREAS, subsequent to the Closing of the Relocation Agreement as of June 23, 1995, it became apparent that CVC and FANS would not be able fully to meet their obligations to the RAMS under the Relocation Agreement consisting of (i) CVC delivering the Facilities by 12 noon on October 21, 1995 in a Football Ready Condition, as specified in Section 9.2 of the Closing Agreement, (ii) FANS paying the $1,000,000 fee provided for under Section 9.2 of the Closing Agreement, for failure of CVC to deliver the Facilities by 12 noon on October 21, 1995 in a Football Ready Condition, as specified in Section 9.2 of the Closing Agreement and (iii) CVC paying the full amount of the Training Facility payments of $3.5 million and $3 million, due respectively on March 1 and June 1, 1996 under Section 4.2.3 of the Closing Agreement (collectively the "St. Louis Defaults"); and

WHEREAS, subsequent to the Closing of the Relocation Agreement, the RAMS have agreed to cooperate with CVC and FANS in their efforts with respect to (i) the relinquishment of payment of the $1,000,000 fee due by FANS for the failure to deliver the Facilities for the October 22, 1995 NFL Game, (ii) the reduction

STL-414691

PW0200093

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000116

of the amounts, and the extension of the payment date, of the guarantee payments due by December 31, 1995 with respect to the Vacant Suites and Unlicensed Club Memberships for the 1995 season of NFL Games (the "1995 Season"), as provided in Sections 7.1.1(c) and 7.1.2(c) of the Closing Agreement, (iii) the extension of the time period for FANS/CVC to sell for CVC's account Charter Personal Seat Licenses and Initial Club Memberships beyond the August 31, 1995 date specified in the Amended Lease, as specified in paragraph 2.1 below, (iv) the deferral of the deposit of a portion of the March 1, 1996 payment, as required by Section 4.2.3 of the Closing Agreement, for the Training Facility, (v) the reduction, as specified in paragraph 2.4 below, of the deposit payments on March 1, 1996 and June 1, 1996 for the Training Facility required by Section 4.2 of the Closing Agreement and (vi) the granting under the Charter Personal Seat License Master Agreement of license rights similar to the PSL's with respect to the club seats in the Trans World Dome (collectively the "Accommodations") and the parties hereto wish hereby to document their agreements with respect to the Accommodations; and

WHEREAS, the RAMS have asserted that (i) the Facilities, as delivered by CVC for NFL Games, were neither Football Ready nor First Class for the NFL Games played at the Facilities on November 11, December 10, December 17, and December 24, 1995, including without limitation the assertion that the Club Level was not First Class, (ii) the RAMS decided to play those games to mitigate their damages, and (iii) CVC is liable to pay the RAMS aggregate fees of $1,500,000 per game to compensate the RAMS for resulting losses, as specified under Sections 9.3 and 9.4 of the Closing Agreement (the "Facilities Claims"), which Facilities Claims have been disputed by CVC; and

WHEREAS, the RAMS, without waiving their future rights to assert that the Facilities are not First Class, intend to pay $1,000,000 for physical improvements to the Club Level before the 1996 season (the "Club Level Improvements"), without waiting for such improvements to be made from the Preservation Fund; and

WHEREAS, under the Closing Agreement the RAMS are entitled to convert the term of the Amended Lease into an annual tenancy, upon the occurrence of events of default described in Section 4.2.5, Section 7.1.4, or Section 9.7 of the Closing Agreement arising out of the St. Louis Defaults and the Facilities Claims (the "Tenancy Rights"); and

WHEREAS, CVC believes that certain actions taken by the National Football League and the member teams (collectively, the "NFL"), with respect to the proposed relocation of the RAMS from Los Angeles to St. Louis may be violative of the Antitrust Laws of the United States and of the State of Missouri and be

