UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD MCALLISTER, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16-CV-172 SNLJ |
| | ) No. 4:16-CV-262 |
| | ) No. 4:16-CV-297 |
| THE ST. LOUIS RAMS, LLC, | ) CONSOLIDATED |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is comprised of three consolidated lawsuits[1] relating to the St. Louis Rams football team's January 2016 decision to move the team to a new stadium in Inglewood, California. The Rams' home stadium had been located in St. Louis, Missouri since 1995. The St. Louis Rams required football fans who wished to purchase season tickets to buy Personal Seat Licenses ("PSLs") that entitled the PSL holder to buy one season ticket per year in a designated section of the stadium. Approximately 46,000 PSLs were sold. Upon the announcement that the Rams would move to California, lawsuits were filed by PSL holders and others against the Rams claiming damages arising from the Rams' move.

Initially, those PSLs were sold by an entity called FANS, Inc. The Rams say that FANS has never been the Rams' agent, but rather that FANS was an agent to the Regional Convention and Visitors Commission ("CVC"). On July 17, 2017, the Rams filed a third party complaint against the CVC. The Rams claim they have an express

---

[1] *McAllister v. The St. Louis Rams*, No. 4:16-CV-172 SNLJ (E.D. Mo.); *Envision, LLC, et al. v. The St. Louis Rams, LLC*, No. 4:16-CV-00262-CDP (E.D. Mo.); *Arnold, et al. v. The St. Louis Rams, LLC*, No. 4:16-cv-00297-SNLJ (E.D. Mo.).

1

contractual indemnification right against the CVC for claims arising out of the CVC's operations, function, and obligations, including with respect to the PSLs sold by FANS.

The Rams further contend that the CVC is obligated to arbitrate this dispute pursuant to arbitration clauses in the contracts between those parties. The CVC disagrees. The Rams thus moved to compel the CVC to arbitrate (#183). The motion has been fully briefed and is ripe for disposition.

The Rams contend that the CVC agreed to arbitrate as part of each of three contracts related to the Rams' relocation to St. Louis in 1995. Those three contracts were (1) an NFL Franchise Relocation Agreement (the "Relocation Agreement"); (2) a Charter Personal Seat License Master Agreement (the "CPSL Agreement"); and (3) an Amended and Restated St. Louis NFL Lease (the "Stadium Lease"). The Relocation Agreement was the overarching document under which the Rams were to move from Los Angeles to St. Louis; the CPSL Agreement was the key agreement governing Personal Seat Licenses ("PSLs" or, in the case of charter PSLs, "CPSLs") sales, and the Stadium Lease was the document governing the terms under which the Rams would play at the stadium in St. Louis, including a number of provisions relating to the sale of PSLs.

Each of those agreements incorporate an arbitration provision. Those provisions provide for arbitration of "any controversy…related to" the particular Agreement, and then refer to the arbitration procedures found within the Stadium Lease.

> 25. **Arbitration**. Any controversy, dispute or claim between or among any of the parties hereto . . . to this Amended Lease, related to this Amended Lease, including, without limitation, any claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Amended Lease . . . shall be settled by arbitration conducted before three arbitrators in St. Louis, Missouri, in accordance with the most applicable then existing rules of the American Arbitration Association (or its successor or in the absence of a successor, an institution

2

> or organization offering similar services), and judgment upon any award rendered by the arbitrator may be entered by any federal or state court having jurisdiction thereof. Such arbitration shall be the exclusive dispute resolution mechanism.

(Stadium Lease, #184-3 at ¶ 25.)

The Rams seek a declaratory judgment regarding the Rams and CVC's respective rights and obligations regarding FANS PSLs and FANS PSL holders. The Rams also seek contractual and equitable indemnification from CVC for all claims based on FANS PSLs. The Rams' third-party complaint further states that these claims are exclusively subject to arbitration. The CVC refuses, arguing to the American Arbitration Association ("AAA") that (1) the agreements which benefit the Rams have terminated, (2) the FANS PSL Agreement does not include an arbitration clause, and (3) the "Los Angeles Rams" are not a party to the relevant contract.

At the outset, the Rams state that the issue of whether or not this matter should be arbitrated should be resolved by the Arbitrator. The parties agree that the question of arbitrability (i.e., whether a particular question should be answered by the court or by arbitrator) is "for judicial determination unless the parties clearly and unmistakeably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal changes omitted) (quoting *AT&T Technologies, Inc. v. Comms. Workers*, 475 U.S. 643, 649 (1986)).

Here, the Stadium Lease provides that certain disputes "shall be settled by arbitration conducted before three arbitrators…in accordance with the most applicable then existing rules of the [AAA]." (#183-3 at ¶ 25.) The CVC suggests that "then existing" means the AAA rules that existed at the time the Stadium Lease was signed. The Court agrees with the Rams that "then existing" means the time the arbitration

3

demand is made. In fact, however, there is no practical difference because the 1993 Rules (that were in effect when the Lease was signed in 1995) state that "these rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration…is received by the AAA." (#206-1 at 4.) Thus, even the 1993 Rules require the use of the Rules currently in existence.

The Rules currently in existence provide at Rule 7(a) that disputes regarding jurisdiction of the arbitrator should be resolved in arbitration: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim…." (#184-6 at 13.)

The Eighth Circuit has held that incorporation of the AAA Rules "constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009). Here, the Stadium Lease incorporates the AAA Rules. As a result, the parties have agreed to allow an arbitrator to determine the arbitrability of the parties' dispute. *See id.* The Court will grant the Rams' motion to compel arbitration, including as to the threshold question of arbitrability.

Accordingly,

**IT IS HEREBY ORDERED** that defendant St. Louis Rams' motion to compel arbitration (#183) is GRANTED.

**IT IS FURTHER ORDERED** that CVC's motion for leave to file surreply (#218) is GRANTED.

Dated this  17th  day of November, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE