UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD McALLISTER, | |
|     Plaintiff, | Case Nos.  4:16-cv-00172-SNLJ |
| |     4:16-cv-00262 |
| v. |     4:16-cv-00297 |
| |     CONSOLIDATED |
| THE ST. LOUIS RAMS, LLC, | |
|     Defendant. | |

**PLAINTIFFS' APPLICATON FOR ATTORNEYS' FEES, MOTION FOR INCENTIVE AWARDS AND INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................... 1

II.    STATEMENT OF THE CASE.................................................................................... 2

    A.    Procedural History ............................................................................................ 2

    B.    The Settlement Agreement ............................................................................... 5

    C.    The Claims Process........................................................................................... 6

III.    ARGUMENT .............................................................................................................. 7

    A.    The Court Should Award the Requested Attorneys' Fees Because They Are
        Reasonable ........................................................................................................ 7

        1.    The Court should consider the fee as a percentage of the benefits to be
            received by Class members...................................................................... 8

        2.    The requested fee satisfies the factors considered in this Circuit ............. 12

    B.    The Court Should Award Class Counsel Their Requested $200,000 in Litigation
        Costs................................................................................................................ 17

    C.    The Court Should Award the Class Representatives Their Requested Incentive
        Awards ............................................................................................................ 18

IV.    CONCLUSION.......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barfield v. Sho-Me Power Elec. Co-op.*,
    2015 WL 3460346 (W.D. Mo. June 1, 2015) .......................................................... 15

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
    2017 WL 2588950 (D. Minn. June 14, 2017) ......................................................... 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................. 11

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860 (8th Cir. 2017)...............................................................................Passim

*Carlson v. C.H. Robinson Worldwide, Inc.*,
    2006 WL 2671105 (D. Minn. Sept. 18, 2006) ....................................................... 16

*Easley v. Anheuser-Busch, Inc.*,
    758 F.2d 251 (8th Cir. 1985)................................................................................ 12

*Fellows v. Am. Campus Communities Servs., Inc.*,
    2018 WL 3056046 (E.D. Mo. June 20, 2018)...................................... 10, 11, 15, 19

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016) ......................................................... 9, 15, 16

*Huyer v. Buckley* ,
    849 F.3d 395, 399 (8th Cir. 2017) . ..................................................... 13, 14, 15, 17

*In re BankAmerica Secs. Litig.*,
    228 F.Supp.2d 1061 (E.D.Mo.2002)..................................................................... 16

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    2005 WL 4045741 (E.D. Mo. June 30, 2005)....................................................... 16

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ...................................................... 15

*In re LaserMaster Technologies, Inc. Sec. Litig.*,
    No. 4-95-631, Order (D.Minn. Oct. 10, 1997)...................................................... 16

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
    847 F.3d 619 (8th Cir. 2017)................................................................................ 15

*In re Monosodium Glutamate Antitrust Litig.*,
   2003 WL 297276 (D.Minn. Feb. 6, 2003) ............................................................ 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) ............................................................................ 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   2015 WL 7253765 (D. Minn. Nov. 17, 2015) ................................................... 11

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir.2002) ......................................................................... 9, 15

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
   631 F.3d 913 (8th Cir. 2011) .......................................................................... 18

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................ 16

*Johnson v. Ga. Highway Express*,
   488 F.2d 714 (5th Cir. 1974) .......................................................................... 12

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ........................................................................... 8, 9

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ..................................................................... Passim

*Khoday v. Symantec Corp.*,
   2016 WL 1637039 (D. Minn. Apr. 5, 2016) ................................................... 18

*KK Motors v. Brunswick Corp.*,
   No. 98-2307, Order and Judgment (D. Minn. filed Mar. 6, 2000) ................. 16

*Lees v. Anthem Ins. Companies Inc.*,
   2015 WL 3645208 (E.D. Mo. June 10, 2015) ...................................... 10, 11, 15

*McClean v. Health Sys., Inc.*,
   2015 WL 12426091 (W.D. Mo. June 1, 2015) ........................................... 11-12

*Meller v. Bank of the W.*,
   2018 WL 5305562 (S.D. Iowa Sept. 10, 2018) .............................................. 15

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .................................................................. 10, 15

*Ramsey v. Sprint Commc'ns Co.*,
 2012 WL 6018154 (D. Neb. Dec. 3, 2012) ............................................................ 12, 15

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
 9 F.3d 849 (10th Cir. 1993) ..................................................................................... 12

*West v. PSS World Med., Inc.*,
 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014) .......................................................... 11

*Yarrington v. Solvay Pharm., Inc.*,
 697 F. Supp. 2d 1057 (D. Minn. 2010) ............................................................... 16, 17

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................................ 7

**Other Authorities**

2 McLaughlin on Class Actions § 6:24 ............................................................................... 9

2 McLaughlin on Class Actions § 6:28 ............................................................................. 19

5 Newberg on Class Actions § 17:8 .................................................................................. 19

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*
(3rd ed. 2015) ............................................................................................................... 9-10

Manual for Complex Litigation, § 14.121 ......................................................................... 16

Plaintiffs/Class Representatives Ronald McAllister, Richard Arnold, R. McNeeley Cochran, and Brad Pearlman ("Plaintiffs") and the undersigned Class Counsel hereby move for an award of attorneys' fees and expenses, as well as incentive awards for the Class Representatives.