STL-414691

- 2 -

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PW0200094

PwC000117

violative of applicable common law principles; that those actions have caused CVC to incur substantial damages; and that CVC has claims against the NFL to receive compensation for such damages ("the Claims"); and

WHEREAS, CVC decided to pursue the Claims, and on December 18, 1995, CVC retained counsel, and filed suit against the NFL in the United States District Court, Eastern District of Missouri, Eastern Division, in Civil Action No. 4:95CV2443-JCH, to assert the Claims (the "Lawsuit"); and

WHEREAS, the RAMS are willing (i) to covenant not to sue CVC and FANS with respect to their claims for damages for the 1995 Season against CVC and FANS with respect to the St. Louis Defaults, (ii) to forego their right to assert the Facilities Claims for the 1995 Season against CVC (but not the continuing obligations of CVC to deliver the Facilities in a First Class condition for each NFL Game subsequent to the 1995 Season), (iii) to forego their Tenancy Rights arising out of the alleged events of default for the 1995 Season in respect of the St. Louis Defaults and the Facilities Claims and (iv) to grant to FANS and CVC the Accommodations, provided that CVC agrees to pay to the RAMS the Settlement Payment or the Minimum Settlement Payment, as applicable (as hereinafter defined in paragraphs 3.4 and 3.5 below), and CVC makes the Settlement Payment or Minimum Settlement Payment and other payments as hereinafter set forth, and provided further that the RAMS are not foregoing any rights to indemnification from CVC on account of any third party claims against the RAMS, or any rights under direct third party guarantees to the RAMS (collectively "Third Party Indemnification and Guarantees"); and

WHEREAS, CVC desires to avoid being in a position of potential or actual default under the Relocation Agreement and the Amended Lease;

NOW, THEREFORE, for and in consideration of the premises and mutual covenants of the parties contained herein, the RAMS and CVC hereby agree as follows:

## ARTICLE 1

### COVENANT NOT TO SUE RESPECTING SPECIFIC CLAIMS

1.1 In consideration of the payments, including the Settlement Payment or the Minimum Settlement Payment, which CVC herein agrees to make to the RAMS, the RAMS hereby agree to forever refrain and forbear from commencing, instituting or prosecuting any lawsuit, action or other proceeding, in law, equity or otherwise, or exercising any off-set rights or any Tenancy Rights, against CVC and/or FANS in any way arising from

STL-414691

- 3 -

PW0200095

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000118

all past or present causes of action, claims, demands, damages, costs, loss of services, expenses and compensation arising out of the St. Louis Defaults and the Facilities Claims (the "Covenant Not to Sue"), but not continuing obligations of CVC to deliver the Facilities in a First Class condition for each NFL Game subsequent to the 1995 Season, including without limitation CVC causing the implementation of the completion and correction actions (consisting of the "punch list" for the Facilities) referenced on Exhibit A (the "Post 1995 Season Obligations"), or Third Party Indemnification and Guarantees.

1.2 In consideration of the Covenant Not to Sue granted by the RAMS to CVC and FANS in paragraph 1.1 above respecting the St. Louis Defaults and the Facilities Claims, and the granting by the RAMS of the Accommodations, CVC agrees to provide compensation to the RAMS for the value of the rights relinquished and the Accommodations granted, all in the manner set forth herein and subject to the limitations contained in this Settlement.

1.3 It is the intent of the parties to resolve outstanding and existing claims under the Relocation Agreement and the Amended Lease arising out of the St. Louis Defaults and the Facilities Claims for the 1995 Season only. Nothing contained herein shall be deemed to waive, modify or limit any other existing rights and obligations or any obligation of future performance on the part of either party, including, but not limited to, the Post 1995 Season Obligations, arising out of the Relocation Agreement, the Amended Lease or this Settlement, unless specifically referred to herein. Specifically, nothing herein shall be deemed to waive, modify or limit any rights of the RAMS respecting Third Party Indemnification and Guarantees, or rights of the RAMS and obligations of CVC and FANS to the RAMS relating to performance subsequent to the 1995 Season, including, without limitation, continuing defaults that first occurred during the 1995 Season that are part of the Post 1995 Season Obligations. Further, the provisions of paragraph 1.1 shall not be deemed to have waived, modified or limited any other remedy of the RAMS in the event of a default under the obligations contained in the Amended Lease or in the Closing Agreement, nor shall they be deemed a Covenant Not to Sue, respecting any event of default other than in respect of the 1995 Season as expressly set forth herein.