## I.    INTRODUCTION

As set forth in Plaintiffs' Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion"), Doc. #394, the settlement of this case benefits thousands of Class Members, who are entitled to claim an amount equaling 30% of the face value of their PSL(s). Because those face values ranged from $250 to $4,500, that will result in per-PSL payments of $75 to $1,350, subject to a cap of $12 million for each class, or $24 million altogether, which would likely be exceeded only if 95% or more of all potential claims were submitted. Preliminary Approval Motion at 26. If the cap is exceeded, individual payments will be reduced pro rata. *Id.* 12-13.

This settlement provides essentially a 100% victory for the Classes. For the FANS Class, it provides the entire amount of their claim for breach of contract; for the Rams Class, it closely tracks their damages as calculated by their damages expert. *Id.* 1-2. And it does so despite significant risks that Plaintiffs would have faced if the case had gone to trial. *See id.* 26-29. Even better, Class Members will receive their full awards without deduction for attorneys' fees, costs and incentive payments. That is because the Settlement provides that the Rams will pay the fees, costs and incentive awards separately, up to $7.2 million in fees, $200,000 in costs, and $50,000 in incentive awards. *Id.*17 (citing Class Action Settlement Agreement ("Sett. Agrt."). Doc. #394-1, ¶¶ III.H.1.)

In recognition of their time and efforts in pursuing this case over the past three years, Class Counsel ask for an award of their fees and expenses and Plaintiffs ask for incentive awards. The

fee award would come toward the low end of fee awards in this Circuit when measured as a percentage of the entire benefit to the Classes. Accordingly, this fee request is not excessive or unusually large.

In addition, in return for their hard work and dedication in championing the rights of their fellow PSL owners through years of litigation, Plaintiffs request incentive awards totaling $50,000, as follows:

Ronald McAllister: $20,000

Richard Arnold: $20,000

R. McNeeley Cochran: $7,000

Brad Pearlman: $3,000

As with attorneys' fees, these amounts are not excessive when compared to awards in other class actions and will not come out of the Classes' recoveries. The Rams will pay them separately. *Id.* 16-17 (citing Sett. Agrt. ¶¶ III.A.3, II.FF and III.A.1).

## II.    STATEMENT OF THE CASE

### A.  Procedural History

The Preliminary Approval Motion contains a detailed discussion of the course of this case. *Id.* 5-12. In brief, it was hotly contested from the beginning. These proceedings included:

- **Motion practice on merits issues.** The parties brought and briefed many substantive motions, including motions for judgment on the pleadings by the Rams and Mr. McAllister,[1] Mr. McAllister's motion for partial summary judgment,[2] Mr.

---

[1] Docs. #35, #36, #42, and #43, as well as No. 4:16-cv-262, #17, #18, #23, and #26; No. 4:16-cv-297, #24, #25, #28, #31, and #31. In addition, the Rams filed a motion to reconsider the order granting partial judgment on the pleadings in favor of Mr. McAllister. *See* Docs. #46, #52, and #54.
[2] Docs. #209, #210, #210-1, #233, #233-1, 274, and #274-1.

McAllister's motion to dismiss the Rams' counterclaim,[3] and multiple motions to reconsider.[4]

- **Class certification motions.** Collectively, the parties filed more than a dozen submissions supporting and opposing class certification. [5] The parties also briefed the Rams' Rule 23(f) Petition in the Eighth Circuit.[6]

- **Procedural motions.** There were also contested procedural motions.[7]

- **Discovery.** The parties exchanged responses to written discovery and produced thousands of pages of documents, including the Rams' hard copy records on the Plaintiffs, electronic spreadsheets regarding all PSL holders, and various contracts the Rams had entered into with third parties. The parties also obtained more than 22,000 pages of documents from Regional Convention and Visitors Commission ("CVC"), the Regional Sports Authority, and PriceWaterhouseCoopers, related to the early years of the PSL program, as well as documents from STR Marketplace, LLC, related to the Rams' communications following their relocation. During mediation, the Rams allowed Mr. McAllister's consultants to inspect approximately 63 boxes of hard-copy PSL records and to make and retain digital copies of records from a sample of 10 of those boxes. The Rams deposed eight Plaintiffs in May 2017, and Plaintiffs took Rule 30(b)(6) depositions of Kevin Demoff, the Rams' Chief Operating Officer, in July 2017 and January 2018. In addition, in March 2018 the *Arnold* Plaintiffs deposed

---

[3] Docs. #211, #212, #234, and #273.
[4] McAllister's motion for clarification of Memorandum and Order on Defendant's motion to stay. Doc. #187
[5] Docs. #62, #62-1, #70, #105, #106, #167, #168-1, #170, #171, #222, #257, #263, #290, #292-1, #294, and #309.
[6] *The St. Louis Rams, LLC v. McAllister*, No. 18-8001 (8th Cir.).
[7] Rams' motion to stay pending arbitration with Third-Party Defendant (CVC Docs. #134, #135, and #153), following which Mr. McAllister filed a motion for clarification (Doc. #187); Rams' motion to stay pending Rule 23(f) Petition to Appeal (Docs. #365, #368, and #370).