### ARTICLE 2
### MODIFICATION OF CERTAIN PROVISIONS
### OF THE RELOCATION AGREEMENT AND AMENDED LEASE

2.1 **Extension of Time Period for FANS/CVC to Sell CPSL's and Initial Club Memberships.** This will confirm the RAMS' agreement to permit FANS and CVC, subject to the provisions of

STL-414691

- 4 -

PW0200096

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000119

this Settlement, to continue to sell Charter Personal Seat Licenses ("CPSL's") and Initial Charter Club Memberships in respect of Rams Club Membership, NFL Ticket Option Agreements ("Initial Club Memberships") for the account of CVC and to retain the license fees from such sales of Initial CPSL's and Initial Club Memberships through March 31, 1996, as specified in and in accordance with the terms and conditions of that certain Charter Personal Seat License Master Agreement dated as of January 17, 1995 (the "Master Agreement") and in the Amended Lease, thereby extending the original September 1, 1995 termination date specified in such Master Agreement and in the Amended Lease. The RAMS shall have no claim to the proceeds of the CPSL's and Initial Club Memberships respecting those sales.

2.2 **Relinquishment of Claim for Fee for Failure to Deliver the Facilities by October 21, 1995**. This will confirm the RAMS' agreement to relinquish, subject to the provisions of this Settlement, their claim for the $1 million fee which was payable by FANS in the event that the Facilities were not delivered by CVC to the RAMS by 12 noon on October 21, 1995 in a Football Ready Condition, as specified in Section 9.2 of the Closing Agreement.

2.3 **Relinquishment of Facilities Claims**. This will confirm the RAMS' agreement to relinquish, subject to the provisions of this Settlement, the Facilities Claims, in the aggregate amount of $6,000,000.

2.4 **Reduction of Remaining Training Facility Payments**. The RAMS hereby agree that the CVC/FANS obligations to make further required Training Facility payments shall be reduced to the obligation to make payments of $2,700,000 on March 1, 1996 (which payment has been made), and $1,200,000 on June 1, 1996. The RAMS agree that such payments shall be in full satisfaction of the payment obligations contained in Section 4.2.3 of the Closing Agreement.

2.5 **Forbearance from Exercise of Tenancy Rights**. The RAMS hereby agree that they are hereby forbearing from exercise of their Tenancy Rights, with respect to (a) any event of default described in Section 4.2.5 of the Closing Agreement, provided the payment specified in paragraph 2.4 above is duly made, and (b) any event of default described in Sections 7.1.4 or 9.7 of the Closing Agreement, in each case only with respect to defaults arising in the 1995 Season.

2.6 **Reduction of and Extension of Time for Certain Payments**. This will confirm the RAMS' agreement to reduce the guarantee payments with respect to the Vacant Suites and Unlicensed Club Memberships for the 1995 Season. The RAMS acknowledge that the RAMS shall make no claim under the Closing

STL-414691

- 5 -

PW0200097

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000120

Agreement on account of the RAMS' extension of the time from December 31, 1995 to May 15, 1996 for the payments from CVC, required by Section 7.1.1(c) in respect to the Vacant Suites and by Section 7.1.2(c) in respect of the Unlicensed Club Memberships, for the 1995 Season. Nothing herein shall affect the rights of the RAMS in respect of a Deficiency (as defined in the Agreement re Minimum Return). Any remaining payments required to be made by the RAMS to CVC under the Amended Lease for the 1995 Season shall be made no later than five days after the date of payment by CVC of the guarantee payments for the Vacant Suites and Unlicensed Club Memberships.