Greg Kish of Legends, the consulting group that the Rams hired to price their PSLs in Los Angeles. *See* Motion for Preliminary Approval 10.

- **Discovery motions.** The *Arnold* Plaintiffs filed three motions to compel the Rams to comply with their discovery obligations.[8] On the first motion, the Rams ultimately complied with all of the *Arnold* Plaintiffs' discovery demands, thus mooting that motion. The Court denied the second motion without prejudice. The Court granted the third motion, except as to certain matters that the *Arnold* Plaintiffs decided not to pursue, and ordered that the Rams produce their Los Angeles-based Chief Operating Officer, Kevin Demoff, for re-deposition in St. Louis. Doc. #372. (The parties held that deposition in abeyance pending mediation.)

- **Expert Witnesses.** The Rams and Mr. McAllister each designated an expert with an expert report on class certification from a senior employee of a national economics firm. The Rams' expert was Bruce A. Strombom, Ph.D., Managing Principal of Analysis Group. Mr. McAllister's expert: Brian Kriegler, Ph.D., Managing Director of Econ One Research, Inc. *See* Preliminary Approval Motion 5. In addition, the *Arnold* Plaintiffs retained an expert to calculate their damages and produced information from him to the Rams during mediation and, in addition, allowed the Rams to communicate with him directly.

- **Class Certification.** The Court certified two Classes, "the FANS Class" and "the Rams Class." As amended by the Court in Doc. #367, the former was defined as:

  > All persons or entities who, at the conclusion of the 2015 season, owned a PSL purchased from Fans, Inc. that was not later transferred or upgraded and who (a) had purchased Rams season tickets through their PSLs for the

---

[8] Docs. #321 (third motion to compel), #311 (Second Motion to Compel), and #224 (first Motion to Compel).

2015 season or (b) did not purchase Rams season tickets for the 2015 season but did not receive a PSL cancellation notice from the PSL Licensor.

The Rams Class was defined as:

  A) All persons or entities who:

> 1) purchased PSLs directly from the Rams; or
>
> 2) had any Rams or FANS PSL transferred to them; or
>
> 3) upgraded their PSL tier; and

  B) purchased Rams season tickets through their PSLs for the 2015 season; or

  C) did not purchase Rams season tickets for the 2015 season but did not receive a PSL cancellation notice from the Rams.

Doc. #355, at 22-23.

- **Mediation.** Before agreeing on a settlement, the parties held three separate mediation sessions, spaced over a year apart, under the direction of the Honorable William Ray Price, Jr., former Chief Justice of the Missouri Supreme Court and currently with Armstrong Teasdale LLP, as the neutral. *See* Preliminary Approval Motion 11-13. The parties finally agreed on settlement late in the day on July 20, 2018. *See id.* 12. Even then, it took the parties five months to memorialize their agreement in a signed written contract. *Id.*

## B.  The Settlement Agreement

Subject to a damages cap and on a claims-made basis, the Rams will pay each Class Member an amount, based on the tier price of their PSL(s), that will provide them with 30% of their PSL(s)'s face value (equivalent to the remaining unused value of the PSLs at the time the Rams moved – nine years out of their 30-year term). Payments will be based on the following schedule:

| PSL Tier Price in the Stadium | Pay-Out for Qualified Claim |
|---|---|
| $250 | $75 |
| $500 | $150 |
| $1,000 | $300 |
| $2,500 | $750 |
| $3,000 | $900 |
| $4,500 | $1,350 |

Sett. Agrt., ¶ III.A.1. The Rams' payments are subject to a cap of $12 million per Class, or $24 million altogether. *Id.* In the extremely unlikely event that the claims exceed the cap, then individual payments to the affected Class will be reduced pro rata so that the pay-out to the Class will not exceed $12 million. *Id.*

To obtain payment, each Class Member must use the Claim form provided on the settlement website, http://www.ramspslclassactionsettlement.com/. The Rams insisted on (and Plaintiffs thought reasonable) a claims-made process in light of the Rams' indemnity claim against the CVC regarding the FANS Class. That claim requires them to determine conclusively the Class to which all claimants belong, something they could not do for all claimants from their own electronic data but can accomplish from supplemental information provided by claimants.