2.7 *Payment for Club Level Improvements*. This will confirm the RAMS' intention, without waiving their future rights to assert that the Facilities are not First Class, to pay $1,000,000 for the Club Level Improvements.

### ARTICLE 3
### COMPENSATION FOR ACCOMMODATIONS AND IN LIEU OF PAYMENTS UNDER RELOCATION AGREEMENT

3.1 *Litigation Proceeds Fund*. There is hereby established the Litigation Proceeds Fund, to be comprised of (and defined as) the following:

(a) All amounts actually collected by CVC, as a result of the assertion of the Claims, whether by way of compromise and settlement or by way of a final order, judgment or decree, and whether constituting actual damages, exemplary or punitive damages, and statutory and/or treble damages, interest, attorneys' fees and expenses and costs allowed, including all interest and earnings on such amounts collected by CVC; plus

(b) All amounts made available to CVC and/or the RAMS because of the reduction or elimination of contractual obligations, under the Relocation Agreement or the NFL Letter dated June 23, 1995 between the NFL and the RAMS (the "NFL Letter"), to the NFL by CVC and/or the RAMS with respect to the "Sharing of 'Gross Receipts'" referenced under paragraph 1 of the NFL Letter, to make the "CVC Cash Payment" referenced under paragraph 2 of the NFL Letter, or to make the "RAMS Cash Payments" referenced under paragraph 3 of the NFL Letter, as a result of the assertion of the Claims, whether by way of compromise and settlement or by way of a final order, judgment or decree, equitably present valued by discounting such payments at eight percent from the date any such reduced or eliminated payment was made or would otherwise have been due (provided that for these purposes the reduction or elimination of the obligation of the RAMS to make a payment on account of the Fox Broadcasting Network claims contained in paragraph 3 of the NFL Letter shall have zero value); plus

STL-414691

- 6 -

PW0200098

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    PwC000121

(c) All amounts made available to the RAMS because of the elimination of a contractual impediment to receive the "Fee" provided for in paragraph 4 of the NFL Letter, as a result of the assertion of the Claims, whether by way of compromise and settlement or by way of a final order, judgment or decree, equitably present valued by discounting the value of such benefit at eight percent from the date such Fee was paid (provided that the shortening of the April 12, 2005 date referenced in paragraph 4 of the NFL Letter to January 1, 2000 or later shall have zero value).

3.2 <u>Net Litigation Proceeds Fund</u>. From the Litigation Proceeds Fund shall be deducted all Litigation Expenses incurred by CVC, and there shall be added all interest and earnings on such fund. For the purpose of this Settlement, the term Litigation Expenses shall mean all attorneys' fees (including any contingent fees), expert witness fees, consultant fees and all other disbursements incurred in connection with the assertion of the Claims and prosecution of the Lawsuit to the extent such amounts exceed $2,500,000. The balance, if any, shall be deemed the Net Litigation Proceeds Fund. To the extent any portion of such Litigation Expenses are in fact not paid by CVC, a corresponding adjustment shall be made to the Net Litigation Proceeds Fund.

3.3 <u>Lien and Security Interest on Net Litigation Proceeds Fund</u>. As security for the Settlement Payment or Minimum Settlement Payment which CVC herein agrees to make, CVC hereby grants the RAMS a lien and security interest on the Net Litigation Proceeds Fund and agrees to hold such fund upon receipt in a separate account pending the quantification of claims herein provided for and to add to such fund the interest and earnings thereon pending payment to the RAMS of the Settlement Payment or Minimum Settlement Payment. CVC agrees to take such actions as the RAMS may reasonably request to protect and perfect such lien and security interest.