**C.  The Claims Process**

The settlement website, https://www.ramspslclassactionsettlement.com/, went live Saturday, February 16, 2019. The next day an advertisement containing Class notice appeared in the sports section of the *St. Louis Post-Dispatch* (repeated the next two Sundays), and on February 19, 2019, individual notices were sent by email and postcard to PSL holders with mailing and email addresses in the Rams' database. Those individual notices contained PINs and passwords enabling recipients to access the Claim form.[9] The interest in the settlement can be seen by the

---

[9] Those who didn't receive individual notices could obtain PIN numbers and passwords upon request from the claims administrator.

6

media reports on it, many of which included interviews with Mr. McAllister or Class Counsel explaining how to make claims.[10] In addition, Class Counsel have fielded many inquiries from PSL owners regarding the process.

To assist PSL owners, Mr. McAllister and Ryan Bruning of The Bruning Law Firm, LLC, created a 15-minute instructional video on making a claim, which they posted on Facebook, Youtube and the Bruning Firm's website.[11] As of March 7, 2019, that video had more than 5,700 views.

The Claims period does not expire for another five months, until August 23, 2019. Thus, Class Counsel do not know at this point how many valid claims will be made. But as of March 8, 2019, 6,364 claims had been filed, out of about 21,671 known possible claimants, or nearly 30%.

## III.   ARGUMENT

### A.  The Court Should Award the Requested Attorneys' Fees Because They Are Reasonable

The award of fees and costs to Class Counsel is governed by Fed. R. Civ. P. 23(h), which provides:

> **Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law *or by the parties' agreement*. The following procedures apply:
>
> > **(1)** A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of

---

[10] *See*, *e.g.*, D. Hunn, "If you had a Rams PSL, you should file for refunds on Monday," St. Louis Post-Dispatch (Feb. 14, 2019), available at https://www.stltoday.cavidom/news/local/metro/if-you-had-a-rams-psl-you-should-file-for/article_b197cc2d-0543-5d3b-8967-85fd14256f8.html (accessed 3/2/2019); Kayla Drake, "Former Rans fans can now get their PSL refunds," KMOV4 (Feb. 16, 2019), available at https://www.kmov.com/news/former-rams-fans-can-now-get-their-psl-refunds/article_d4493ff6-3266-11e9-a638-bbed2b09d732.html (accessed 3/2/2019); Nathan Rubbelke, "What Rams PSL holders need to know about the team's $24 million settlement," St. Louis Business Journal (Jan. 25, 2019), available at https://www.bizjournals.com/stlouis/news/2019/01/25/what-rams-pls-holders-need-to-know-about-the-team.html (accessed 3/2/2019).

[11] *See* https://www.facebook.com/bruninglegal/; https://www.youtube.com/channel/UCBT5TyfTJ6q_4DiDHHpdoow; https://www.bruninglegal.com/blog/instructional-video-on-making-a-rams-psl-claim-will-be-posted-tuesday-february-19/.

the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

**(2)** A class member, or a party from whom payment is sought, may object to the motion.

**(3)** The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

**(4)** The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

*Id.* (emphasis added). Here the Rams have agreed to pay the lesser of $7.2 million or the total amounts awarded by the Court. Sett. Agrt. ¶ III.A.4.

A fee of $7.2 million is eminently reasonable for several reasons. First, it does not diminish the awards to Class members. FANS Class members will receive the full amount of their damages for breach of contract, 30% of the face value of their PSLS. Rams Class members will receive the same percentage, which very closely approximates what their expert calculates as their damages. None of their recoveries will be reduced because of fees or litigation costs.

Moreover, the appropriateness of the fee should be measured as a percentage of the benefits received by the Classes. Those benefits include the entire $24 million available to the Classes, as well as the attorneys' fees, incentive awards, litigation costs and administrative costs of the settlement. So measured, the requested fee amounts to less than 23% of the benefit, an amount toward the lower end of the range of fees awarded by courts in the Eighth Circuit and upheld on appeal. Finally, the requested fee satisfies the relevant factors considered in this Circuit.

## 1. The Court should consider the fee as a percentage of the benefits to be received by Class members

Courts use two methods to determine the amount of the fee, the "'lodestar' methodology" and the "'percentage of the benefit' approach." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). Under the former, "the hours expended by an attorney are multiplied by a

8

reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* The latter "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.,* at 344-45. The district court has the discretion to choose the method, but in common-fund cases like this one, the Eighth Circuit favors the percentage method. *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949 (D. Minn. 2016) (citing *Johnston*, 83 F.3d at 245; *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002)).

There are good reasons for that. For example, "courts perceived that the lodestar method resulted in 'an inevitable waste of judicial resources.'" 2 McLaughlin on Class Actions § 6:24 (15th ed.) (citations omitted). In addition, as the Eighth Circuit observed in *Johnston* (citing a Third Circuit Task Force Report):

> First, calculation of the lodestar increases the workload of an already over-taxed judicial system. Second, the elements of the lodestar process are insufficiently objective and produce results that are far from homogenous. Third, the lodestar process creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law. Fourth, the lodestar is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount. Fifth, although designed to curb certain abuses, the lodestar approach has led to others. Sixth, the lodestar creates a disincentive for the early settlement of cases. The report in this area added "... there appears to be a conscious, or perhaps, unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar." Seventh, the lodestar does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered. Eighth, the lodestar process works to the particular disadvantage of the public interest bar. Ninth, despite the apparent simplicity of the lodestar formulation, considerable confusion and lack of predictability remain in its administration.