3.4 <u>Settlement Payment to RAMS from Net Litigation Proceeds Fund</u>. In consideration of the RAMS' Accommodations, the Club Level Improvements, and the RAMS' forbearance from exercising their rights, as set forth herein, CVC hereby agrees to pay to the RAMS, promptly upon the determination thereof, the Settlement Payment determined (and defined) in the manner set forth herein:

(a) There shall first be calculated the value of the monies or payments foregone and/or made by the RAMS pursuant to the Accommodations specified under paragraphs 2.1, 2.2, 2.4, and 2.6, the Facilities Claims specified under paragraph 2.3, and the Club Level Improvements specified under paragraph 2.7.

STL-414691

- 7 -

PW0200079

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000122

(b) There next shall be calculated the value of the Tenancy Rights foregone by virtue of paragraphs 1.1 and 2.5 hereof. The RAMS contend that the value of those rights are substantial and may equal $150 million. CVC concedes that such rights have a value of at least $50 million, but believes the value is not as great as contended by the RAMS. The parties agree to defer resolution of the value of such rights until such time as the Net Litigation Proceeds Fund is ripe for distribution and to attempt to agree upon the value (which value for purposes of this Settlement shall not be less than $50 million or more than $150 million) through voluntary negotiations. Either party may initiate such negotiations by sending to the other party a Request to Negotiate. If no agreement on such value is reached within thirty days after the sending of a Request to Negotiate, then such value (between $50 million and $150 million) shall be resolved by arbitration in the manner provided in Section 25 of the Amended Lease.

(c) There shall next be identified the present value of any benefits included in the calculation of the Litigation Proceeds Fund pursuant to subparagraphs 3.1 (b) or (c) above conferred directly upon the RAMS (determined at the same amounts for purposes of this subparagraph (c) as the amounts included in the Litigation Proceeds Fund pursuant to subparagraphs 3.1 (b) or (c) above) as a result of any settlement or disposition of the Claims.

(d) CVC shall pay to the RAMS from the Net Litigation Proceeds Fund as the Settlement Payment an amount equal the sum of subparagraphs (a) and (b) above, or an amount equal to fifty percent of the Net Litigation Proceeds Fund, whichever is less, reduced by the amount identified pursuant to subparagraph (c) above.

(e) The payments herein provided for shall be in lieu of any and all other payments from CVC to the RAMS for the obligations foregone and rights relinquished and the Accommodations. The payment herein provided for shall also be in lieu of any and all payments or sums (in the aggregate amount of $7,500,000) which, but for the action of the NFL that is the subject of the Claims, would have been paid to the RAMS under the Relocation Agreement as originally executed as of January 17, 1995, prior to any amendment thereof.

3.5 **Minimum Settlement Payment to RAMS in Event of Settlement of the Claims.** Notwithstanding anything to the contrary stated in paragraph 3.4, in the event that CVC agrees to settle or compromise the Claims, whether for amounts described under subparagraphs 3.1 (a), (b), and/or (c), or in exchange solely or partly for non-monetary benefits, or otherwise, then, in consideration of the RAMS' Accommodations, the Club Level

STL-414691

- 8 -

PW0200100

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000123

Improvements, and the RAMS' forbearance from exercising their rights, as set forth herein, but only if the amount payable under this paragraph 3.5 exceeds the amount payable to the RAMS under the Net Litigation Proceeds Fund payments provided under paragraph 3.4, CVC hereby agrees to pay to the RAMS, promptly upon the determination thereof, a Minimum Settlement Payment determined (and defined) in the manner set forth herein:

(a) There shall first be calculated the value of the monies or payments foregone and/or made by the RAMS pursuant to the Accommodations specified under paragraphs 2.1, 2.2, 2.4, and 2.6, the Facilities Claims specified under paragraph 2.3, and the Club Level Improvements specified under paragraph 2.7.