83 F.3d at 245. Similarly, the Federal Judicial Center recommends the percentage method:

> The percentage method offers several advantages. First, it helps ensure that the fee award will simulate marketplace rates, since most common fund cases are

> handled on a contingency basis. Second, compared with the lodestar method, the percentage method requires less detailed record-keeping by plaintiffs and consumes fewer court resources. Finally, unlike the lodestar method, the percentage method provides incentive to plaintiff's counsel to settle the case early and avoid racking up litigation fees.

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* (3rd ed. 2015) ("Judicial Center Report") 82-83.

Eighth Circuit decisions indicate that the Court *may* look at the lodestar because it "is sometimes warranted to double-check the result of the 'percentage of the [benefit]' method." *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). But that is "not required," especially where a percentage award is not "overly generous." *Id.* (affirming a percentage award without considering the lodestar). Thus, in *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015), this Court awarded a percentage fee without addressing the lodestar.[12]

The percentage of the benefit is determined by comparing the fee with all benefits to be received by the Class. In a case like this one, where the fees and costs were paid separately from the awards received by class members, Judge Ross ruled: "[A]ttorneys' fees, costs, the costs of notice of administration and related expenses borne by the Defendants are all properly considered in assessing the value of a settlement." *Fellows v. Am. Campus Communities Servs., Inc.*, 2018 WL 3056046, at *6 (E.D. Mo. June 20, 2018). That only makes sense, because where the fee is *taken out* of the Class' award, the amount of the fee is included in the Class' benefit when the percentage is calculated. Thus, both the fee and the amount made available to the Class

---

[12] Plaintiffs' combined lodestars approximates $3.59 million through February 2019. See Decl. of Richard S. Cornfeld and Decl. of Fernando Bermudez, Ex. A and Ex. B hereto. Plaintiffs will provide supporting detail if the Court so requests. If applied, that lodestar would result in a fee multiplier of 2. The Eighth Circuit has noted that "the range of multipliers awarded in this circuit" includes a multiplier of 2.5 and that "cases within the Eighth Circuit approv[e] multipliers of up to 5.6." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

should be included in the benefit. In addition, as *Fellows* held, the costs of administering the

settlement are also properly included in the benefits. *See Keil*, 862 F.3d at 703; *Caligiuri*, 855

F.3d at 865. RG/2, the claims administrator in this case, estimates its costs will be $140,000.

Moreover, in a claims-made settlement, all the *potential* awards, not just the claims actually

made, are properly included in the benefit. In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480

(1980), the Supreme Court upheld an award of attorneys' fees based on the total amount of the

judgment, including unclaimed awards, stating that class members' "right to share the harvest of

the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund

created by the efforts of the class representatives and their counsel." (emphasis added). In *In re

Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 979 (8th Cir. 2018), the court

called a provision returning unused assets from the settlement to the defendant a "kicker." This

settlement is similar because unclaimed amounts will be retained by the Rams. However, the

Eighth Circuit rejected the objection to the "kicker" provision. It stated that the objector "directs

us to no authority that such provisions are per se unlawful ..." *Id.* The court upheld the district

court's award of fees that amounted to 29% of the total benefit. *Id.* at 977. The district court's

opinion in that case shows that that percentage was calculated using the total amount available to

be claimed by class members, not the amount actually claimed. *See In re Target Corp. Customer

Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Similarly, in *Lees*, 2015 WL 3645208 at *4, this Court measured the fee as a percentage of

the funds available to be claimed. Other judges in this district and elsewhere in this Circuit have

done likewise. *See West v. PSS World Med., Inc*., 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24,

2014) (Perry J.) ("It is appropriate to apply a reasonable percentage to the gross settlement

fund."); *McClean v. Health Sys., Inc.*, 2015 WL 12426091, at *5 (W.D. Mo. June 1, 2015) (Kays

J.) (approving fee where all unclaimed settlement proceeds would remain with the defendant); *Ramsey v. Sprint Commc'ns Co*., 2012 WL 6018154, at *4 & n. 1 (D. Neb. Dec. 3, 2012) (Gerrard, J.) ("[T]he available settlement funds are an appropriate measure of the benefit accrued by the class members, regardless of whether the full measure of that sum is actually claimed.").

Accordingly, the benefit to the Classes here is the following:

| | |
|---|---|
| Amount available to be claimed: | $24,000,000 |
| Fee request: | $7,200,000 |
| Litigation costs: | $200,000 |
| Incentive award request: | $50,000 |
| Administration costs: | $140,000 |
| Total: | $31,690,000 |

Thus, the requested fee amounts to 22.7% of the settlement's benefit to the Class.