(b) There shall next be identified the present value of any benefits (which would have been included in the calculation of the Litigation Proceeds Fund pursuant to subparagraphs 3.1 (b) or (c) above) conferred directly upon the RAMS (determined at the same amounts for purposes of this subparagraph (c) as the amounts would have been included in the Litigation Proceeds Fund pursuant to subparagraphs 3.1 (b) or (c) above) as a result of any settlement or disposition of the Claims.

(c) CVC shall pay to the RAMS as the Minimum Settlement Payment an amount equal the sum of subparagraph (a) reduced by the amount identified pursuant to subparagraph (b) above.

(d) Subject to subparagraph (e) below, the Minimum Settlement Payment shall be payable in cash one month after the later of the date on which final settlement or compromise of the Claims is effected by the agreement of the parties to the Lawsuit and Court approval, if necessary, or the date on which the CVC receives the cash settlement proceeds from the settlement (the "Claims Settlement Date").

(e) In the event that the Minimum Settlement Payment exceeds the cash settlement proceeds actually received by CVC, CVC shall pay the full amount of such cash settlement proceeds on the Claims Settlement Date. CVC shall pay the remaining principal balance of the Minimum Settlement Amount in four equal annual principal installments, the first of which shall also be payable on the Claims Settlement Date and the remaining three of which shall be payable on the three successive anniversary dates thereof, which installments shall be accelerated to the extent and on the dates that CVC receives any cash settlement proceeds after the Claims Settlement Date. Interest on the deferred payments, computed at the rate of eight percent per annum from the Claims Settlement Date, shall be payable concurrently with payments of principal.

STL-414691

- 9 -

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000124

(f) The payments herein provided for shall be in lieu of any and all other payments from CVC to the RAMS for the obligations foregone and rights relinquished and the Accommodations. The payment herein provided for shall also be in lieu of any and all payments or sums (in the aggregate amount of $7,500,000) which, but for the action of the NFL that is the subject of the Claims, would have been paid to the RAMS under the Relocation Agreement as originally executed as of January 17, 1995, prior to any amendment thereof.

3.6 **Prosecution of Claims**. CVC shall, through counsel of its choice, handle the prosecution, disposition, and collection of the Claims.

## ARTICLE 4
## GENERAL PROVISIONS

4.1 **Definitions**. Defined terms herein and denoted by initial capital letters shall have the same meanings herein as they have in the Closing Agreement, the Relocation Agreement and the Amended Lease, unless the context requires otherwise.

4.2 **Severability**. If any provision of this Settlement shall be held to be unenforceable or invalid by any court of competent jurisdiction or as a result of future legislative action, such holding or action shall be strictly construed and shall not alter the enforceability, validity or effect of any other provision hereof, provided that so enforcing this Settlement would not materially affect the rights or obligations of the RAMS or CVC or FANS hereunder, including materially affecting the rights of the RAMS to the Settlement Payment or Minimum Settlement Payment.

4.3 **Arbitration**. Any controversy, dispute or claim with respect to this Settlement shall be settled by arbitration in accordance with Section 10.9 of the Closing Agreement.

4.4 **Governing Law**. This Settlement shall be governed by and construed in accordance with the laws of the State of Missouri without regard to any principles of conflict of laws.

4.5 **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors.

4.6 **Modification**. This Agreement may only be modified by a writing signed by each of the parties hereto.

4.7 **Counterpart Signatures**. This Agreement may be executed in counterparts and such executed counterparts shall constitute

STL-414691

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     PwC000125

one fully executed Agreement legally binding upon the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Settlement to be signed by their respective officers thereunto duly authorized as of the date first above written.

**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

"CVC": THE REGIONAL CONVENTION AND VISITORS COMMISSION

By: _____
Robert F. Bedell, President

"RAMS": THE ST. LOUIS RAMS PARTNERSHIP

By: THE RAMS FOOTBALL COMPANY INC.,
its Managing General Partner

By: _____
John J. Shaw, President

STL-414691

- 11 -

PW0200103

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PwC000126