## 2. The requested fee satisfies the factors considered in this Circuit

In deciding whether a requested fee is reasonable, the Eighth Circuit states that courts may look to 12 factors from *Johnson v. Ga. Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974). *Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 265 (8th Cir. 1985).[13] However, the Court need not consider all 12. "[R]arely are all of the *Johnson* factors applicable[,] [and] this is particularly so in a common fund situation." *Keil*, 862 F.3d at 703 (quoting *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)). In *Keil*, the Eight Circuit upheld an order considering only five of the factors: "(1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the

---

[13] Those factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Easley*, 758 F.2d 251 at 265 (quoting *Johnson*, 488 F.2d at 717–19).

experience, reputation, and ability of the attorneys; and (5) awards in similar cases." *Id.*, 862 F.3d at 703. In *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017), the court upheld an order that also considered five factors, but two were different from those in *Keil:* "the time and work required" and "the preclusion of other employment by the attorney due to acceptance of this case."

Each of these factors supports this fee request:

**1.   The amount involved and the results obtained.** The amount involved is $24,000,000, the total available to Class members. The results obtained are outstanding. As described above, FANS Class members will receive the entire amount sought for breach of contract. Rams Class members will receive what their expert calculated as their damages. And, as noted in Plaintiffs' Preliminary Approval Motion, because fees and costs will not be deducted from the awards, PSL owners are better off under the settlement than if the Classes had gone to trial and won their breach-of-contract claims in their entirety. Preliminary Approval Motion 23-4.

**2.   Whether the fee is fixed or contingent.** The fee is entirely contingent. In *Caligiuri*, where the fee was also contingent, this factor weighed in favor of granting a fee of one-third of the settlement fund because counsel "was exposed to significant risk ...." 855 F.3d at 866; *see also Huyer*, 849 F.3d at 399 (affirming award based on district court's finding that "all of the attorneys worked on a contingent basis.").

**3.   The novelty and difficulty of the questions.** As shown by the number and magnitude of the parties' motions, this case involved novel and difficult questions. To our knowledge, this is the first class action alleging breach of a personal seat license by a professional sports team. As described in the Preliminary Approval Motion at 26-29, each Class faced issues that made recovery at trial uncertain. The FANS Class would have had to establish that the Rams, which

did not sign the FANS Agreement, were liable under that contract as the Licensor. They would also have had to prove that the "deposit to be refunded was the entire license fee, rather than just the initial deposit that PSL owners had paid for their licenses. The Rams Class would have had to prevail through appeal on their interpretation of the "best efforts" provision – even though Judge Hamilton reached the opposite conclusion in *RCN Capital, LLC v. Los Angeles Rams, LLC*, No. 4:17CV1240 (E.D. Mo.). It also would have had to prove its damages claim despite a number of factors that make their damages uncertain, including the fact that Rams tickets have been readily available in Los Angeles without a PSL up to this point; that St. Louis PSLs expire after 2024, but Los Angeles PSLs will last 50 years and, unlike St. Louis PSLs, are fully refundable at that point; and that, many Los Angeles PSLs will come with free parking, drinks and access to exclusive club space, perks not part of St. Louis PSLs. *See id.* 22-24. In addition, when the case settled, the Rams Rule 23(f) petition was pending in the Eighth Circuit. All of those issues support the requested fee.

**4. The experience, reputation, and ability of the attorneys.** In *Huyer*, 849 F.3d at 399, the Eighth Circuit ruled that the fact that "most attorneys retained on behalf of the class have relevant experience in class action litigation" supported this factor. That is certainly true here. As shown in their motions for class certification, Plaintiffs' attorneys have a vast amount of experience in class action litigation, both locally and nationally. Their experience, reputation and ability were recognized by the Court in appointing them as Class counsel. They therefore have the experience, reputation and ability to warrant being paid for their efforts. This factor also requires considering the attorneys for the defendant, all of whom are outstanding lawyers, experienced in defense of class actions; their firm is one of the largest in the world. Defendant's lead counsel in this case is co-chair of the firm's U.S. Litigation and Dispute Resolution practice.

**5.   Awards in similar cases.** This is perhaps the most important factor because it is considered in every case. And it firmly supports the requested fee. The request is less than 23% of the benefit to the class, well below the average of fees approved in this Circuit. As the Eighth Circuit stated in *Huyer*, 849 F.3d at 399, "courts have frequently awarded attorneys' fees ranging up to 36% in class actions." Here are fees awarded or upheld in recent years:

*Eighth Circuit decisions upholding fee awards:*

- *Keil*, 862 F.3d at 701: 25%.

- *Caligiuri*, 855 F.3d at 865-66: 33⅓%.

- *Huyer*, 849 F.3d at 399: 33⅓%.

- *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017): 26%.

- *In re U.S. Bancorp*, 291 F.3d at 1038: 36%.

- *Petrovic*, 200 F.3d at 1157: 24%.

*District court fee awards:*

- *Meller v. Bank of the W.*, 2018 WL 5305562, at *9 (S.D. Iowa Sept. 10, 2018) 33⅓%

- *Fellows*, 2018 WL 3056046, at *6: 28.34%.

- *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc*., 2017 WL 2588950, at *3 (D. Minn. June 14, 2017): 24%

- *Hashw*, 182 F. Supp. 3d at 950: 20%.

- *Lees*, 2015 WL 3645208, at *4: 26%.

- *Barfield v. Sho-Me Power Elec. Co-op*., 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015): 33⅓%

- *Ramsey*, 2012 WL 6018154, at *4-*6: 26%.

- *In re Iowa Ready-Mix Concrete Antitrust Litig*., 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011): 36.04%

- *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010): 33%.

- *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005): 25%.

- *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006): 35.5%

- *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 (E.D. Mo. June 30, 2005): 20%.

- *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276 at *3 (D.Minn. Feb. 6, 2003): 30%.

- *In re BankAmerica Secs. Litig.*, 228 F.Supp.2d 1061 (E.D.Mo.2002): 18%.

- *KK Motors v. Brunswick Corp.*, No. 98-2307, Order and Judgment (D. Minn. filed Mar. 6, 2000)[14]: 33⅓%.

- *In re LaserMaster Technologies, Inc. Sec. Litig.*, No. 4-95-631, Order (D.Minn. Oct. 10, 1997)[15]: 33⅓%.

The average fee upheld in the above Eighth Circuit cases is 29.6%. The average fee award in the district court decisions is 28.4%. The overall average of all the cases: 28.8%. This request falls more than six percentage points below the average.

Moreover, of the above 22 cases, only *Hashw*, *Charter*, and *BankAmerica* awarded percentages lower than the present request. In *Hashw*, unlike the present case, the fee reduced the class' recovery, the case was stayed in favor of mediation after only a year and before class certification without a large time commitment by counsel, and the payout to class members was in the lower range of similar cases. *Id.*, 182 F. Supp. 3d at 950. *Charter* – where counsel received the 20% they requested – and *BankAmerica*, both involved huge settlement funds, $146 million and $460 million, respectively. The Manual for Complex Litigation, § 14.121, at 188, states that

---

[14] Cited in *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 n. 3 (E.D. Mo. June 30, 2005).

[15] Cited in *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 n. 3 (E.D. Mo. June 30, 2005).

"in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate" and that a survey of class actions with recoveries of more than $100 million found that fees ranged downward from 18%. *See also* Judicial Center Report at 92 (reporting on a study finding that the larger the fund, the smaller the percentage fee).

In short, compared to awards in similar cases, this request is eminently reasonable.

**6.  Time and work required.** In *Huyer*, the Eighth Circuit upheld the district court's finding that this factor was present because "[t]his case has been ongoing since 2008 and has included extensive motion practice, discovery, and settlement negotiations." 849 F.3d at 399. Similarly, this case has been pending for three years and has also "included extensive motion practice, discovery, and settlement negotiations." Thus, this factor supports the fee request.

**7.  The preclusion of other employment by the attorney due to the acceptance of this case.** It virtually goes without saying that counsel were precluded from other employment by their responsibilities in this case. All of these attorneys have busy practices. By undertaking this case, they obviously were prevented from engaging in some other work.

In sum the applicable *Johnson* factors support this fee request.

**B.  The Court Should Award Class Counsel Their Requested $200,000 in Litigation Costs**

The Settlement Agreement provides that the Rams will pay up to $200,000 in costs allowed under Rule 23 and that this award will not be applied to the FANS or Rams caps. Sett. Agrt. ¶ III.H. Rule 23(h) allows the award of nontaxable costs. Such costs may include "filing fees; expenses associated with the research, preparation, filing, and responding to the pleadings in this matter; costs associated with copying, uploading, and analyzing documents; fees and expenses for experts; and mediation fees." *Yarrington*, 697 F. Supp. 2d at 1067. Similarly, travel expenses

and costs for computer-assisted legal research may be awarded. *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *12 (D. Minn. Apr. 5, 2016), *report and recommendation adopted,* 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017); see also *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011) (affirming award of online-research costs in shareholder derivative suit).

In prosecuting this action, Class Counsel incurred total costs of $224,845.74; that breaks down to $64,695.81 for the FANS Class and $160,149.93 for the Rams Class. Ex. A, B and C (Declarations of Counsel). These costs were incurred by counsel with no guarantee that they would ever be recovered. Because they exceed the maximum that the Rams agreed to pay, Class Counsel requests an award of $200,000 in costs pursuant to Rule 23(h) to be divided $64,695.81 to FANS Class counsel and $135,304.19 to Rams Class Counsel.

**C.  The Court Should Award the Class Representatives Their Requested Incentive Awards**

The four Class Representatives request a total of $50,000 in incentive awards (sometimes called "service awards") to be paid as follows: $20,000 each for Messrs. McAllister and Arnold, $7,000 for Mr. Cochran, and $3,000 for Mr. Pearlman. These awards will compensate them for the substantial time and effort they devoted to this litigation, including responding to interrogatories, producing documents, testifying in deposition, attending the three all-day mediation sessions, and communicating regularly with counsel. The Rams have agreed not to oppose a request for awards of $50,000 in the aggregate and have agreed to pay the lesser of that amount or the incentive awards approved by the Court. Sett. Agrt., ¶ III.A.3. This amount will not be applied to the settlement caps of $12 million to each Class. *See id.,* ¶¶ II.FF. and III.A.1. It will therefore not diminish what any non-representative Class Member receives.

Incentive or service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri*, 855 F.3d at 867 (citation omitted). As Judge Ross recently stated, "[c]ourts routinely grant service awards in connection with class action settlements ...." *Fellows*, 2018 WL 3056046, at *7. Moreover, these awards would be within the usual range of such awards. 2 McLaughlin on Class Actions § 6:28 (15th ed.) (incentive awards range up to $20,000). Newberg reports on two studies that found the average award per plaintiff in 2002 dollars to be $9,355 and $15,992. 5 Newberg on Class Actions § 17:8 (5th ed.). Those averages convert to $13,296 and $22,729 in 2019 dollars, respectively.[16] Plaintiffs' requested awards, which average $12,500 per individual and range up to $20,000 are reasonable and should be granted, especially since Messrs. McAllister and Arnold participated in three full days of mediation.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and their counsel respectfully request that the Court award Class Counsel $7.2 million in attorneys' fees, divided equally between the Classes, with $3.6 million for the FANS Class and $3.6 million for the Rams Class, and $200,000 in costs, with $64,695.81 to be paid to FANS Class counsel and $135,304.19 to be paid to Rams Class Counsel; in addition, Plaintiffs request that the Court award Plaintiffs the following in incentive awards: Ron McAllister: $20,000, Richard Arnold: $20,000, R. McNeeley Cochran: $7,000, and Brad Pearlman: $3,000.

Dated: March 15, 2019                    Respectfully submitted,

                                         */s/ Richard S. Cornfeld*
                                         Richard S. Cornfeld, #31046MO
                                         LAW OFFICE OF RICHARD S. CORNFELD, LLC

---

[16] *See* Bureau of Labor Statistics CPI Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=15992&year1=200201&year2=201901 (accessed 3/2/2019).

1010 Market Street, Suite 1645
St. Louis, Missouri 63101
Telephone: (314) 241-5799
Facsimile: (314) 241-5788
rcornfeld@cornfeldlegal.com


Anthony S. Bruning, #30906MO
Anthony S. Bruning, Jr., #60200MO
Ryan L. Bruning, #62773MO
Edward M. Roth, #37294MO
THE BRUNING LAW FIRM, LLC
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
Telephone: (314) 735-8100
Facsimile: (314) 735-8020
tony@bruninglegal.com
aj@bruninglegal.com
ryan@bruninglegal.com
eroth@bruninglegal.com


Mark Goldenberg, #41355MO
Thomas P. Rosenfeld, #35305MO
Kevin P. Green, #63497MO
GOLDENBERG HELLER & ANTONOLI, PC
2227 South State Route 157
Edwardsville, Illinois 62025
Telephone: (618) 656-5150
Facsimile: (618) 656-6230
mark@ghalaw.com
tom@ghalaw.com
kevin@ghalaw.com

***Attorneys for Plaintiff Ronald McAllister and Class
Counsel for FANS Class***

*/s/ Fernando Bermudez (w/consent)*
Fernando Bermudez, #39943MO
BERMUDEZ LAW STL, LLC
7701 Forsyth Boulevard
Suite 950
St. Louis, Missouri 63108
Telephone: (314) 339-3082
Facsimile: (314) 862-1606
fbermudez@bermudezlawstl.com


Martin M. Green, #16465MO
LAW OFFICES OF MARTIN GREEN P.C.
7701 Forsyth Boulevard
Suite 950
St. Louis, Missouri 63105
Telephone: (314) 862-6800
Facsimile: (314) 862-1606
green@martingreenpc.com

**Attorneys for Plaintiffs Richard Arnold, R. McNeely
Cochran, and Brad Pearlman and Class Counsel for
the Rams Class**


*/s/ David R. Bohm (w/consent)*
David R. Bohm, #35166MO
Michael R. Cherba, #59642MO
DANNA MCKITRICK, P.C.
7701 Forsyth Boulevard
Suite 800
St. Louis, Missouri 63105
Telephone: (314) 726-1000
Facsimile: (314) 725-6592
dbohm@dmfirm.com
mcherba@dmfirm.com

**Attorney for Plaintiffs Envision, LLC, Robert D.
Bohm, Sue Bohm, and Edward E. Mock and Class
Counsel for the Rams Class**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically

with the Clerk of Court to be served by operation of the Court's electronic filing system upon all

Counsel of Record this 15th day of March, 2019.


  */s/ Richard S. Cornfeld*